# EXHIBIT A

**Verification, Case Docket and Superior Court Documents**

<u>VERFICATION</u>

STATE OF ARIZONA          )
                          ) ss.
County of Maricopa        )

I, Timothy J. Watson, hereby state, under penalty of perjury, that the following information is true to my knowledge, information and belief:

1.    I am one of the attorneys for certain State Defendants in the matter of *Jessica Fidler, et al. v. State of Arizona, et al.*, CV2021-017147, currently pending in the Superior Court of the State of Arizona, County of Maricopa, before Judge Christopher Coury.

2.    On February 24, 2022, I filed a Notice of Removal under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446 seeking to remove *Jessica Fidler, et al. v. State of Arizona, et al.*, CV2021-017147, to the United States District Court for the District of Arizona.

3.    In compliance with 28 U.S.C. § 1441(a), 28 U.S.C. § 1446, and LRCiv. 3.6(b), I certify that the attached documents are true and accurate copies of pleadings and other documents that were filed in the Superior Court of the State of Arizona, Maricopa County, *Jessica Fidler, et al. v. State of Arizona, et al.,* CV2021-017147.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED this  24th  day of February, 2022.

_____
Timothy J. Watson

#10122370

🏠 › Docket

# Civil Court Case Information - Case History

### Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2021-017147 | Judge: | Coury, Christopher |
| File Date: | 11/3/2021 | Location: | Downtown |
| Case Type: | Civil | | |

### Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Jessica Fidler | Plaintiff | Female | Thomas Connelly |
| Party is a minor: name not published | In The Matter Of (IMO) | Unknown | Pro Per |
| State Of Arizona | Defendant | | Pro Per |
| Arizona Department Of Child Safety | Defendant | | Pro Per |
| Lisa Burns | Defendant | Female | Pro Per |
| Melinda Quigley | Defendant | Female | Pro Per |
| Marisol Manjarrez | Defendant | Female | Pro Per |
| Kimmesha Edwards | Defendant | Female | Pro Per |
| Francisco Sanez | Defendant | Male | Pro Per |
| Bryan Adams | Defendant | Male | Pro Per |
| Michael Faust | Defendant | Male | Pro Per |
| Amber Lamonte | Defendant | Female | Pro Per |
| Drue Kaplan-Siekman | Defendant | Male | Pro Per |
| Phoenix Childrens Hospital Inc | Defendant | | Pro Per |
| Bo Borch-Christensen | Defendant | Male | Pro Per |
| Kathryn Coffman | Defendant | Female | Pro Per |
| Jason Treguboff | Defendant | Male | Timothy Hyland |
| Leigh Ann Treguboff | Defendant | Female | Timothy Hyland |

### Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 2/18/2022 | NAR - Notice Of Appearance | 2/22/2022 | |
| **NOTE:** Notice of Appearance | | | |
| 2/14/2022 | 079 - ME: Case Dismissed - Partial | 2/14/2022 | |
| 2/11/2022 | OXS - Order To Extend Time For Service | 2/11/2022 | |
| **NOTE:** ORDER TO ENLARGE TIME OF SERVICE | | | |
| 2/11/2022 | ORD - Order | 2/11/2022 | |
| **NOTE:** ORDER FOR ALTERNATIVE SERVICE | | | |
| 2/7/2022 | ACS - Acceptance Of Service | 2/11/2022 | |
| **NOTE:** Acceptance of Service of Process - KATHRYN COFFMAN AND JOHN DOE COFFMAN | | | |
| 2/7/2022 | ACS - Acceptance Of Service | 2/12/2022 | |
| **NOTE:** Acceptance of Service of Process / MICHAEL F TAMM | | | |
| 2/3/2022 | NDI - Notice Of Dismissal | 2/9/2022 | |
| **NOTE:** NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF DEFENDANT ARIZONA DEPARTMENT OF CHILD SAFETY | | | |
| 2/3/2022 | MXS - Motion To Extend Time For Service | 2/10/2022 | |
| **NOTE:** Motion to Extend time for Service | | | |
| 2/3/2022 | MOT - Motion | 2/10/2022 | |
| **NOTE:** Motion for Alternative Service | | | |
| 2/2/2022 | AFS - Affidavit Of Service | 2/8/2022 | |
| **NOTE:** LEIGH TREGUBOFF | | | |
| 2/1/2022 | AFS - Affidavit Of Service | 2/8/2022 | |
| **NOTE:** JASON TREGUBOFF | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** STATE OF ARIZONA | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** MICHAEL FAUST | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** JANE DOE FAUST | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** BRYAN ADAMS | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** BO BORCH-CHRISTENSEN | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** JANE DOE CHRISTENSEN | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** ARIZONA DEPARTMENT OF CHILD SAFETY | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** MARISOL MANJARREZ | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** JOHN DOE MANJARREZ | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** LISA BURNS | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** JOHN DOE BURNS | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |
| **NOTE:** KIMMESHA EDWARDS | | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 | |

| | | |
|---|---|---|
| **NOTE:** JOHN DOE EDWARDS | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** FRANCISCO SANEZ III | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** JOHN DOE QUIGLEY | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** JOHN DOE COFFMAN | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** PHOENIX CHILDRENS HOSPITAL | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** JOHN DOE LAMONTE | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** AMBER LAMONTE | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** BLACK ENTITIES 1-5 | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** KATHRYN COFFMAN | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** JANE DOES | | |
| 1/27/2022 | AFS - Affidavit Of Service | 2/3/2022 |
| **NOTE:** JANE DOE SANEZ III | | |
| 1/25/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** MELINDA QUIGLEY | | |
| 1/25/2022 | AFS - Affidavit Of Service | 2/2/2022 |
| **NOTE:** JANE DOE ADAMS | | |
| 1/19/2022 | AMC - Amended Complaint | 1/24/2022 |
| **NOTE:** First Amended Complaint | | |
| 1/12/2022 | 322 - ME: Notice Of Intent To Dismiss | 1/12/2022 |
| 11/3/2021 | COM - Complaint | 11/4/2021 |
| **NOTE:** COMPLAINT | | |
| 11/3/2021 | CSH - Coversheet | 11/4/2021 |
| **NOTE:** Civil Cover Sheet | | |
| 11/3/2021 | CCN - Cert Arbitration - Not Subject | 11/4/2021 |
| **NOTE:** Certificate Of Compulsory Arbitration - Is Not Subject To | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |
| **NOTE:** Summons | | |
| 11/3/2021 | SUM - Summons | 11/4/2021 |

**NOTE:** Summons

| | | | |
|---|---|---|---|
| 11/3/2021 | SUM - Summons | | 11/4/2021 |

**NOTE:** Summons

| | | | |
|---|---|---|---|
| 11/3/2021 | SUM - Summons | | 11/4/2021 |

**NOTE:** Summons

**Case Calendar**

**There are no calendar events on file**

**Judgments**

**There are no judgments on file**

Case 2:22-cv-00300-ROS    Document 1-3    Filed 02/24/22    Page 6 of 249

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571963

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
**GILLESPIE, SHIELDS, GOLDFARB,**
**& TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com
*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| JESSICA FIDLER, an individual; and E.F., a minor, through his parent and guardian JESSICA FIDLER, | Case No.: **CV2021-017147** |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| STATE OF ARIZONA, a government entity; ARIZONA DEPARTMENT OF CHILD SAFETY, a governmental entity; LISA BURNS, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE BURNS, her spouse; MELINDA QUIGLEY, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE QUIGLEY, her spouse; MARISOL MANJARREZ, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE MANJARREZ, her spouse; KIMMESHA EDWARDS, individually and as an | **JURY TRIAL REQUESTED** |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

employee with the State of Arizona Department of Child Safety, and JOHN DOE EDWARDS, her spouse; FRANCISCO SANEZ III, individually and as an employee with the State of Arizona Department of Child Safety, and JANE DOE SANEZ, his spouse; BRYAN ADAMS, individually and as an employee with the State of Arizona Department of Child Safety, and JANE DOE ADAMS, his spouse; MICHAEL FAUST, as Director, Arizona Department of Child Safety, and JANE DOE, his spouse; AMBER LAMONTE, individually and as a services provider for the State of Arizona Department of Child Safety and, and JOHN DOE LAMONTE, her spouse, DRUE KAPLAN-SIEKMAN, individually and as a services provider for the State of Arizona Department of Child Safety and, and JOHN DOE SIEKMANN, her spouse; PHOENIX CHILDREN'S HOSPITAL, INC., an Arizona corporation, individually and as a services provider for the State of Arizona Department of Child Safety; BO BORCH-CHRISTENSEN and JANE DOE BORCH-CHRISTENSEN, his spouse; KATHRYN COFFMAN and JOHN DOE COFFMAN, her spouse; JASON and LEIGH ANN TREGUBOFF; JOHN and JANE DOES 1-5; and BLACK ENTITIES 1-5,

                    Defendants.

Plaintiffs Jessica Fidler and E.F.[1], (together "Plaintiffs") by and through their counsel, file this Complaint against the Defendants the State of Arizona, the Arizona Department Of Child Safety, Lisa Burns and her spouse, Melinda Quigley and her spouse, Marisol Manjarrez, and her spouse, Kimmerha Edwards and her spouse, Francisco Sanez III and his spouse, Bryan Adams and his spouse, Michael Faust and his spouse, Amber LaMonte and her spouse, Drue Kaplan-Siekmann and her spouse, Bo Borch-Christensen

---

[1] E.F. is a fictitious name used to protect the identity of the minor.

and his spouse, Kathryn Coffman and her spouse, Jason and Leigh Ann Treguboff, John and Jane Does 1-5, and Black Entities 1-5. Plaintiff states and alleges as follows:

## JURISDICTION AND VENUE

1.     Plaintiffs bring this civil rights lawsuit pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, A.R.S. § 12-641, and Arizona common law.

2.     The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.     This Court has original subject matter jurisdiction over the claims made in this Complaint pursuant to Article 6, Section 14 of the Arizona Constitution.

4.     The acts and events giving rise to the causes of action alleged herein occurred in Maricopa County, Arizona, and all Defendants are subject to the personal jurisdiction of this Court in accordance with A.R.S. § 12-123 and as otherwise provided under Arizona law and the Arizona Rules of Civil Procedure.

5.     Venue lies in this Court pursuant to A.R.S. § 12-401 in that, among other reasons, the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## THE PARTIES

6.     Plaintiff Jessica Fidler ("Jessica") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Jessica resided in Maricopa County, Arizona.

7.     Defendant State of Arizona is a government entity that acts by and through its officials, employees, and agents, including, without limitation, each of the other Defendants in this action.

8.     Defendant the Arizona Department of Child Safety ("DCS") is a governmental entity that acts by and through its officials, employees, and agents, including without limitation, each of the other non-governmental entity Defendants in this action.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9.     Defendant Lisa Burns ("Burns") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Burns was, at all times relevant to the present Complaint, an employee of the State of Arizona through DCS. At all times relevant to this Complaint, Burns was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10.    Defendant Melinda Quigley ("Quigley") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Quigley was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Quigley was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

11.    Defendant Marisol Manjarrez ("Manjarrez") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Manjarrez was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Manjarrez was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12.    Defendant Kimmersha Edwards ("Edwards") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Edwards was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Edwards was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

13.    Defendant Francisco Sanez III ("Sanez") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Sanez was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Sanez was acting under the color of law as an

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

4

employee of DCS. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983

14.    Defendant Bryan Adams ("Adams") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Adams was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Adams was acting under the color of law as an employee of DCS. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983

15.    Defendant Michael Faust ("Faust") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Faust was, at all times relevant to this Complaint, the Director of the DCS. At all times relevant to this complaint, Faust was the official policymaker for the DCS. He is named herein in his official capacity.

16.    Defendant Dr. Amber La Monte ("LaMonte") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, LaMonte provided contract services for the State of Arizona through the DCS. At all times relevant to this Complaint, LaMonte was acting under the color of law as a DCS service provider. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

17.    Defendant Drue Kaplan-Siekmann ("Kaplan-Siekmann") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, Kaplan-Siekmann provided contract services for the State of Arizona through the DCS. At all times relevant to this Complaint, Kaplan-Siekmann was acting under the color of law as a DCS service provider. She is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

18.    Defendant Dr. Bo Borch-Christensen ("Borch-Christensen") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, Borch-Christensen provided services for Phoenix

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

Children's Hospital. At all times relevant to this Complaint, Borch-Christensen was acting under the color of law as a medical service provider. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

19.     Defendant Dr. Kathryn Coffman ("Coffman") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, Coffman provided services for Phoenix Children's Hospital. At all times relevant to this Complaint, Coffman was acting under the color of law as a medical service provider. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

20.     Defendants Jason and Leigh Ann Treguboff ("the Treguboffs") are individuals who resided in Maricopa County, Arizona at all times relevant to this Complaint. Defendants were licensed foster parents at all times relevant to this Complaint.

21.     John and Janes Does 1-5 and Black Entities 1-5 are persons, agents, services, employees, business entities, partnerships, corporations, and/or unincorporated associations subject to suit in a common name whose true names are unknown to Plaintiff and who are, therefore, designated by fictitious names. Plaintiff will ask leave of the Court to substitute the true names of the said parties prior to the entry of Judgement herein.

22.     Whenever in this Complaint reference is made to any act of "Defendants" such allegations shall be deemed to mean all named Defendants, John and Jane Does 1-5, and Black Entities 1-5, or their officers, agents, managers, members, representatives, employees, heirs, assignees, customers, tenants, and that they did or authorized such acts while actively engaged in the operation, management, direction, or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged otherwise.

23.     At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiff alleges, upon information and belief, that each Defendant was and is the agent, employee, principal, employer, co-conspirator, or any combination thereof

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

of each of the remaining defendants, vice versa, or both. In addition, Plaintiff alleges, upon information and belief, that the Defendants named herein, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above Defendants conspired with, directed, ratified, approved, aided, abetted, jointly collaborated, or any combination thereof, each of the remaining Defendants in committing the acts herein alleged or failed to prevent such acts when having the power, duty, or authority to do so with full knowledge of said acts.

## **FACTUAL ALLEGATIONS**[2]

### I.    Background

24.    E.F. (DOB 11/26/2011) is the natural child of Jessica.

25.    Jessica is the "sole" parent of E.F. who was conceived via intrauterine insemination using an anonymous sperm donor in March 2011 in Israel. Pregnancy complications developed subsequent to Jessica's development of pseudo tumor cerebri (excessive spinal fluid). E.F. was born three (3) weeks early via C-Section at Rambam Hospital in Haifa, Israel.

26.    Jessica was raised in Michigan and is raising E.F. in the Jewish faith.

27.    Jessica was 31 years old at the time of E.F.'s birth.

28.    Jessica holds a B.S. degree from Central Michigan University, a teaching certificate from David Yelling College in Jerusalem, and a M.A. from the University of Haifa in Haifa, Israel.

29.    Jessica worked as a teacher of applied linguistics while in Israel. She was employed full-time at Arizona State University and taught English as a second language from May 2013 until July 2017. She left this job to spend more time taking care of her son, whose illnesses were increasing at this time.

30.    Jessica was enrolled in the Paradise Valley Community College registered nursing program in January 2020; however, she was forced to leave the program due to

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

---

[2] Plaintiff makes the allegations in this Complaint based upon personal knowledge as to those matters in which she had personal involvement and upon information and belief as to all other matters.

DCS involvement and their removal of her child from her care. She will not be able to re-enroll in this program for 3 years due to the waiting list.

31.    Jessica is currently employed as a Parent Provider with Arion Health Services, which affords her the flexibility she needs to care for her son.

32.    Although Jessica is a single mother, she has not been alone in raising E.F. Jessica has an extended family network that has always loved and supported her and E.F. Jessica's unique challenges in raising a child with complex medical issues. She, like any loving parent, always put E.F. first. Jessica recognized when she needed help and asked for it.

33.    Jamie Fried ("Jamie") is Jessica's mother.

## II.    E.F. has suffered with a variety of health issues since birth, none of which have been easy to diagnose or treat.

34.    From birth, E.F. displayed confusing and concerning symptoms of illness that were difficult to characterize and diagnose.

35.    At around three weeks old, E.F. began having seizure-like activity (episodes of sudden stiffening, arching and, at times, stopped breathing). From the very beginning, E.F. had feeding issues with nursing, complications with digesting various types of formulas. There were other signs that Jessica noted were "different" about him early on. For example, he was delayed in meeting developmental milestones, he did not thermo-regulate normally (at times hot, at times cold, but did not sweat), he rarely cried, frequent infections, and did not react to painful stimulation.

36.    E.F. did not sit up on his own until he was nine months old, which was attributed at that time to discomfort from putting pressure on the abdomen, colon, etc. Jessica reported that "she did not know what to think of it."

37.    In October 2012, when E.F. was 11 months old, Jessica and E.F. moved to Michigan to be closer to family and because she was having difficulties navigating the healthcare system in the Hebrew language.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

8

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**E.F.'s First Birthday**

38.     On November 26, 2012, E.F. turned one. Just after his first birthday, in early December 2012, E.F. was seen by doctors at the Henry Ford Hospital in Michigan. diagnoses were gastroesophageal reflux disorder ("GERD"); (2) suspected Dandy-Walker syndrome as detected by Magnetic Resonance Imaging ("MRI"); and (3) suspected Sandifer's Syndrome as assessed by a neurologist. Dandy-Walker syndrome can cause seizures, abnormal breathing, slow motor development, abnormal intellectual development, and may even shorten life span.[3]  Sandifer's Syndrome is a combination of gastro-esophageal reflux with spastic torticollis and dystonic body movements that look like seizures. [4]

39.     E.F. and Jessica moved from Michigan to Arizona in 2013 for a job opportunity. During this second year of E.F.'s life, he continued to have health issues, including convulsions, food intolerance, breathing issues, frequent infections and an undescended testicle. Upon moving to Arizona, Jessica selected E.F.'s primary care physician ("PCP") at Scottsdale Pediatric Center. E.F. underwent surgery for the undescended testicle, and was referred to a neurologist, immunologist and a gastroenterologist for his other symptoms. The neurologist started E.F. on anti-convulsing therapy.

**E.F.'s Second Birthday**

40.     On November 26, 2013, E.F. turned two. During his third year of life (Nov. 2013 to Nov. 2014), E.F. continued to have health issues, including symptoms attributed to allergies, frequent infections, seizures, and convulsions. Upon referral by E.F.'s PCP, he was seen by PCH's immunologist for his frequent infections and allergy symptoms. E.F. also underwent diagnostic testing (blood work and EEG) for the seizures. The EEG showed

---

[3] NIH U.S. National Library of Medicine, MedlinePlus, <u>Dandy-Walker malformation</u>, available at https://medlineplus.gov/genetics/condition/dandy-walker-malformation/; last visited on Oct. 28, 2021.
[4] Lehwald N, Krausch M, Franke C, Assmann B, Adam R, Knoefel WT. <u>Sandifer syndrome--a multidisciplinary diagnostic and therapeutic challenge</u>. Eur J Pediatr Surg. 2007 Jun;17(3):203-6. doi: 10.1055/s-2007-965145. PMID: 17638161. Available at <u>Sandifer syndrome--a multidisciplinary diagnostic and therapeutic challenge - PubMed (nih.gov);</u> last visited on Nov. 2, 2021..

9

"diffuse slowing" but no diagnosis was made. Blood work showed "mild microcytic anemia and iron studies revealed low iron saturation with low-normal ferritin." E.F. was started on oral iron therapy.

### E.F.'s Third Birthday

41.    On November 26, 2014, E.F. turned three. During his fourth year of life (Nov. 2014 to Nov. 2015), E.F. continued to have health issues, including chronic sinusitis and developmental delays. He had his second surgery of his life when his adenoids and tonsils were removed. He was also referred by his PCP to a Development Pediatrician who diagnosed E.F. with ADD and started him on guanfacine.

### E.F.'s Fourth Birthday

42.    On November 26, 2015, E.F. turned four. In his fifth year of life (Nov. 2015 to Nov. 2016), E.F. was referred by his PCP to multiple specialists and was hospitalized several times for ongoing care related the following symptom: (1) bowel and urinary incontinence, (2) lack of awareness when he is soiled or wet, (3) chronic constipation, (4) diarrhea, (5) global developmental delays, (6) seizures, (7) encephalopathy consisting of ADHD, (8) communication disorder, (9) fine motor coordination disorder, (10) sensory processing difficulties, (11) frequent infections and (12) repeated episodes of dehydration which required hospitalization. A variety of tests were performed, but there was no definitive diagnosis. His blood work showed abnormalities which were decreased IgG and IgA antibodies. In March 2016, developmental testing showed: low-average early academic skills, including, below average vocabulary, receptive language, and visual-motor skills; and well-below-average expressive language skills. E.F. had several sweat tests to test for cystic fibrosis and those were abnormal. At this time, speculated diagnoses among the specialists included a congenital disorder due to a chromosomal anomaly, food allergies, an undiagnosed cystic fibrosis, transient hypogammaglobulinemia, mitochondrial disorder, and dysautonomia disorder or postural orthostatic tachycardia syndrome ("POTS"). Treatments were initiated to address the symptoms but were not curative. These treatments were primarily the placement of a cecostomy tube (on May 4,

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

2016) and an intravenous ("IV") port (on August 26, 2016) to allow for IV administration of fluids and antibodies (IgG). These surgeries were performed at PCH.

43.    On September 12, 2016, E.F. was seen by a PCH cardiologist who advised that E.F. continue with the IV hydrations as there had been a marked improvement in his symptoms following these treatments.

44.    On October 7, 2016, E.F. was seen by a PCH developmental pediatrician, for a follow-up. The specialist noted "[s]ince the last visit, E.F. has received a cecostomy tube and this has significantly helped his constipation. He also received a port and is getting fluids every other day. He is a changed kid - he is happier, sleeping more normally, interactive, interested and his learning has accelerated. Today, testing places him in the average range for early academics and language skills."

**E.F.'s Fifth Birthday**

45.    On November 26, 2016, E.F. turned five. During his sixth year of life (Nov. 2016 to Nov. 2017), E.F. continued to have problems related to encephalopathy consisting of ADHD, global developmental delays, communication disorder, fine motor coordination disorder, transient hypogammaglobulinemia and sensory processing difficulties. The cardiologist recommended continuing IV fluids but planned to decrease frequency as symptoms improve. E.F. had a home and school nurse to administer the IV fluids. Because an infection in a central line can be life-threatening, Jessica was instructed to take E.F. to the emergency room if E.F.'s temperature was 100.4 or higher.

46.    On January 01, 2017, E.F. was admitted to PCH for a fever and an issue in the central line, along with a viral respiratory infection.

47.    On January 18, 2017, upon referral by a PCH specialist, another PCH specialist consulted with Jessica regarding the possibility of removing the IV port and placing a different kind of port ("Broviac") for patient comfort. This was to address the concern that E.F. was requiring constant use of his IV port for IV fluid treatment, and it had become extremely difficulty to access due to repeated needle sticks and the associated pain.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

48.     On February 03, 2017, in a follow-up visit with a PCH developmental pediatrician, the specialist noted that E.F. "continues to work with OT and speech twice weekly, which is still medically necessary" and that E.F. is "happy and has at least average intelligence. He still has a significant articulation disorder."

49.     On February 15, 2017 E.F.'s home nurse observed difficulty with the central line not flushing and getting a blood return. He attempted to increase the flow rate, but the line pressure raised too high, and the pump's alarm triggered. Jessica, the nurse, and E.F. then went to the emergency room at PCH. E.F. was observed over a number of hours. PCH personnel attempted, but failed to correct the faulty central line. Finally, he was admitted to so that a PCH physician could remove IV port and replace it with the Broviac.

50.     Following a March 2017 PCH admission, a PCH specialist, Jessica, and a PCH pediatrician, conferred. They decide, for continuity of care, it would be best to keep all of E.F.'s providers within the same facility and that the PCH pediatrician should take over as E.F.'s primary care physician.

51.     On March 2, 2017, E.F. is seen by a cardiac specialist for a follow-up visit. At this visit, the specialist noted that E.F. was stable post Broviac placement, but he still suffered from breakthrough temperature instability and fatigue. He also noted that "he is a very complex case, especially in light of his age." Records also show that Jessica was looking for answers regarding her son's medical issues and was seeking another opinion.

52.     On March 4, 2017, a PCH specialist wrote a letter recommending that E.F. to go to Stanford for a consult due to the dysautonomia/POTS diagnosis.

53.     On April 20, 2017, E.F. was seen by a PCH specialist for ongoing cardiac follow-up. Jessica and the home health nurse observed that E.F. was having random fevers, hives, and severe abdominal pain, plus fatigue. The cardiac specialist records that he instructed Jessica as follows: "If he is hospitalized in the future, I have advised his Jessica to carry my notes with them and having the ER call my office before treating him."

54.     On April 26, 2017, another PCH doctor became E.F.'s primary care pediatrician ("PCP") to ensure continuity of care.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

55.    On May 03, 2017, upon referral by a PCH doctor, E.F. met with a PCH Pediatric Gastroenterologist.

56.    On May 17, 2017, E.F. met with a cardiac specialist for a follow-up visit. Jessica reports being frustrated that E.F.'s condition fluctuated so drastically. The PCH doctor decided to continue the IV fluids and expressed support that Jessica and the nurse experiment with the fluids schedule to see what worked best. He also encouraged Jessica to bring E.F. for a consult with a specialist at Stanford in California.

57.    On May 22, 2017, E.F. went to the PCH emergency room for a possible line infection. The culture showed a positive growth, indicating infection was present. In addition, E.F. presented with a whistling-like breathing sound. The record states that E.F. had been admitted several times to hospital in the past months for extra fluids and that his symptoms change rapidly.

58.    On June 15, 2017, E.F. saw a PCH doctor for a follow-up. This doctor noted that E.F. was sleeping a lot, not feeling well, but the cultures negative and his temperature was low (95.8). He requested that the consulting doctor at Stanford give E.F. "an extensive work-up as he is not responding well to fluids and has been hospitalized 9 times in the past 3 months due to flare ups related to his dysautonomia."

59.    On June 20, 2017, E.F. saw a specialist at Stanford for a neurological consult. This specialist provided a long letter summarizing E.F.'s medical history to history to date as follows. E.F. had: (1) apnea spells as baby <1-year-old; (2) GI system quite affected; (3) frequent urination, the test showed slightly hyperactive bladder; (4) evaluated for cystic fibrosis, it was negative; (5) repeated imaging showed white matter disease consistent with mitochondrial dysfunction; (6) language delay; (7) sleep is affected (13-14 hours per day); (8) allergic to red dye #40, gets hives; (9) definite decrease to pinprick and pain stimuli upon exam; (10) abnormal sweat noted, but no test to diagnose why. This specialist suspected E.F has "significant cholinergic deficit" and suggested a low-dose of pyridostigmine to see if helps he entire autonomic spectrum, including GI motility and sweat.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

**III.    Evidence that Dr. Christensen's motivation to call DCS in 2020 was to settle a score from a disagreement he had in 2017 with Jessica and discord with PCH specialists, rather than to protect E.F. from harm.**

60.    On June 29, 2017, Jessica brought E.F. for an office visit with a PCH doctor because he was not feeling well. This doctor recommended Jessica take E.F. to the hospital to try to figure out what was going on. At the hospital, E.F. was admitted to the 8th floor, which is the neurology floor. No IV fluids were administered, per Jessica's request. At this time, Jessica wanted to take the most conservative approach and get E.F. off of all medications and IV fluids. Jessica was concerned about the varying medical opinions she had been receiving and was, understandably, becoming increasingly frustrated.

61.    On the morning of June 30, E.F.'s blood pressure dropped, he looked pale, and he nearly fainted. After much discussion between the care takers, IV fluids were administered and E.F. improved. E.F. was then transferred to the 4th floor, where E.F. was normally admitted. On July 1, 2017, Dr. Christensen was on duty. At their very first meeting, Dr. Christensen strode into E.F.'s room, voice raised, and announced that after his extensive evaluation of E.F.'s medical records, he had determined that "there is nothing wrong with your child!"  Furthermore, he proclaimed that the cardiac specialist following E.F. would frequently prescribe unnecessary IV fluids. He also asked Jessica "who was the quack" who prescribed the IgG antibodies?  And, "what do you want from us?!"

62.    Dr. Christensen continued to scold Jessica, telling her she needed a care conference with all of E.F.'s providers. He also ignored her when she told him she had been asking for a care conference, because she was frustrated and was seeking guidance on how to handle E.F.'s health issues and requesting coordination between all providers. Jessica asked if Dr. Christensen would take E.F. off all medications during this hospital admission to see if they can evaluate his symptoms without any medical interventions in a safe environment.  He flatly refused this request.

63.    After this incident, Jessica questioned Dr. Christensen's ability to treat her child. She later informed PCH of her discomfort with Dr. Christensen and ultimately asked if he could be removed from treating her son during admissions.

14

64.    Dr. Christensen misrepresented the summary of this team meeting in E.F.'s medical records as follows: "[a]fter review of the patient's' extensive workup, the team has concern with 'over diagnosis' and 'over management' with multiple diagnoses that require substantiating." He recommended, in the record, that there be a "a care conference with Pt's PCP and various subspecialists be organized to help determine appropriate manage in the future."

65.    On July 1, 2017, after Dr. Christensen failed to help Jessica explore options to lessen E.F.'s medical interventions, Jessica found herself further frustrated and without a clear plan for her son. E.F. continued to have medical problems. Jessica was searching for the most conservative medical care plan for her son and was continuously being bounced from specialist to specialist. As a concerned and loving mother, she was forced to follow the doctor's orders and recommendations.

## IV.    E.F's PCP, immunologist, geneticist and cardiologist did not agree with Dr. Christensen.

66.    On July 3, 2017, a PCH specialist saw E.F. for ongoing care. He instructed Jessica to give E.F. "an extra bolus of fluids when symptomatic." After reviewing the research within which Jessica found herself, the PCH specialist recommended taking E.F. off guanfacine (a medication used to treat ADHD) because it has been shown to cause POTS. Given E.F.'s possible POTS diagnosis, this made the most sense. However, the PCH specialist recommended that Jessica restart his other medications because his allergies were bothering him. In addition, the cardiac specialist directly contradicted Dr. Christiansen when he informed Jessica that he "highly advised restarting his IV fluids." Furthermore, the specialist stated in his records: "If he is hospitalized in the future, I have advised Jessica to carry my notes with them and having the ER call my office before treating him."

67.    On July 3, 2017, E.F. was seen by a PCH Resident and a PCH Fellow, both of whom were associated with one of E.F.'s PCH specialist's office, noted that they had a "long discussion with mom today.., regarding her previous hospitalization and importance

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

of seeing specialists with regards to specialty care going forward." Their summary states: "During most recent hospitalization, it was mentioned by multiple members of the hospitalist team that E.F. was being "over diagnosed and over treated" and that he was "on too many medications." The record also states that E.F. vomited twice prior to coming in that day and his heart rate was elevated.

## V. PCH was put on notice that Jessica was seeking help to normalize E.F.'s life and was frustrated with the care E.F. had been receiving.

68.    On July 17, 2017, A PCH social worker noted Jessica's frustrations and ongoing concerns related to E.F.'s frequent hospitalizations. Jessica reported that she was particularly frustrated because no one on E.F.'s medical team was able to tell her what was wrong with her son. She asked for a plan in place for when E.F. developed a fever and if he has to be brought to the hospital or not. She was seeking guidance and not getting any consistent answers from PCH. Additionally, Jessica made clear that her only goal was for her son E.F. to "just be a kid'."

69.    Between August to October 2017, Jessica followed the PCH specialist's order to remove E.F. from the guanfacine prescription, given its correlation to POTS and other side effects. After stopping the guanfacine prescription, E.F. improved. Also during this timeframe, Jessica consulted with the specialist to see if the IV fluids could be stopped. The decision was made by PCH specialists that E.F. no longer needed daily IV fluids. However, IV access was still required for the frequent administration of IV antibodies (IgG), which did help E.F.'s symptoms.

### E.F.'s Sixth Birthday

70.    On November 26, 2017, E.F. turned 6, and his symptoms continued.

71.    On December 14, 2017, a PCH specialist noted that E.F. was going to Stanford Hospital on January 30, 2018 per PCH recommendations, which Jessica continued to follow. In this report, the PCH specialist stated that E.F. was generally stable but was continuing to have breakthrough temperature instability and excessive fatigue but that he

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

16

was improving greatly. The PCH specialist recommended that E.F. continue IV fluid treatment. Per usual, Jessica followed the doctor's orders.

72.     In February 2018, a PCH specialist noted that the Stanford specialist recommended E.F. to see a geneticist to further address his medical issues. At this time, E.F. also continued to suffer from urination and defecation issues. The specialist also performed a sweat test on E.F. which indicated autonomic neuropathy. Jessica was frightened and confused by the numerous diagnoses and myriad doctors' orders with which she was trying to comply.[5]

73.     On March 01, 2018, E.F. was taken off of IVIG infusions in accordance with PCH medical professionals' recommendations. Shortly thereafter, E.F. began having frequent infections. E.F. was severely fatigued and his temperature continued to be unstable. E.F. continued with IV fluid treatments at this time. E.F. also continued to suffer from GI issues. Jessica was again frightened and concerned for her son's medical conditions; yet, she continued to entrust and comply with PCH medical professionals' recommendations.

74.     In April 2018, a pediatric gastroenterologist at PCH referred Jessica and E.F. for a consultation with a specialist at Cincinnati Children's Hospital to address the GI issues. Jessica followed this medical advice. During this timeframe, another medical specialist also discussed with Jessica the benefits for E.F. to undergo formal testing for autism spectrum disorder. A PCH specialist referred Jessica and E.F. to another PCH specialist for diagnostic testing regarding this issue. During this timeframe, E.F. remained on IV fluid treatment, per the recommendation of a PCH specialist.

75.     In May 2018, E.F. continued to suffer from frequent infections, and Jessica was told by a PCH specialist to return for an immune workup in three (3) months.

76.     Also in May 2018, Jessica took E.F. to the PCH neurologist (as recommended by a PCH specialist) for formal testing for autism spectrum disorder. The

---

[5] As a single mother, Jessica was also very concerned about maintaining gainful employment to provide for her son and herself.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

PCH neurologist noted: "E.F. is a 6-year-old boy with a developmental encephalopathy with prominent speech articulation delay with multiple medical problems who has improved in cognitive and behavioral and social function with starting IVF. The etiology of his disorder remains elusive. In examination today he does not meet criteria for ASD per the ADOS or DSM-V criteria." The PCH neurologist recommended an EMG, Mito-Swab test, Mitochondrial DNA sequence analysis, and to consider skin biopsy and "continue IVF if they continue to help." During this timeframe, E.F. continued to suffer from GI issues and a weakened immune system

77.    In June 2018, E.F. developed a strep throat infection and was treated by a PCH pediatrician, who prescribed a seven (7) day round of antibiotics.

78.    In July 2018, E.F.'s port malfunctioned again, and it needed to be replaced. A PCH surgeon performed this procedure. Also in July 2018, E.F. experienced a seizure-like episode and behaved in a forgetful manner. In response to this, another PCH specialist recommended that E.F. continue with IV fluid treatment. Bloodwork was also conducted during this timeframe, and the blood chemistry report for E.F. indicated low IgG levels and possible primary immune deficiency. Additionally, during July 2018, E.F. was tested for undiagnosed metabolic disease and needed a PowerPort replacement.

79.    In August 2018, E.F. continued to experience infections and had been on multiple rounds of antibiotics. E.F. also continued to suffer from GI issues. Jessica continued to consult with medical professionals to address these issues. Her frustration and fear about her son's health continued to amass.

80.    In September 2018, E.F. suffered from difficulty with accessing his port, dehydration, and repeated fevers. As a result, his port was replaced. E.F. was also seen by a PCH specialist for issues related to mitochondrial disease, and he gave Jessica home care instructions (referred to as a "mito cocktail") to treat these issues. Again, Jessica followed the doctor's orders and also indicated that IV fluid treatments appeared to help E.F.'s symptoms.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

81.    In October 2018, E.F. suffered from another strep throat infection and was prescribed a three (3) week course of antibiotics. E.F.'s infections were increasing, and Jessica became progressively concerned about her son's health. E.F. also experienced low IgG results during this timeframe. Ultimately, Jessica complied with the doctor's orders, and E.F. completed the three (3) week course of antibiotics.

### E.F.'s Seventh Birthday

82.    On November 26, 2018, E.F. turned 7, and his medical issues remained unresolved.

83.    E.F. continued with treatment for mitochondrial dysfunction and developmental delay with a PCH specialist.

84.    In December 2018, E.F. continued to suffer from temperature instability and issues with urination and defecation. E.F.'s home health care nurse reported these issues to Jessica and the PCH specialists. In late December, Jessica returned to the Emergency Room (as she had been instructed to do by PCH doctors) because E.F. had another fever. E.F. was treated by PCH to resolve this issue.

85.    In January 2019, E.F.'s home health nurse and Jessica had a follow up visit with a PCH specialist who noted that E.F. had low antibodies. E.F. also had a follow up with another specialist who noted that E.F. was officially diagnosed with mitochondrial disease by a PCH specialist and that his symptoms improve while on IV hydration and IVIG infusion.[6]

86.    In February 2019, E.F. continued to experience temperature instability, which was documented by his home health nurse.

87.    In March 2019, E.F. had a new diagnosis of mitochondrial disorder and was experiencing symptoms of abdominal distention, vomiting, and was always hungry. The PCH medical team recommended the continuation of cecostomy flushes. Jessica was

---

[6] Mitochondrial disease presents itself with a number of symptoms such as developmental delay or regression, language impairment, social impairment, intellectual disability, neuropsychiatric symptoms (e.g., ADHD, anxiety, OCD, depression), seizures, headaches, hearing impairment, weakness, small stature, fatigue, gastrointestinal symptoms, endocrine disturbance, and many others. (See Mitochondrial Dysfunction: Symptoms & Treatment | Cortica (corticacare.com), last visited on Sept. 3, 2021.

frustrated and did not know what to do next and that E.F.'s symptoms made no sense. She reached out to the Cincinnati medical doctor who recommended a bowel management program for E.F.

88.    In April 2019, E.F. continued to have GI issues. A PCH specialist recommended that E.F. remain on IV fluid treatment, and Jessica indicated she was instructed to take E.F. back to Cincinnati for their bowel management program. During this time period, E.F. was also experiencing issues at school. His special education coordinator reported that E.F. was very unfocused and needed redirection every two minutes. Jessica was understandably concerned about her son's health.

89.    In May 2019, the Cincinnati medical team cleared E.F. to complete the bowel management program that was recommended. E.F. also suffered from a line infection and required IV antibiotics during this time period.

90.    In June 2019, E.F. continued to suffer from medical and behavioral issues related to his medical issues. Specifically, an ileostomy was discussed as an option to take as E.F.'s quality of life was being severely impacted by his GI issues. They scheduled the ileostomy surgery.

91.    In July 2019, E.F. was hospitalized for abdominal pain. Again, the ileostomy option was discussed as well as the recommendation for E.F. to continue with IV fluid treatment.

92.    Jessica was hesitant to move forward with a long term hospitalization because she did not want her son in the hospital for days and because her goal was always to keep E.F. out of the hospital and at home under the care of his home health nurse. She continued to follow the recommendations of the PCH specialists.

93.    In August 2019, PCH specialists referred E.F. to a Banner Children's Surgery Specialist for the ileostomy procedure. The reason for the recommendation to perform the ileostomy in Arizona (rather than in Cincinnati) is that the procedure would require post-operative visits. Prior to performing the ileostomy, the medical team at Banner Children's recommended a barium enema to evaluate E.F.'s colon, which was the more conservative

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

20

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

route of medical treatment for E.F.'s issues. Based on those results, the Banner Children's medical team recommended a hemi-colectomy, not an ileostomy, in September 2019. This procedure was performed in October 2019. Later in October, E.F. was admitted to PCH for three (3) days with issues related to post-surgery abdominal pain and constipation. Prior to admission, Jessica asked if E.F.'s symptoms were related to the surgery so she could take E.F. to Banner where the surgery was performed. She was advised to stay at PCH but the treating physicians refused to call the Banner surgeon who performed the hemi-colectomy a few days prior. Jessica requested that they call him multiple times. Fluid intake and recurrent infections remained an issue for E.F. so he continued with fluid intake therapy based on the PCH doctors' recommendations.

### E.F.'s Eighth Birthday

94.    On November 26, 2019, E.F. turned 8, and he continued to struggle with medical problems.

95.    In December 2019, E.F. continued with the PCH prescribed IVIG treatments because it appeared that these treatments were beneficial to E.F. and reducing prolonged and frequent illnesses. Jessica complied with this treatment plan for her son. Additionally, medical specialists noticed a positive difference with E.F. when he was receiving IV treatments.

96.    In January 2020, E.F. was still receiving medical care related to frequent infections, dysautonomia, and mitochondrial symptoms. Jessica complied with the doctors' recommendations regarding this health issue with which E.F. was dealing.

97.    On January 29, 2020, Dr. Christensen reports Jessica to the Arizona Department of Child Services.[7]

98.    In February 2020, E.F. was experiencing increased breathing issues that had been occurring for approximately six (6) months. This was also around the time that the COVID-19 virus was detected in the United States. An x-ray showed interstitial

_____

[7] PCH and DCS are parties to a contract whereby PCH medical professionals receive a monetary incentive as soon as they report a case to DCS.

pneumonitis. Jessica was advised by the treating physician to watch E.F. for symptoms such as difficulty to fill his lungs with air. Understandably, Jessica was extremely concerned about her son's respiratory issues. Also in February 2020, one of E.F.'s treating physicians emphasized the importance of IV fluids for E.F's medical treatment. In addition, in late February 2020, E.F. showed signs of tachycardia and underwent a 7-day Holter monitor. Due to the tachycardia shown, E.F. was given a beta-blocker from one of his medical team specialists. Jessica was very frightened.

99.    In February 2020, Dr. Christensen has a meeting with Dr. Coffman, Drue Kaplan-Siekmann, and members of DCS, the Maricopa County Attorney's Office and the Scottsdale Police Department. During this meeting, Dr. Christensen provided inaccurate medical information.

100.    In February of 2020 Ms. Kaplan-Siekmann, LMSW, of Kaplan-Siekmann Forensic Services, LLC, was retained by DCS to review E.F.'s medical records.

101.    In March of 2020, E.F. was seen by a geneticist and an allergy/immunology doctor. The geneticist previously recommended a muscle biopsy and E.F. had the muscle biopsy which revealed elevated levels of several enzymes, which is likely indicative of mitochondrial dysfunction. The geneticist encouraged the continuation of E.F.'s medication and "mito cocktail." E.F. also had follow-up cardiac care. During this visit, E.F.'s fluid regime was decreased at the request of Jessica. Jessica was again informed to bring him to the emergency room if he appears sick. Finally, Jessica was again advised to carry the treating physician's notes with her and to have the emergency room call his office before treating E.F. if he is ever hospitalized.

102.    On March 19, 2020 Ms. Kaplan-Siekmann submitted her file review to DCS. During this review Ms. Kaplan-Siekmann, made a finding of conscious deception or intentional conduct on behalf of Jessica, which are the hallmarks of Munchausen Syndrome by Proxy. Ms. Kaplan-Siekmann does not have a medical background, does not understand how to interpret medical documentation and findings, and was not provided with all of E.F.'s medical records including home health nursing notes. In addition, Ms. Kaplan-

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Siekmann lacked neutrality in her involvement in this case by solely collecting data that reflects a basis to support Drs. Christensen and Coffman, their relationship with DCS, and Ms. Kaplan Siekmann's relationship with DCS.

## VI.    Dr. Christensen improperly involves DCS, and DCS does not follow protocol.

103.    On April 3, 2020, E.F. was removed from his home and subsequently admitted to PCH for suspected child abuse, in particular Munchausen Syndrome by Proxy and possible "doctor shopping." E.F.'s admittance to PCH was based on Dr. Christensen's call to DCS, and Dr. Christensen was the admitting physician, who relied on inaccurate information and inaccurate medical history reports.[8]   He had only seen E.F. on one occasion in 2017.

104.    On March 30, DCS filed a report to the juvenile court for a preliminary protective hearing and/or initial dependency hearing.

105.    On April 8, 2020, Jessica received the dependency petition and the DCS report and attachments dated April 6, 2020.

106.    On April 8, 2020, the court found that E.F. should not be placed with Jessica based on the petition and DCS report.

107.    On April 11, 2020, Jessica received correspondence from DCS informing her that E.F. would be placed in a foster home that is not of the Jewish faith.

108.    On April 15, 2020, Jessica again provided the names of relatives (including her mother) who could take care of E.F. Jessica also provided the names of licensed foster/child development caregivers who are of the Jewish faith. DCS ignored all of

---

[8] Noteworthy is the fact that DCS waited several days to remove E.F. from Jessica's home after requesting a temporary order for removal. This was over 2 months since the initial call by Dr. Christensen. Also noteworthy, is that the day DCS did remove E.F. from Jessica's home was the day Dr. Christensen was working at PCH. But exceptionally noteworthy, is the fact that Jessica was called to an in-person team decision meeting with DCS investigator Lisa Burns, OCWI supervisor Melinda Quigley, and DCS case manager Marisol Manjarrez at the very same time a DCS representative removed E.F. from Jessica's home, where E.F. and E.F.'s home health nurse were, and where Jessica should have been. Instead, DCS continued the meeting and did not allow Jessica to leave. Melinda Quigley (Ms. Burns' direct supervisor during the relevant time period) provided authorization for Ms. Burns and Ms. Manjarrez to participate in the deceptive tactics to steer Jessica away from her home and remove her son without her presence. Ms. Manjarrez and Ms. Burns also consulted with Amber Lamonte, DCS psychologist, who ratified Ms. Manjarrez's and Ms. Burns' improper conduct. Michael Faust, Director of DCS, ratified all of Ms. Manjarrez's and Ms. Burns' improper conduct.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Jessica's recommendations and proceeded to ignore its obligation to place E.F. in the least restrictive environment.

109.    On April 16, 2020, Dr. Coffman was asked to follow the case at the request of Dr. Christensen due to possible medical abuse. Dr. Coffman did not conduct her own review of E.F.'s medical records and inaccurately summarized his medical history in her letter recommending medical care for the child to DCS.[9]

110.    Jessica received an email from DCS on April 30, 2020 that E.F.'s investigative case was closed.

111.    In May 2020, Ms. Manjarrez indicated to Jessica that E.F. did not love her and that she should be happy that he did anything for her for Mother's Day.[10]

112.    On May 27, 2020 Jessica received a case plan of severance and adoption. It was explained to Jessica the process DCS will take to sever her rights and find a permanent home for E.F.

113.    On August 19, 20 and September 14, 2020 an evidentiary hearing was conducted.

114.    Further false information DCS relied upon given by Drs. Coffman and Christensen was that E.F. had an ileostomy surgery. E.F. never had this surgery. Instead, E.F. had a barium swallow ordered by his treating doctor at Banner which revealed that E.F. had a redundant colon. The medical professional at Banner performed the hemi-colectomy which removed this issue.

115.    Lisa Burns from DCS also failed to investigate E.F.'s matter with his primary care physician or any member of E.F.'s medical team. Ms. Burns claims she asked for medical records but admits that she is not a medical specialist and did not review these records. Instead, Ms. Burns relied upon Dr. Christensen's opinion of E.F.'s medical issues. Melinda Quigley from DCS, and supervisor of Ms. Burns, failed to review the facts in the

---

[9] In accordance with a contract with DCS, Dr. Coffman received $103,738 in 2019 from DCS as a physician consultant. Mr. Faust ratified this payment to Dr. Coffman.

[10] Kimmesha Edwards and Francisco Sanez directly supervised Ms. Manjarrez during her work with E.F. and ratified her unprofessional and incompetent conduct. Bryan Adams supervised Ms. Edwards and Mr. Sanez, and as a result, ratified their unprofessional and incompetent conduct.

Mills • Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

case and ensure Ms. Burns was following DCS procedure. Ms. Lamonte consulted with Ms. Burns during this time period and ratified Ms. Burns' improper actions.

116.    Ms. Burns further admitted that she did not know why Dr. Christensen only saw E.F. on one occasion and that other members of E.F.'s medical team were not aligned on Dr. Christensen's conclusion that E.F. was subjected to over-medicalization by Jessica.

117.    During the evidentiary hearing, Dr. Christensen admitted that he did not review all of E.F.'s medical files before contacting DCS and jumping to the conclusion that E.F. was being over-medicalized.

118.    Dr. Christensen also falsely represented the findings from E.F.'s Cincinnati medical team regarding the team's recommendation for an ileostomy and E.F.'s test results. A procedure which E.F. never underwent because Jessica sought the most conservative medical route his doctors recommended.

119.    Dr. Christensen has had disagreements with specialists regarding IV treatments. Dr. Christensen also disagreed with PCH specialists over the issues of "over-diagnosis and over-treatments" of patients like E.F. Dr. Christensen never shared these disagreements with his colleagues, medical specialists, with DCS. He went so far as to call his colleague a "quack" for prescribing IVIG treatments to E.F., which were proving to be effective in treating E.F.'s symptoms.

## VII.    DCS failed to place E.F. in the least restrictive home.

120.    E.F. was placed in the foster home of Jason and Leigh Ann Treguboff (collectively, "the Treguboffs"). The Treguboffs are not members of the Jewish faith. E.F. was placed with the Treguboffs from April 17, 2020 – November 3, 2020.

121.    The Treguboffs have five children and serve as a licensed foster development family.

122.    While under the Treguboffs' care, E.F. experienced extreme bullying by the Treguboffs' children. He was called names and shamed for his urinary and defecation issues. He was told he was only there because his mother was dangerous. He was ridiculed because the Treguboff children thought he was "gay."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

123. Mrs. Treguboff had insensitive and inappropriate conversations about E.F.'s situation and explained, in front of E.F., that the plan was for his mother's parental rights to be severed and she was dangerous.

124. The Treguboffs provided false and inaccurate information and withheld pertinent information from E.F.'s medical team, DCS, and those involved in his care.

125. The Treguboffs did not follow medical advice.

126. The Treguboffs exposed E.F. to alcohol use in their home while he was fostering there.

127. E.F. suffered from a bite mark while fostering with the Treguboffs.

128. E.F. experienced significant trauma while in the temporary custody of the Treguboffs.

129. After seven (7) months, E.F. was finally reunited with his mother. The juvenile court dismissed the case at the request of the Department.

130. Jessica continues to monitor E.F.'s health and supports her son. Jessica understandably experienced severe trauma as a result of DCS' improper removal of her son from her.

131. Mr. Faust allowed this improper conduct to occur.

**CLAIM ONE:**
**(Under 42 U.S.C. § 1983, Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Ms. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman, Mr. Faust are liable for violating Jessica's Right to Freedom of Association under the First Amendment and Due Process under the Fourteenth Amendment to the U.S. Constitution for unlawfully seizing E.F.)**

132. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

133. On or about April 3, 2020, E.F. was removed from his home by DCS.

134. DCS seized E.F. based on false information provided by Dr. Christensen and with improper recommendations from Ms. Burns, Ms. Quigley, Ms. Manjarrez, Ms.

MILLS • WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Edwards, Mr. Sanez, Ms. Lamonte, Ms. Kaplan-Siekman, and with the ratification of Mr. Faust and DCS.

135.    Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Ms. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman and Mr. Faust substantially participated in the seizure of E.F.

136.    At the time Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Ms. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman and Mr. Faust substantially participated in the seizure of E.F., it was well established that the Fourteenth Amendment protects the rights of parents and children to live together without government interference. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000).

137.    At the time Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Ms. Lamonte, Ms. Kaplan-Siekman, Mr. Adams, and Mr. Faust substantially participated in the seizure of E.F., it was well established that the First Amendment also protects "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Lee v. City of Los Angeles*, 250 F. 3d 668, 685 (9th Cir. 2001).

138.    At the time Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Ms. Lamonte, Ms. Kaplan-Siekman, Mr. Adams, and Mr. Faust substantially participated in the seizure of E.F., it was well established that a state official "cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued," the "scope of the intrusion" must be "reasonably necessary to avert" a specific injury, and the intrusion cannot be longer than necessary to avert the injury. *Wallis*, 202 F.3d at 1138-1141.

139.    At the time Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman, and Mr. Faust substantially participated in the seizure of E.F., they did not have information that

established reasonable cause to believe that E.F. was in imminent danger of serious bodily injury.

140.    Prior to seizing E.F., Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman, and Mr. Faust did not first pursue reasonable avenues of investigation.

141.    When Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman, and Mr. Faust substantially participated in the seizure of E.F., the scope of the intrusion was not reasonably necessary to avert any specific injury, and, even if it were, the intrusion was longer than necessary to avert the injury.

142.    At the time Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman and Mr. Faust substantially participated in the seizure of E.F., there were no exigent circumstances that justified the seizure.

143.    At the time Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman and Mr. Faust substantially participated in the seizure of E.F., no reasonable person in their position would have believed that E.F. would have been harmed, and they clearly did not think he would as it took them three (3) days after obtaining a court order to seize E.F.

144.    At the time Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman and Mr. Faust substantially participated in the seizure of E.F., each of them, acted under the color of law when they seized E.F.

145.    Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. Lamonte, Ms. Kaplan-Siekman and Mr. Faust substantially participation in the seizure of E.F., violated Jessica's constitutional rights.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

28

146.    As a direct and proximate result of the violation of her constitutional rights, Jessica suffered irreparable harm and will continue to suffer general and special damages, in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM TWO:**
**(Under 42 U.S.C. § 1983, Defendants Drs. Christensen and Coffman are liable for violating Jessica's right to Due Process under the Fourth and Fourteenth Amendments for making misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.)**

147.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

148.    It is well established that liability for a § 1983 claim will lie for judicial deception. *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997).

149.    Although, the Ninth Circuit has "recognized absolute immunity for social workers ... for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents," the "scope of absolute immunity for social workers is extremely narrow." *Miller v. Gammie*, 335 F.3d 889, 989 (9th Cir. 2003). Absolute immunity does not extend to the fabrication of false evidence or perjury. *Hardwick v. County of Orange,* 844 F. 3d 1112 (9th Cir. 2017).

150.    At all relevant times, "the constitutional right to be free from the knowing presentation of false or perjured evidence" was clearly established. *Hardwick v. County of Orange*, 844 F. 3d 1112 (9th Cir. 2017); *see also Devereaux v. Perez*, 218 F.3d 1045 (9th Cir.2000); *Whitaker v. Garcetti*, 486 F.3d 572, 582 (2007) (concluding that "the contours of the Fourth Amendment right against judicial deception" were clearly established by 1996).

151.    During his testimony under oath, Dr. Christensen made statements which were false and/or demonstrated a reckless disregard for the truth, including, but not limited to the false testimony.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

152.    Throughout the case, Dr. Christensen falsely represented that Jessica subjected E.F. to a surgical procedure that was never performed and misrepresented E.F.'s medical history. Dr. Coffman supported Dr. Christensen's falsehoods and inaccurately summarized E.F.'s medical history.

153.    When committing these acts of judicial deception, Drs. Christensen and Coffman was acting under color of law.

154.    As a direct and proximate result of the violations of her constitutional rights, Jessica suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM THREE:
**(Under 42 U.S.C. § 1983, Drs. Christensen and Coffman are liable for conspiring to violate Jessica's right to Due Process under the Fourth and Fourteenth Amendments to be free from misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.)**

155.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

156.    At all relevant times, it was well established that liability for a conspiracy in a § 1983 case will lie when there exists an "agreement or meeting of the minds" to violate constitutional rights. *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id.

157.    At all relevant times, it was also well established: "A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir.2002).

158.    Drs. Christensen and Coffman conspired to deceive the court by failing to thoroughly review E.F.'s medical history records and providing medical opinions which were based on false, biased, and/or misleading information and which did not contain a true and accurate report of E.F.s actual medical history.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

30

159.    Drs. Christensen and Coffman conspired to violate Jessica's right to Due Process under the Fourth and Fourteenth Amendments to be free from misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth by conspiring to misrepresent E.F.'s medical history.

160.    When conspiring to violate Jessica's right to Due Process under the Fourth and Fourteenth Amendments to be free from misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth, Drs. Christensen and Coffman, and each of them, were acting under the color of law.

161.    As a direct and proximate result of the violations of her constitutional rights, Jessica suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

### CLAIM FOUR:
**(Under 42 U.S.C. § 1983, Ms. Manjarrez, Ms. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte and Mr. Faust are liable for violating Jessica's right to Due Process under the Fourth and Fourteenth Amendments for failing to make reasonable efforts to preserve the family relationship.)**

162.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

163.    At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id.* at 192, ¶32. A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id.*

164.    At all relevant times, it was well established that DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

165.    At all relevant times, it was well established that "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

166.    At all relevant times, it was well-established that in determining whether DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review DCS' actions during the entirety of time the child has been in DCS' care. *Donald W*., 247 Ariz. at 19, ¶ 49.

167.    Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte and Mr. Faust violated Jessica's right to the State's reasonable efforts to reunite them by failing to complete a thorough investigation, as required by A.R.S. § 8-456(C)(1) and by relying on false information provided by Drs. Christensen and Coffman.

168.    Arizona law, specifically A.R.S. § 514(B), requires that DCS "place a child in the least restrictive type of placement available, consistent with the best interest of the child."

169.    Arizona law, specifically A.R.S. § 514(B), mandates that placement of a child in a kinship care with a member of the child's family is a less restrictive placement than placement with a foster family.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

170.    Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte, and Mr. Faust violated Jessica's right to the State's reasonable efforts to reunite her with her child by failing to keep E.F. with Jamie, E.F.'s maternal grandmother, as Jessica requested.

171.    Ms. Manjarrez, Mr. Edwards, Mr. Adams, Mr. Sanez, Ms. Lamonte, and Mr. Faust violated Jessica's right to the State's reasonable efforts to reunite Jessica with her child by failing to place E.F. in a home practicing the Jewish faith after Jessica provided several licensed foster families of the Jewish faith.

172.    Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte and Mr. Faust violated Jessica's right to the State's reasonable efforts to reunite Jessica with her child by limiting E.F.'s visits with his mother to two hours twice per week and not allowing Jessica to attend E.F.'s medical appointments while he was in foster care.

173.    When they violated Jessica's right to the State's reasonable efforts to reunite them, DCS and Faust were acting under color of law.

174.    As a direct and proximate result of the violations of her constitutional rights, Jessica suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM FIVE:**
**(Under 42 U.S.C. § 1983, Defendants Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte and Faust are liable for violating Jessica's Due Process under the Fourteenth Amendment to the U.S. Constitution to make medical decisions for E.F.)**

175.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

176.    At all relevant times, it was well established that the constitutional due process "right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (holding that it is in the interest of both parents and children that parents have

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

ultimate authority to make medical decisions for their children unless a "neutral fact finder" determines, through due process hearing, that parent is not acting in child's best interests)).

177.    At all relevant times, it was well established that: "All parental rights are reserved to a parent of a minor child without obstruction or interference from this state, any political subdivision of this state, any other governmental entity or any other institution, including: The right to make health care decisions for the minor child, including rights pursuant to §§ 15-873, 36-2271 and 36-2272, unless otherwise prohibited by law." A.R.S. § 1-602(A)(5).

178.    At all relevant times, it was well established that until there is a finding of dependency by a court, which legally entitles DCS "to temporarily invade" a parent's rights to "legal custody" of their child, that the state has no legal right to invade the constitutional and legal rights of a parent to make medical decisions for their child. *Diana H. v. Rubin*, 217 Ariz. 131, 134 ¶ 13 (2007).

179.    At all relevant times, it was well established that "the requirement that [the state child welfare organization] provide parental notice and obtain consent" before a child in its care and/or custody is provided medical treatment is not "inconsistent with [the state child welfare organization's] obligation to provide routine or emergency medical care to children in its custody." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1163 (9th Cir. 2018).

180.    Defendants Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte and Mr. Faust interfered with Jessica's constitutional right to make medical decisions for her son by disallowing her from attending medical appointments while he was in foster care.

181.    When they violated Jessica's right to the State's reasonable efforts to reunite them, Defendants Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, and Mr. Faust, and each of them, were acting under color of law.

182.    As a direct and proximate result of the violations of her constitutional rights, Jessica suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

34

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CLAIM SIX:**

**(Under 42 U.S.C. § 1983, Defendants Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamont and Faust are liable for violating Jessica's Due Process Right under the Fourteenth Amendment to the U.S. Constitution to be with E.F. during medical treatment.)**

183.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

184.    At all relevant times, it was well established that the "Constitution assures parents that, in the absence of parental consent, [medical treatment] of their child may not be undertaken … at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an [treatment] exist and that the administration of the procedure is reasonable under all the circumstances." Wallis, 202 F.3d at 1141 (9th Cir. 2000). "Moreover, parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted)." *Id.*

185.    Defendants Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte, and Mr. Faust interfered with Jessica's constitutional right to be present during E.F.'s medical appointments when he was in temporary foster care.

186.    When they violated Jessica's right to be with E.F. during medical treatments, Defendants Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte, and Mr. Faust, and each of them, were acting under color of law.

187.    As a direct and proximate result of the violations of her constitutional rights, Jessica suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CLAIM SEVEN:**

**(Under established Arizona law, Dr. Christensen is liable to Jessica for failing to provide the minimum accepted standard of care in his care of E.F.)**

188.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

189.    Dr. Christensen had a duty to provide the minimum accepted standard of care in his treatment of E.F.

190.    As discussed above, Dr. Christensen breached his duty and failed to provide the minimum accepted standard of care in his treatment of E.F. Dr. Christensen falsely reported that E.F. had a surgical procedure. Dr. Christensen disregarded the medical opinions of his colleagues regarding E.F.'s medical condition. Dr. Christensen admitted that he did not review all of E.F.'s medical records before contacting DCS. Dr. Christensen falsely represented medical findings from E.F.'s Cincinnati medical team.

191.    As a direct and proximate result of Dr. Christensen failure to satisfy the minimum accepted standard of care, Jessica suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM EIGHT:**

**(Under established Arizona law, Drs. Christensen and Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. Lamonte, Mr. Faust are liable exercising Gross Negligence in carrying out their duty to protect the legal rights of children and families.)**

192.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

193.    Under A.R.S. § 8-802 (D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

194.    "A statute or regulation typically gives rise to a tort duty premised on public policy only if it is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Lorenz v. State*, 238 Ariz. 556, 558 (App. 2015).

195.    Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. Lamonte, Mr. Faust acted with gross negligence and breached their duty to protect the legal rights of Jessica when they failed to properly investigate whether DCS should remove E.F. from his parent's care before removing E.F. from his parent's care.

196.    Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams Ms. Lamonte, Mr. Faust and each of them, acted with gross negligence and breached their duty to protect the legal rights of Jessica by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

197.    Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. Lamonte, Mr. Faust acted with gross negligence and breached their duty to protect the legal rights of Jessica by failing to place E.F. with his maternal grandmother or a family of the Jewish faith (a less restrictive type of placement that was consistent with his best interest), and instead moving him to the more restrictive placement of placement with a foster family.

198.    Ms. Lamonte and Mr. Faust acted with gross negligence and breached their duty to protect the legal rights of Jessica by limiting Jessica's visits with her son to two time twice per week.

199.    Dr. Christensen acted with gross negligence and breached his duty to protect the legal rights of Jessica when she made representations to the court that were false and/or demonstrated a reckless disregard for the truth.

200.    As a direct and proximate result of Defendants' breach of their duty, Jessica suffered irreparable harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

37

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CLAIM NINE:**

**(Under established Arizona law, Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. Lamonte, Mr. Faust and each of them, are for exercising Gross Negligence in carrying out their duty to make reasonable and/or diligent efforts to preserve the family relationship.)**

201.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

202.    At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id.* at 192, ¶32. A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id.*

203.    At all relevant times, it was well established that DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id.* at ¶ 37.

204.    At all relevant times, it was well established that "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id.* at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id.* at 20, ¶ 50.

205.    A.R.S. § 8-533(B)(8) requires DCS agents to make a diligent effort to provide appropriate reunification services.

38

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

206.    At all relevant times, it was well-established that in determining whether DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review DCS' actions during the entirety of time the child has been in DCS' care. *Donald W.*, 247 Ariz. at 19,¶ 49. "[A]bsent reasonable modifications to…rehabilitative services offered to a disabled parent, a department has failed to perform its duty under the ADA to reasonably accommodate a disability and, in turn, its obligation to make reasonable efforts to rehabilitate the parent." *People in Interest of S.K.*, 440 P. 3d 1240, 1249 (Co. App. 2019).

207.    Dr. Christensen, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. Lamonte, and Mr. Faust and each of them, acted with gross negligence and breached their duty to make reasonable and/or diligent efforts to preserve the family relationship by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

208.    As a direct and proximate result of Defendants' gross negligence, Jessica suffered irreparable harm, including but not limited to, the permanent loss of her parental rights, and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

### CLAIM TEN:
**(Under established Arizona law, Defendant Faust Is liable to Jessica for the Gross Negligence exercised by Defendant employees of DCS in carrying out their duties.)**

209.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

210.    Faust owed a duty to Jessica to ensure that the employees, officers, and agents of DCS were qualified to serve in their respective roles before hiring and assigning employees to act as investigators and/or case managers for DCS.

211.    Faust operated with gross negligence and breached the duties described herein by failing to ensure that employees, officers, and agents of DCS were properly

qualified before hiring and assigning employees to act as investigators and/or case managers for DCS.

212.    Faust also owed a duty to Jessica to ensure that the employees, officers, and agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

213.    Faust operated with gross negligence and breached the duties described herein by failing to ensure that the employees, officers, and/or agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner

214.    Under Arizona law, specifically A.R.S. § 8-456(A)(2), DCS is required to ensure that all DCS investigators were properly trained on their "duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

215.    Faust operated with gross negligence and breached the duties described herein by failing to ensure that all DCS investigators were properly trained on their duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure.

216.    As a direct and proximate result of Defendants' breaches of these duties, Jessica was damaged in that she, among other things, was denied her constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships forever, and Jessica will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**CLAIM ELEVEN:**
**(Under 42 U.S.C. § 1983, Defendant Arizona Department of Child Safety**
**is liable for the unconstitutional acts of its employees which were**
**committed pursuant to a policy and/or practice of DCS.)**

217.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

40

218.   Defendant Arizona Department of Child Safety, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

219.   DCS, and those individual defendants in their official capacity who had supervisory and/or policy making authority, had a duty to Jessica to establish, implement, and/or follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Jessica under the United States Constitution, including under the First and Fourteenth Amendments. This includes, without limitation, the protection of the right to familial relations; the right to privacy; and the rights to substantive and procedural due process.

220.   DCS established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Jessica's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution. These policies, included, but are not limited to:

a.   the policy of using trickery, duress, fabrications and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the juvenile court, causing an interference with parents' rights, including those as to familial relations;

b.   the policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agent, employees, and state actors, in providing the constitutional protections guaranteed to individuals and families, including those under the Fourteenth Amendment, when performing actions related to child abuse and dependency-type proceedings;

c.   the policy of setting forth allegations in juvenile dependency petitions against parents claiming child abuse and/or neglect and/or other unsubstantiated allegations regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

41

d.    the policy, practice, or custom of making knowingly false allegations of child abuse and/or neglect in juvenile dependency petitions signed under penalty of perjury, motions, or other documents filed with the juvenile court as a means of intimidating parents, whether or not true, or forcing a parent to adjudicate a matter knowing that the courts most often sustain allegations, whether justified by extant evidence or not;

e.    the policy of fraudulently charging parents with child abuse and/or neglect where none exist; and

f.    the policy of failing to take appropriate action to ensure that appropriate and meaningful visitation occurs;

221.    The customs, policies, and/or practices listed herein are not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Jessica reserves their right to amend this pleading as more information becomes available.

222.    It was obvious that the policies described herein that were instituted and/or maintained by DCS would lead to constitutional violations like the violations suffered by Jessica, and DCS was deliberately indifferent to the consequent constitutional violations that would inevitably occur as a direct result of its policies.

223.    DCS was indifferent to the consequences that would be established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Jessica's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution. These policies, included, but are not limited to

224.    DCS, breached its duties and obligations to Jessica including but not limited to, failing to establish, implement, and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting the DCS employees to engage in the unlawful and unconstitutional conduct alleged herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

225.    DCS, knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that DCS employees would, and did, cause Jessica to be injured and damaged by DCS's wrongful policies, or deliberate lack thereof, or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in the contravention of public policy and their legal duties and obligations to Jessica; and that such policies subjected them to injunctive relief which Jessica asserts herein.

226.    These actions, and/or inactions, of DCS are the moving force behind, and direct and proximate cause of Jessica's injuries, as alleged herein; and as a result, Jessica has sustained general and specific damages to an extent and in an amount to be proven at trial. Jessica has incurred and will continue to incur, attorneys' fees, costs, and expenses, including those authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

## CLAIM TWELVE:
**(Under established Arizona law, Defendants Jason and Leigh Ann Treguboff are liable to Jessica for Defamation)**

227.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

228.    Ms. Treguboff made a false statement concerning Jessica when she told E.R. that Jessica was dangerous.

229.    This statement was defamatory and harmful as Jessica is not a dangerous mother.

230.    Ms. Treguboff's statement was published to third parties, including to her only son E.R.

231.    Ms. Treguboff knew or should have known her statement was inaccurate.

232.    Jessica was damaged by this statement.

233.    Jessica will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CLAIM THIRTEEN:**

**(Under established Arizona law, Defendants Jason and Leigh Ann Treguboff are liable to Jessica for Intentional Infliction of Emotional Distress)**

234.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

235.     The Treguboff's conduct was extreme and outrageous. As foster parents, they subjected E.R. to extreme bullying in their home, exposure to alcohol use, name-calling for his medical issues related to urination and defecation, and did not provide accurate medical information to E.F.'s medical team nor did they follow E.F.'s medical team's advice.

236.     The Treguboffs intended to cause Jessica's emotional distress or had reckless disregard for the certainty that distress would result from their conduct. Ms. Treguboff told Jessica's son that his mother "was dangerous." The Treguboffs allowed bullying in their home. E.F. was shamed for his medical issues, called gay, and suffered a bite wound while under the care of the Treguboffs.

237.     The Treguboff's conduct caused Jessica severe emotional distress.

238.     Jessica will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**CLAIM FOURTEEN:**

**(Defendant PCH is liable to Plaintiffs, and each of them, for the Negligence exercised by Defendant employees or agents of PCH in carrying out their duties.)**

239.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

240.     Defendant PCH owed a duty to Plaintiffs to ensure that the employees, officers, and agents of PCH were qualified to serve in their respective roles before hiring

44

and assigning them to act as medical doctors, nurse practitioners, or other medical professionals for PCH.

241.    Defendant PCH also owed a duty to Plaintiffs to ensure that the employees, officers, and agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

242.    As set forth above, Defendant PCH operated with negligence and breached these duties.

243.    As a direct and proximate result of Defendant's breaches of these duties, Plaintiffs were damaged in that they, among other things, were denied their constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships for extended periods of time during formative times in the lives of the child and the family, and Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

### CLAIM FIFTEEN:
**(Under established Arizona law, Defendants Jason and Leigh Ann Treguboff are liable to Jessica for Negligent Infliction of Emotional Distress)**

244.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

245.    Jessica witnessed injuries to her son while he was under the foster care of the Treguboffs.

246.    The Treguboffs are liable for the injuries (both mental and physical) E.F. suffered while he was fostering in their home.

247.    Jessica suffered mental anguish as a result of the mental and physical injuries her son suffered while under the care of the Treguboffs.

248.    Jessica will continue to suffer such damages into the future, all in an amount

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A. General damages and special damages according to proof, but in no event less than $15,000,000, including, but not limited to economic losses, medical costs, hedonic damages, psychological trauma, and emotional distress;

B. For injunctive relief in the form of DCS agreeing to provide training to all DCS case workers regarding:

    a. When exigent circumstances exist that justify the unwarranted seizure of a child;

    b. The psychological trauma and harm suffered by children and family that occurs when DCS removes a child from the custody of his or her parent;

    c. That prior to removing a child from the custody of his or her parent, DCS has a legal and constitutional obligation to conduct a thorough investigation into any allegations justifying removal, including investigating facts, witnesses, and evidence that refutes the allegations;

    d. That it is a violation of the Constitutional rights of children and parents to make misrepresentations or omissions to the court which are false and/or which demonstrate a reckless disregard for the truth; and;

    e. That facilitating regular contact between parent and child through visitation is perhaps the most basic and essential of the services provided by the State and thus all reasonable efforts must be expended to ensure that a visitation occurs regularly and as scheduled.

C. The training described in (B) above must be provided, at a minimum, annually to all DCS case workers and must be included in the training provided to persons upon their becoming a DCS case worker;

D. Injunctive relief in the form of PCH agreeing to provide training for every staff member involved in providing medical treatment to minors that until a court orders

46

otherwise, the parent or legal guardian retains the sole legal authority to procure, solicit to perform, and/or arrange for the performance of a medical screening or medical treatment for a minor.

E.  For taxable costs and pre- and post-judgment interest to the extent permitted by law;

F.  For punitive and/or exemplary damages to the extent permitted by law and in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

G.  For attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and state law, as applicable; and,

H.  For such other relief as the Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 3rd day of November 2021.

> **MILLS + WOODS LAW PLLC**
>
> By____/s/ Thomas A. Connelly_____
> Thomas A. Connelly
> Robert T. Mills
> Sean A. Woods
> 5055 North 12th Street, Suite 101
> Phoenix, AZ 85014
>
> **GILLESPIE, SHIELDS, GOLDFARB & TAYLOR**
> DeeAn Gillespie Strub
> 7319 North 16th Street
> Phoenix, AZ 85020
> *Attorneys for Plaintiffs*

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571965

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Deean Gillespie /s/
    Plaintiff/Attorney for Plaintiff

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571966

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: STATE OF ARIZONA

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571967

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: ARIZONA DEPARTMENT OF CHILD SAFETY

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.


GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA




SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571968

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: LISA BURNS

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571969

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JOHN DOE BURNS

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571970

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: MELINDA QUIGLEY

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571971

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JOHN DOE QUIGLEY

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571972

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: MARISOL MANJARREZ

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571973

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JOHN DOE MANJARREZ

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571974

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: KIMMESHA EDWARDS

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571975

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JOHN DOE EDWARDS

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571993

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: BLACK ENTITIES 1-5

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

2

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571976

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: FRANCISCO SANEZ III

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571977

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JANE DOE SANEZ

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571991

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

|  |  |
|---|---|
| JESSICA FIDLER, et al.<br>Plaintiff(s),<br>v.<br>STATE OF ARIZONA, et al.<br>Defendant(s). | Case No. **CV2021-017147**<br><br>**SUMMONS** |

To: JOHN DOE COFFMAN

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

2

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571992

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JANE DOES 1-5

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u> Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571990

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JASON AND LEIGH TREGUBOFF

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571978

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: BRYAN ADAMS

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571979

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2021-017147**

**SUMMONS**

To: JANE DOE ADAMS

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

2

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571987

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: BO BORCH-CHRISTENSEN

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571989

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JESSICA FIDLER, et al.<br>Plaintiff(s),<br>v.<br>STATE OF ARIZONA, et al.<br>Defendant(s). | Case No. **CV2021-017147**<br><br>**SUMMONS** |

To: KATHRYN COFFMAN

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571985

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JOHN DOE SIEKMAN

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571988

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JANE DOE BORCH-CHRISTENSEN

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571986

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2021-017147**

**SUMMONS**

To: PHOENIX CHILDREN'S HOSPITAL, INC.

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571980

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2021-017147**

**SUMMONS**

To: MICHAEL FAUST

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571983

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2021-017147**

**SUMMONS**

To: JOHN DOE LAMONTE

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571984

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: DRUE KAPLAN-SIEKMAN

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571981

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: JANE DOE FAUST

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
11/3/2021 6:22:39 PM
Filing ID 13571982

Person/Attorney Filing: Deean Gillespie
Mailing Address: 7319 N. 16th Street
City, State, Zip Code: Phoenix, AZ 85020
Phone Number: (602)870-9700
E-Mail Address: dgillespie@gillaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009987, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2021-017147**

**SUMMONS**

To: AMBER LAMONTE

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *November 03, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6246425

Office Distribution

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

**FILED**
01/12/2022
by Superior Court Admin
on behalf of Clerk of the
Superior Court

01/08/2022

COURT ADMINISTRATION

Ct. Admin
Deputy

**Case Number:** CV2021-017147

**Jessica Fidler**

**V.**

**State Of Arizona**

The Judge assigned to this action is the Honorable Christopher A. Coury

### NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE

You are hereby notified that the complaint filed on 11/03/2021 is subject to dismissal pursuant to Rule 4 (i) of the Arizona Rules of Civil Procedure. The deadline for completing service is 02/01/2022. If the time for completing service has not been extended by the court and no defendants have been served by this date, the case will be dismissed without prejudice.

All documents required to be filed with the court should be electronically filed through Arizona Turbo Court at www.azturbocourt.gov.

Superior Court of Maricopa County - integrated Court Information System
## Endorsee Party Listing
Case Number:  CV2021-017147

| Party Name | Attorney Name | |
|---|---|---|
| Jessica Fidler | Thomas A Connelly | Bar ID:  019430 |

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
1/19/2022 2:57:11 PM
Filing ID 13837632

1  Thomas A. Connelly (AZ Bar #019430)
2  Robert T. Mills (AZ Bar #018853)
   Sean A. Woods (AZ Bar #028930)
3  **MILLS + WOODS LAW PLLC**
   5055 North 12th Street, Suite 101
4  Phoenix, Arizona 85014
   Telephone 480.999.4556
5  docket@millsandwoods.com

6
   DeeAn Gillespie Strub (AZ Bar #009987)
7  **GILLESPIE, SHIELDS, GOLDFARB,**
   **& TAYLOR**
8  7319 North 16th Street
9  Phoenix, Arizona 85020
   Telephone: (602) 870-9700
10 Fax: (602) 870-9783
   mailroom@gillaw.com
11 *Attorneys for Plaintiff*

12

13            **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

14            **IN AND FOR THE COUNTY OF MARICOPA**

15 JESSICA FIDLER, an individual; and E.F., a      Case No.: CV2021-017147
   minor, through his parent and guardian
16 JESSICA FIDLER,

17            Plaintiffs,                          **FIRST AMENDED COMPLAINT**

18       v.

19 STATE OF ARIZONA, a government entity;
   ARIZONA DEPARTMENT OF CHILD
20 SAFETY, a governmental entity; LISA            **JURY TRIAL REQUESTED**
   BURNS, individually and as an employee
21 with the State of Arizona Department of
   Child Safety and JOHN DOE BURNS, her
22 spouse; MELINDA QUIGLEY, individually
   and as an employee with the State of
23 Arizona Department of Child Safety and
   JOHN DOE QUIGLEY, her spouse;
24 MARISOL MANJARREZ, individually and
   as an employee with the State of Arizona
25 Department of Child Safety and JOHN DOE
   MANJARREZ, her spouse; KIMMESHA
26 EDWARDS, individually and as an
27 employee with the State of Arizona
28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Department of Child Safety, and JOHN DOE EDWARDS, her spouse; FRANCISCO SANEZ III, individually and as an employee with the State of Arizona Department of Child Safety, and JANE DOE SANEZ, his spouse; BRYAN ADAMS, individually and as an employee with the State of Arizona Department of Child Safety, and JANE DOE ADAMS, his spouse; MICHAEL FAUST, as Director, Arizona Department of Child Safety, and JANE DOE, his spouse; AMBER LAMONTE, individually and as a services provider for the State of Arizona Department of Child Safety and, and JOHN DOE LAMONTE, her spouse, DRUE KAPLAN-SIEKMAN, individually and as a services provider for the State of Arizona Department of Child Safety and, and JOHN DOE SIEKMANN, her spouse; PHOENIX CHILDREN'S HOSPITAL, INC., an Arizona corporation, individually and as a services provider for the State of Arizona Department of Child Safety; BO BORCH-CHRISTENSEN and JANE DOE BORCH-CHRISTENSEN, his spouse; KATHRYN COFFMAN and JOHN DOE COFFMAN, her spouse; JASON and LEIGH ANN TREGUBOFF; JOHN and JANE DOES 1-5; and BLACK ENTITIES 1-5,

Defendants.

Plaintiffs Jessica Fidler and E.F.[1], (together "Plaintiffs") by and through their counsel, file this Complaint against the Defendants the State of Arizona, the Arizona Department Of Child Safety, Lisa Burns and her spouse, Melinda Quigley and her spouse, Marisol Manjarrez, and her spouse, Kimmerha Edwards and her spouse, Francisco Sanez III and his spouse, Bryan Adams and his spouse, Michael Faust and his spouse, Amber LaMonte and her spouse, Drue Kaplan-Siekmann and her spouse, Bo Borch-Christensen and his spouse, Phoenix Children's Hospital, Inc., Kathryn Coffman

---

[1] E.F. is a fictitious name used to protect the identity of the minor.

and her spouse, Jason and Leigh Ann Treguboff, John and Jane Does 1-5, and Black Entities 1-5. Plaintiff states and alleges as follows:

## JURISDICTION AND VENUE

1.     Plaintiffs bring this civil rights lawsuit pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, A.R.S. § 12-641, and Arizona common law.

2.     The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.     This Court has original subject matter jurisdiction over the claims made in this Complaint pursuant to Article 6, Section 14 of the Arizona Constitution.

4.     The acts and events giving rise to the causes of action alleged herein occurred in Maricopa County, Arizona, and all Defendants are subject to the personal jurisdiction of this Court in accordance with A.R.S. § 12-123 and as otherwise provided under Arizona law and the Arizona Rules of Civil Procedure.

5.     Venue lies in this Court pursuant to A.R.S. § 12-401 in that, among other reasons, the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## THE PARTIES

6.     Plaintiff Jessica Fidler ("Jessica") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Jessica resided in Maricopa County, Arizona.

7.     Defendant State of Arizona is a government entity that acts by and through its officials, employees, and agents, including, without limitation, each of the other Defendants in this action.

8.     Defendant the Arizona Department of Child Safety ("DCS") is a governmental entity that acts by and through its officials, employees, and agents, including without limitation, each of the other non-governmental entity Defendants in this action.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9.     Defendant Lisa Burns ("Burns") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Burns was, at all times relevant to the present Complaint, an employee of the State of Arizona through DCS. At all times relevant to this Complaint, Burns was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10.     Defendant Melinda Quigley ("Quigley") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Quigley was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Quigley was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

11.     Defendant Marisol Manjarrez ("Manjarrez") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Manjarrez was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Manjarrez was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12.     Defendant Kimmersha Edwards ("Edwards") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Edwards was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Edwards was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

13.     Defendant Francisco Sanez III ("Sanez") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Sanez was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Sanez was acting under the color of law as an

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

4

employee of DCS. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983

14.    Defendant Bryan Adams ("Adams") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Adams was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Adams was acting under the color of law as an employee of DCS. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983

15.    Defendant Michael Faust ("Faust") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Faust was, at all times relevant to this Complaint, the Director of the DCS. At all times relevant to this complaint, Faust was the official policymaker for the DCS. He is named herein in his official capacity.

16.    Defendant Dr. Amber La Monte ("LaMonte") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, LaMonte provided contract services for the State of Arizona through the DCS. At all times relevant to this Complaint, LaMonte was acting under the color of law as a DCS service provider. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

17.    Defendant Drue Kaplan-Siekmann ("Kaplan-Siekmann") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, Kaplan-Siekmann provided contract services for the State of Arizona through the DCS. At all times relevant to this Complaint, Kaplan-Siekmann was acting under the color of law as a DCS service provider. She is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

18. Defendant Phoenix Children's Hospital, Inc. ("PCH") is an Arizona corporation that was authorized to, and did, conduct business in the State of Arizona, including providing medical care services to children in the care and/or custody of DCS.

19. Defendant Dr. Bo Borch-Christensen ("Borch-Christensen") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, Borch-Christensen provided services for Phoenix Children's Hospital. At all times relevant to this Complaint, Borch-Christensen was acting under the color of law as a medical service provider. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

20. Defendant Dr. Kathryn Coffman ("Coffman") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, Coffman provided services for Phoenix Children's Hospital. At all times relevant to this Complaint, Coffman was acting under the color of law as a medical service provider. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

21. Defendants Jason and Leigh Ann Treguboff ("the Treguboffs") are individuals who resided in Maricopa County, Arizona at all times relevant to this Complaint. Defendants were licensed foster parents at all times relevant to this Complaint. At all times relevant to this Complaint, the Treguboffs were acting under the color of law as a foster parents for the State. Jason and Leigh Ann Treguboff are named herein in their individual capacities, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

22. John and Janes Does 1-5 and Black Entities 1-5 are persons, agents, services, employees, business entities, partnerships, corporations, and/or unincorporated associations subject to suit in a common name whose true names are unknown to Plaintiff and who are, therefore, designated by fictitious names. Plaintiff will ask leave of the

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Court to substitute the true names of the said parties prior to the entry of Judgement herein.

23.    Whenever in this Complaint reference is made to any act of "Defendants" such allegations shall be deemed to mean all named Defendants, John and Jane Does 1-5, and Black Entities 1-5, or their officers, agents, managers, members, representatives, employees, heirs, assignees, customers, tenants, and that they did or authorized such acts while actively engaged in the operation, management, direction, or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged otherwise.

24.    At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiff alleges, upon information and belief, that each Defendant was and is the agent, employee, principal, employer, co-conspirator, or any combination thereof of each of the remaining defendants, vice versa, or both. In addition, Plaintiff alleges, upon information and belief, that the Defendants named herein, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above Defendants conspired with, directed, ratified, approved, aided, abetted, jointly collaborated, or any combination thereof, each of the remaining Defendants in committing the acts herein alleged or failed to prevent such acts when having the power, duty, or authority to do so with full knowledge of said acts.

**FACTUAL ALLEGATIONS**[2]

I.    **BACKGROUND**

25.    E.F. (DOB 11/26/2011) is the natural child of Jessica.

26.    Jessica is the "sole" parent of E.F. who was conceived via intrauterine insemination using an anonymous sperm donor in March 2011 in Israel. Pregnancy complications developed subsequent to Jessica's development of pseudo tumor cerebri

---

[2] Plaintiff makes the allegations in this Complaint based upon personal knowledge as to those matters in which she had personal involvement and upon information and belief as to all other matters.

(excessive spinal fluid). E.F. was born three (3) weeks early via C-Section at Rambam Hospital in Haifa, Israel.

27.    Jessica was raised in Michigan and is raising E.F. in the Jewish faith.

28.    Jessica was 31 years old at the time of E.F.'s birth.

29.    Jessica holds a B.S. degree from Central Michigan University, a teaching certificate from David Yelling College in Jerusalem, and a M.A. from the University of Haifa in Haifa, Israel.

30.    Jessica worked as a teacher of applied linguistics while in Israel. She was employed full-time at Arizona State University and taught English as a second language from May 2013 until July 2017. She left this job to spend more time taking care of her son, whose illnesses were increasing at this time.

31.    Jessica was enrolled in the Paradise Valley Community College registered nursing program in January 2020; however, she was forced to leave the program due to DCS involvement and their removal of her child from her care. She will not be able to re-enroll in this program for 3 years due to the waiting list.

32.    Jessica is currently employed as a Parent Provider with Arion Health Services, which affords her the flexibility she needs to care for her son.

33.    Although Jessica is a single mother, she has not been alone in raising E.F. Jessica has an extended family network that has always loved and supported her and E.F. Jessica's unique challenges in raising a child with complex medical issues. She, like any loving parent, always put E.F. first. Jessica recognized when she needed help and asked for it.

34.    Jamie Fried ("Jamie") is Jessica's mother.

## II.    E.F. HAS SUFFERED WITH A VARIETY OF HEALTH ISSUES SINCE BIRTH, NONE OF WHICH HAVE BEEN EASY TO DIAGNOSE OR TREAT.

35.    From birth, E.F. displayed confusing and concerning symptoms of illness that were difficult to characterize and diagnose.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

36.     At around three weeks old, E.F. began having seizure-like activity (episodes of sudden stiffening, arching and, at times, stopped breathing). From the very beginning, E.F. had feeding issues with nursing, complications with digesting various types of formulas. There were other signs that Jessica noted were "different" about him early on. For example, he was delayed in meeting developmental milestones, he did not thermo-regulate normally (at times hot, at times cold, but did not sweat), he rarely cried, frequent infections, and did not react to painful stimulation.

37.     E.F. did not sit up on his own until he was nine months old, which was attributed at that time to discomfort from putting pressure on the abdomen, colon, etc. Jessica reported that "she did not know what to think of it."

38.     In October 2012, when E.F. was 11 months old, Jessica and E.F. moved to Michigan to be closer to family and because she was having difficulties navigating the healthcare system in the Hebrew language.

### E.F.'S FIRST BIRTHDAY

39.     On November 26, 2012, E.F. turned one.

40.     Just after his first birthday, in early December 2012, E.F. was seen by doctors at the Henry Ford Hospital in Michigan. Diagnoses made were gastroesophageal reflux disorder ("GERD"); (2) suspected Dandy-Walker syndrome as detected by Magnetic Resonance Imaging ("MRI"); and (3) suspected Sandifer's Syndrome as assessed by a neurologist. Dandy-Walker syndrome can cause seizures, abnormal breathing, slow motor development, abnormal intellectual development, and may even shorten life span.[3] Sandifer's Syndrome is a combination of gastro-esophageal reflux with spastic torticollis and dystonic body movements that look like seizures. [4]

---

[3] NIH U.S. National Library of Medicine, MedlinePlus, Dandy-Walker malformation, available at https://medlineplus.gov/genetics/condition/dandy-walker-malformation/; last visited on Oct. 28, 2021.
[4] Lehwald N, Krausch M, Franke C, Assmann B, Adam R, Knoefel WT. Sandifer syndrome--a multidisciplinary diagnostic and therapeutic challenge. Eur J Pediatr Surg. 2007 Jun;17(3):203-6. doi: 10.1055/s-2007-965145. PMID: 17638161. Available at Sandifer syndrome--a multidisciplinary diagnostic and therapeutic challenge - PubMed (nih.gov); last visited on Nov. 2, 2021.

41.    E.F. and Jessica moved from Michigan to Arizona in 2013 for a job opportunity. During this second year of E.F.'s life, he continued to have health issues, including convulsions, food intolerance, breathing issues, frequent infections and an undescended testicle.

42.    Upon moving to Arizona, Jessica selected E.F.'s primary care physician ("PCP") at Scottsdale Pediatric Center.

43.    E.F. underwent surgery for the undescended testicle, and was referred to a neurologist, immunologist and a gastroenterologist for his other symptoms. The neurologist started E.F. on anti-convulsing therapy.

### E.F.'s Second Birthday

44.    On November 26, 2013, E.F. turned two.

45.    During his third year of life (Nov. 2013 to Nov. 2014), E.F. continued to have health issues, including symptoms attributed to allergies, frequent infections, seizures, and convulsions.

46.    Upon referral by E.F.'s PCP, he was seen by PCH's immunologist for his frequent infections and allergy symptoms.

47.    E.F. also underwent diagnostic testing (blood work and EEG) for the seizures. The EEG showed "diffuse slowing" but no diagnosis was made. Blood work showed "mild microcytic anemia and iron studies revealed low iron saturation with low-normal ferritin." E.F. was started on oral iron therapy.

### E.F.'s Third Birthday

48.    On November 26, 2014, E.F. turned three.

49.    During his fourth year of life (Nov. 2014 to Nov. 2015), E.F. continued to have health issues, including chronic sinusitis and developmental delays.

50.    He had his second surgery of his life when his adenoids and tonsils were removed. He was also referred by his PCP to a Development Pediatrician who diagnosed E.F. with ADD and started him on guanfacine.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

10

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**E.F.'s Fourth Birthday**

51.    On November 26, 2015, E.F. turned four.

52.    In his fifth year of life (Nov. 2015 to Nov. 2016), E.F. was referred by his PCP to multiple specialists and was hospitalized several times for ongoing care related the following symptom: (1) bowel and urinary incontinence, (2) lack of awareness when he is soiled or wet, (3) chronic constipation, (4) diarrhea, (5) global developmental delays, (6) seizures, (7) encephalopathy consisting of ADHD, (8) communication disorder, (9) fine motor coordination disorder, (10) sensory processing difficulties, (11) frequent infections and (12) repeated episodes of dehydration which required hospitalization.

53.    A variety of tests were performed, but there was no definitive diagnosis. His blood work showed abnormalities which were decreased IgG and IgA antibodies.

54.    In March 2016, developmental testing showed: low-average early academic skills, including, below average vocabulary, receptive language, and visual-motor skills; and well-below-average expressive language skills.

55.    E.F. had several sweat tests to test for cystic fibrosis and those were abnormal.

56.    At this time, speculated diagnoses among the specialists included a *congenital disorder due* to a *chromosomal anomaly*, food allergies, an *undiagnosed cystic fibrosis*, transient hypogammaglobulinemia, mitochondrial disorder, and dysautonomia disorder or postural orthostatic tachycardia syndrome ("POTS").

57.    Treatments were initiated to address the symptoms but were not curative. These treatments were primarily the placement of a cecostomy tube (on May 4, 2016) and an intravenous ("IV") port (on August 26, 2016) to allow for IV administration of fluids and antibodies (IgG). These surgeries were performed at PCH.

58.    On September 12, 2016, E.F. was seen by a PCH cardiologist who advised that E.F. continue with the IV hydrations as there had been a marked improvement in his symptoms following these treatments.

11

59.    On October 7, 2016, E.F. was seen by a PCH developmental pediatrician, for a follow-up. The specialist noted "[s]ince the last visit, E.F. has received a cecostomy tube and this has significantly helped his constipation. He also received a port and is getting fluids every other day. He is a changed kid - he is happier, sleeping more normally, interactive, interested and his learning has accelerated. Today, testing places him in the average range for early academics and language skills."

### E.F.'s Fifth Birthday

60.    On November 26, 2016, E.F. turned five.

61.    During his sixth year of life (Nov. 2016 to Nov. 2017), E.F. continued to have problems related to encephalopathy consisting of ADHD, global developmental delays, communication disorder, fine motor coordination disorder, transient hypogammaglobulinemia and sensory processing difficulties.

62.    The cardiologist recommended continuing IV fluids but planned to decrease frequency as symptoms improve. E.F. had a home and school nurse to administer the IV fluids.

63.    Because an infection in a central line can be life-threatening, Jessica was instructed to take E.F. to the emergency room if E.F.'s temperature was 100.4 or higher.

64.    On January 01, 2017, E.F. was admitted to PCH for a fever and an issue in the central line, along with a viral respiratory infection.

65.    On January 18, 2017, upon referral by a PCH specialist, another PCH specialist consulted with Jessica regarding the possibility of removing the IV port and placing a different kind of port ("Broviac") for patient comfort. This was to address the concern that E.F. was requiring constant use of his IV port for IV fluid treatment, and it had become extremely difficulty to access due to repeated needle sticks and the associated pain.

66.    On February 03, 2017, in a follow-up visit with a PCH developmental pediatrician, the specialist noted that E.F. "continues to work with OT and speech twice

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

weekly, which is still medically necessary" and that E.F. is "happy and has at least average intelligence. He still has a significant articulation disorder."

67.    On February 15, 2017 E.F.'s home nurse observed difficulty with the central line not flushing and getting a blood return. He attempted to increase the flow rate, but the line pressure raised too high, and the pump's alarm triggered.

68.    Jessica, the nurse, and E.F. then went to the emergency room at PCH.

69.    E.F. was observed over a number of hours. PCH personnel attempted, but failed to correct the faulty central line.

70.    Finally, he was admitted to so that a PCH physician could remove IV port and replace it with the Broviac.

71.    Following a March 2017 PCH admission, a PCH specialist, Jessica, and a PCH pediatrician, conferred. They decide, for continuity of care, it would be best to keep all of E.F.'s providers within the same facility and that the PCH pediatrician should take over as E.F.'s primary care physician.

72.    On March 2, 2017, E.F. was seen by a cardiac specialist for a follow-up visit. At this visit, the specialist noted that E.F. was stable post-Broviac placement, but he still suffered from breakthrough temperature instability and fatigue. He also noted that "he is a very complex case, especially in light of his age."

73.    Records also show that Jessica was looking for answers regarding her son's medical issues and was seeking another opinion.

74.    On March 4, 2017, a PCH specialist wrote a letter recommending that E.F. to go to Stanford University Hospital for a consult due to the dysautonomia/POTS diagnosis.

75.    On April 20, 2017, E.F. was seen by a PCH specialist for ongoing cardiac follow-up. Jessica and the home health nurse observed that E.F. was having random fevers, hives, and severe abdominal pain, plus fatigue.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

76.     The cardiac specialist records show that he instructed Jessica as follows: "If he is hospitalized in the future, I have advised his Jessica to carry my notes with them and having the ER call my office before treating him."

77.     On April 26, 2017, another PCH doctor became E.F.'s primary care pediatrician ("PCP") to ensure continuity of care.

78.     On May 03, 2017, upon referral by a PCH doctor, E.F. met with a PCH Pediatric Gastroenterologist.

79.     On May 17, 2017, E.F. met with a cardiac specialist for a follow-up visit. Jessica reports being frustrated that E.F.'s condition fluctuated so drastically. The PCH doctor decided to continue the IV fluids and expressed support that Jessica and the nurse experiment with the fluids schedule to see what worked best. He also encouraged Jessica to bring E.F. for a consult with a specialist at Stanford University Hospital in California.

80.     On May 22, 2017, E.F. went to the PCH emergency room for a possible line infection. The culture showed a positive growth, indicating infection was present.

81.     In addition, E.F. presented with a whistling-like breathing sound. The record states that E.F. had been admitted several times to the hospital in the past months for extra fluids and that his symptoms change rapidly.

82.     On June 15, 2017, E.F. saw a PCH doctor for a follow-up. This doctor noted that E.F. was sleeping a lot, not feeling well, but the cultures negative and his temperature was low (95.8). He requested that the consulting doctor at Stanford give E.F. "an extensive work-up as he is not responding well to fluids and has been hospitalized 9 times in the past 3 months due to flare ups related to his dysautonomia."

83.     On June 20, 2017, E.F. saw a specialist at Stanford for a neurological consult. This specialist provided a long letter summarizing E.F.'s medical history to history to date as follows. E.F. had: (1) apnea spells as baby <1-year-old; (2) GI system quite affected; (3) frequent urination, the test showed slightly hyperactive bladder; (4) evaluated for cystic fibrosis, it was negative; (5) repeated imaging showed white matter disease consistent with mitochondrial dysfunction; (6) language delay; (7) sleep is affected (13-14

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

hours per day); (8) allergic to red dye #40, gets hives; (9) definite decrease to pinprick and pain stimuli upon exam; (10) abnormal sweat noted, but no test to diagnose why.

84.    This specialist suspected E.F has "significant cholinergic deficit" and suggested a low-dose of pyridostigmine to see if helps his entire autonomic spectrum, including GI motility and sweat.

**III.    EVIDENCE THAT DR. CHRISTENSEN'S MOTIVATION TO CALL DCS IN 2020 WAS TO SETTLE A SCORE FROM A DISAGREEMENT HE HAD IN 2017 WITH JESSICA AND DISCORD WITH PCH SPECIALISTS, RATHER THAN TO PROTECT E.F. FROM HARM.**

85.    On June 29, 2017, Jessica brought E.F. for an office visit with a PCH doctor because he was not feeling well. This doctor recommended Jessica take E.F. to the hospital to try to figure out what was going on.

86.    At the hospital, E.F. was admitted to the 8th floor, which is the neurology floor. No IV fluids were administered, per Jessica's request.

87.    At this time, Jessica wanted to take the most conservative approach and get E.F. off of all medications and IV fluids.

88.    Jessica was concerned about the varying medical opinions she had been receiving and was, understandably, becoming increasingly frustrated.

89.    On the morning of June 30, E.F.'s blood pressure dropped, he looked pale, and he nearly fainted. After much discussion between the care takers, IV fluids were administered and E.F. improved. E.F. was then transferred to the 4th floor, where E.F. was normally admitted.

90.    On July 1, 2017, Defendant Dr. Christensen was on duty.

91.    At their very first meeting, Dr. Christensen strode into E.F.'s room, voice raised, and announced that after his extensive evaluation of E.F.'s medical records, he had determined that "there is nothing wrong with your child!"

92.    Furthermore, Dr. Christensen proclaimed that the cardiac specialist following E.F. would frequently prescribe unnecessary IV fluids.

93.    He also asked Jessica "who was the quack" who prescribed the IgG antibodies?  And, "what do you want from us?!"

94.     Dr. Christensen continued to scold Jessica, telling her she needed a care conference with all of E.F.'s providers. He also ignored her when she told him she had been asking for a care conference, because she was frustrated and was seeking guidance on how to handle E.F.'s health issues and requesting coordination between all providers.

95.     Jessica asked if Dr. Christensen would take E.F. off all medications during this hospital admission to see if they can evaluate his symptoms without any medical interventions in a safe environment.

96.     He flatly refused this request.

97.     After this incident, Jessica questioned Dr. Christensen's ability to treat her child. She later informed PCH of her discomfort with Dr. Christensen and ultimately asked if he could be removed from treating her son during admissions.

98.     Dr. Christensen misrepresented the summary of this team meeting in E.F.'s medical records as follows: "[a]fter review of the patient's' extensive workup, the team has concern with 'over diagnosis' and 'over management' with multiple diagnoses that require substantiating." He recommended, in the record, that there be a "a care conference with Pt's PCP and various subspecialists be organized to help determine appropriate manage in the future."

99.     On July 1, 2017, after Dr. Christensen failed to help Jessica explore options to lessen E.F.'s medical interventions, Jessica found herself further frustrated and without a clear plan for her son.

100.    E.F. continued to have medical problems. Jessica was searching for the most conservative medical care plan for her son and was continuously being bounced from specialist to specialist.

101.    As a concerned and loving mother, she was forced to follow the doctor's orders and recommendations.

**IV.    E.F'S PCP, IMMUNOLOGIST, GENETICIST AND CARDIOLOGIST DID NOT AGREE WITH DR. CHRISTENSEN.**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

16

102.    On July 3, 2017, a PCH specialist saw E.F. for ongoing care. He instructed Jessica to give E.F. "an extra bolus of fluids when symptomatic."

103.    After reviewing the research within which Jessica found herself, the PCH specialist recommended taking E.F. off guanfacine (a medication used to treat ADHD) because it has been shown to cause POTS. Given E.F.'s possible POTS diagnosis, this made the most sense. However, the PCH specialist recommended that Jessica restart his other medications because his allergies were bothering him. In addition, the cardiac specialist directly contradicted Dr. Christiansen when he informed Jessica that he "highly advised restarting his IV fluids."

104.    Furthermore, the PCH specialist stated in his records: "If he is hospitalized in the future, I have advised Jessica to carry my notes with them and having the ER call my office before treating him."

105.    On July 3, 2017, E.F. was seen by a PCH Resident and a PCH Fellow, both of whom were associated with one of E.F.'s PCH specialist's office, noted that they had a "long discussion with mom today.., regarding her previous hospitalization and importance of seeing specialists with regards to specialty care going forward." Their summary states: "During most recent hospitalization, it was mentioned by multiple members of the hospitalist team that E.F. was being "over diagnosed and over treated" and that he was "on too many medications."

106.    The record also states that E.F. vomited twice prior to coming in that day and his heart rate was elevated.

V.    **PCH WAS PUT ON NOTICE THAT JESSICA WAS SEEKING HELP TO NORMALIZE E.F.'S LIFE AND WAS FRUSTRATED WITH THE CARE E.F. HAD BEEN RECEIVING.**

107.    On July 17, 2017, A PCH social worker noted Jessica's frustrations and ongoing concerns related to E.F.'s frequent hospitalizations. Jessica reported that she was particularly frustrated because no one on E.F.'s medical team was able to tell her what was wrong with her son. She asked for a plan in place for when E.F. developed a fever

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mills + Woods Law PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

and if he has to be brought to the hospital or not. She was seeking guidance and not getting any consistent answers from PCH.

108.   Additionally, Jessica made clear that her only goal was for her son E.F. to "just be a kid'."

109.   Between August to October 2017, Jessica followed the PCH specialist's order to remove E.F. from the guanfacine prescription, given its correlation to POTS and other side effects. After stopping the guanfacine prescription, E.F. improved.

110.   Also during this timeframe, Jessica consulted with the specialist to see if the IV fluids could be stopped. The decision was made by PCH specialists that E.F. no longer needed daily IV fluids.

111.   However, IV access was still required for the frequent administration of IV antibodies (IgG), which did help E.F.'s symptoms.

### E.F.'s Sixth Birthday

112.   On November 26, 2017, E.F. turned 6, and his symptoms continued.

113.   On December 14, 2017, a PCH specialist noted that E.F. was going to Stanford Hospital on January 30, 2018 per PCH recommendations, which Jessica continued to follow.

114.   In this report, the PCH specialist stated that E.F. was generally stable but was continuing to have breakthrough temperature instability and excessive fatigue but that he was improving greatly. The PCH specialist recommended that E.F. continue IV fluid treatment. Per usual, Jessica followed the doctor's orders.

115.   In February 2018, a PCH specialist noted that the Stanford specialist recommended E.F. to see a geneticist to further address his medical issues. At this time, E.F. also continued to suffer from urination and defecation issues.

116.   The specialist also performed a sweat test on E.F. which indicated autonomic neuropathy.

117.   Jessica was frightened and confused by the numerous diagnoses and myriad doctors' orders with which she was trying to comply. As a single mother, Jessica

18

was also very concerned about maintaining gainful employment to provide for her son and herself.

118.    On March 01, 2018, E.F. was taken off of IVIG infusions in accordance with PCH medical professionals' recommendations.

119.    Shortly thereafter, E.F. began having frequent infections. E.F. was severely fatigued and his temperature continued to be unstable. E.F. continued with IV fluid treatments at this time.

120.    E.F. also continued to suffer from GI issues. Jessica was again frightened and concerned for her son's medical conditions; yet, she continued to entrust and comply with PCH medical professionals' recommendations.

121.    In April 2018, a pediatric gastroenterologist at PCH referred Jessica and E.F. for a consultation with a specialist at Cincinnati Children's Hospital to address the GI issues. Jessica followed this medical advice.

122.    During this timeframe, another medical specialist also discussed with Jessica the benefits for E.F. to undergo formal testing for autism spectrum disorder. A PCH specialist referred Jessica and E.F. to another PCH specialist for diagnostic testing regarding this issue.

123.    During this timeframe, E.F. remained on IV fluid treatment, per the recommendation of a PCH specialist.

124.    In May 2018, E.F. continued to suffer from frequent infections, and Jessica was told by a PCH specialist to return for an immune workup in three (3) months.

125.    Also in May 2018, Jessica took E.F. to the PCH neurologist (as recommended by a PCH specialist) for formal testing for autism spectrum disorder.

126.    The PCH neurologist noted: "E.F. is a 6-year-old boy with a developmental encephalopathy with prominent speech articulation delay with multiple medical problems who has improved in cognitive and behavioral and social function with starting IVF. The etiology of his disorder remains elusive. In examination today he does not meet criteria for ASD per the ADOS or DSM-V criteria."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

127. The PCH neurologist recommended an EMG, Mito-Swab test, Mitochondrial DNA sequence analysis, and to consider skin biopsy and "continue IVF if they continue to help."

128. During this timeframe, E.F. continued to suffer from GI issues and a weakened immune system

129. In June 2018, E.F. developed a strep throat infection and was treated by a PCH pediatrician, who prescribed a seven (7) day round of antibiotics.

130. In July 2018, E.F.'s port malfunctioned again, and it needed to be replaced. A PCH surgeon performed this procedure.

131. Also in July 2018, E.F. experienced a seizure-like episode and behaved in a forgetful manner. In response to this, another PCH specialist recommended that E.F. continue with IV fluid treatment.

132. Bloodwork was also conducted during this timeframe, and the blood chemistry report for E.F. indicated low IgG levels and possible primary immune deficiency.

133. Additionally, during July 2018, E.F. was tested for undiagnosed metabolic disease and needed a PowerPort replacement.

134. In August 2018, E.F. continued to experience infections and had been on multiple rounds of antibiotics. E.F. also continued to suffer from GI issues. Jessica continued to consult with medical professionals to address these issues.

135. Her frustration and fear about her son's health continued to amass.

136. In September 2018, E.F. suffered from difficulty with accessing his port, dehydration, and repeated fevers. As a result, his port was replaced.

137. E.F. was also seen by a PCH specialist for issues related to mitochondrial disease, and he gave Jessica home care instructions (referred to as a "mito cocktail") to treat these issues.

138. Again, Jessica followed the doctor's orders and also indicated that IV fluid treatments appeared to help E.F.'s symptoms.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

139.    In October 2018, E.F. suffered from another strep throat infection and was prescribed a three (3) week course of antibiotics. E.F.'s infections were increasing, and Jessica became progressively concerned about her son's health.

140.    E.F. also experienced low IgG results during this timeframe. Ultimately, Jessica complied with the doctor's orders, and E.F. completed the three (3) week course of antibiotics.

### E.F.'s Seventh Birthday

141.    On November 26, 2018, E.F. turned 7, and his medical issues remained unresolved.

142.    E.F. continued with treatment for mitochondrial dysfunction and developmental delay with a PCH specialist.

143.    In December 2018, E.F. continued to suffer from temperature instability and issues with urination and defecation. E.F.'s home health care nurse reported these issues to Jessica and the PCH specialists.

144.    In late December, Jessica returned to the Emergency Room (as she had been instructed to do by PCH doctors) because E.F. had another fever. E.F. was treated by PCH to resolve this issue.

145.    In January 2019, E.F.'s home health nurse and Jessica had a follow up visit with a PCH specialist who noted that E.F. had low antibodies. E.F. also had a follow up with another specialist who noted that E.F. was officially diagnosed with mitochondrial disease by a PCH specialist and that his symptoms improve while on IV hydration and IVIG infusion.

146.    Mitochondrial disease presents itself with a number of symptoms such as developmental delay or regression, language impairment, social impairment, intellectual disability, neuropsychiatric symptoms (e.g., ADHD, anxiety, OCD, depression), seizures, headaches, hearing impairment, weakness, small stature, fatigue, gastrointestinal symptoms, endocrine disturbance, and many others. (*See* Mitochondrial Dysfunction: Symptoms & Treatment | Cortica (corticacare.com), last visited on Sept. 3, 2021.

147.    In February 2019, E.F. continued to experience temperature instability, which was documented by his home health nurse.

148.    In March 2019, E.F. had a new diagnosis of mitochondrial disorder and was experiencing symptoms of abdominal distention, vomiting, and was always hungry. The PCH medical team recommended the continuation of cecostomy flushes.

149.    Jessica was frustrated and did not know what to do next and that E.F.'s symptoms made no sense. She reached out to the Cincinnati medical doctor who recommended a bowel management program for E.F.

150.    In April 2019, E.F. continued to have GI issues. A PCH specialist recommended that E.F. remain on IV fluid treatment, and Jessica indicated she was instructed to take E.F. back to Cincinnati for their bowel management program.

151.    During this time period, E.F. was also experiencing issues at school. His special education coordinator reported that E.F. was very unfocused and needed redirection every two minutes.

152.    Jessica was understandably concerned about her son's health as well as his schooling and social development.

153.    In May 2019, the Cincinnati medical team cleared E.F. to complete the bowel management program that was recommended.

154.    E.F. also suffered from a line infection and required IV antibiotics during this time period.

155.    In June 2019, E.F. continued to suffer from medical and behavioral issues related to his medical issues.

156.    Specifically, an ileostomy was discussed as an option to take as E.F.'s quality of life was being severely impacted by his GI issues. They scheduled the ileostomy surgery.

157.    In July 2019, E.F. was hospitalized for abdominal pain. Again, the ileostomy option was discussed as well as the recommendation for E.F. to continue with IV fluid treatment.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

158.    Jessica was hesitant to move forward with a long term hospitalization because she did not want her son in the hospital for days and because her goal was always to keep E.F. out of the hospital and at home under the care of his home health nurse. She continued to follow the recommendations of the PCH specialists.

159.    In August 2019, PCH specialists referred E.F. to a Banner Children's Surgery Specialist for the ileostomy procedure. The reason for the recommendation to perform the ileostomy in Arizona (rather than in Cincinnati) is that the procedure would require post-operative visits.

160.    Prior to performing the ileostomy, the medical team at Banner Children's recommended a barium enema to evaluate E.F.'s colon, which was the more conservative route of medical treatment for E.F.'s issues. Based on those results, the Banner Children's medical team recommended a hemi-colectomy, not an ileostomy, in September 2019. This procedure was performed in October 2019.

161.    Later in October, E.F. was admitted to PCH for three (3) days with issues related to post-surgery abdominal pain and constipation. Prior to admission, Jessica asked if E.F.'s symptoms were related to the surgery so she could take E.F. to Banner where the surgery was performed.

162.    She was advised to stay at PCH but the treating physicians refused to call the Banner surgeon who performed the hemi-colectomy a few days prior. Jessica requested that they call him multiple times.

163.    Fluid intake and recurrent infections remained an issue for E.F. so he continued with fluid intake therapy based on the PCH doctors' recommendations.

### E.F.'s Eighth Birthday

164.    On November 26, 2019, E.F. turned 8, and he continued to struggle with medical problems.

165.    In December 2019, E.F. continued with the PCH prescribed IVIG treatments because it appeared that these treatments were beneficial to E.F. and reducing prolonged and frequent illnesses. Jessica complied with this treatment plan for her son.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

23

166.    Additionally, medical specialists noticed a positive difference with E.F. when he was receiving IV treatments.

167.    In January 2020, E.F. was still receiving medical care related to frequent infections, dysautonomia, and mitochondrial symptoms. Jessica complied with the doctors' recommendations regarding this health issue with which E.F. was dealing.

168.    On January 29, 2020, Dr. Christensen reports Jessica to the Arizona Department of Child Services.

169.    PCH and DCS are parties to a contract whereby PCH medical professionals receive a monetary incentive as soon as they report a case to DCS.

170.    In February 2020, E.F. was experiencing increased breathing issues that had been occurring for approximately six (6) months. This was also around the time that the COVID-19 virus was detected in the United States. An x-ray showed interstitial pneumonitis.

171.    Jessica was advised by the treating physician to watch E.F. for symptoms such as difficulty to fill his lungs with air. Understandably, Jessica was extremely concerned about her son's respiratory issues.

172.    Also in February 2020, one of E.F.'s treating physicians emphasized the importance of IV fluids for E.F's medical treatment.

173.    In addition, in late February 2020, E.F. showed signs of tachycardia and underwent a 7-day Holter monitor. Due to the tachycardia shown, E.F. was given a beta-blocker from one of his medical team specialists. Jessica was very frightened.

174.    In February 2020, Dr. Christensen has a meeting with Dr. Coffman, Drue Kaplan-Siekmann, and members of DCS, the Maricopa County Attorney's Office and the Scottsdale Police Department. During this meeting, Dr. Christensen provided inaccurate medical information.

175.    In February of 2020 Ms. Kaplan-Siekmann, LMSW, of Kaplan-Siekmann Forensic Services, LLC, was retained by DCS to review E.F.'s medical records.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

24

176.    In March of 2020, E.F. was seen by a geneticist and an allergy/immunology doctor. The geneticist previously recommended a muscle biopsy and E.F. had the muscle biopsy which revealed elevated levels of several enzymes, which is likely indicative of mitochondrial dysfunction. The geneticist encouraged the continuation of E.F.'s medication and "mito cocktail."

177.    E.F. also had follow-up cardiac care. During this visit, E.F.'s fluid regime was decreased at the request of Jessica.

178.    Jessica was again informed to bring him to the emergency room if he appears sick.

179.    Finally, Jessica was again advised to carry the treating physician's notes with her and to have the emergency room call his office before treating E.F. if he is ever hospitalized.

180.    On March 19, 2020 Ms. Kaplan-Siekmann submitted her review of E.F.'s medical records to DCS. During this review Ms. Kaplan-Siekmann, made a finding of conscious deception or intentional conduct on behalf of Jessica, which are the hallmarks of Munchausen Syndrome by Proxy.

181.    Ms. Kaplan-Siekmann does not have a medical background, does not understand how to interpret medical documentation and findings, and was not provided with all of E.F.'s medical records including home health nursing notes.

182.    In addition, Ms. Kaplan-Siekmann lacked neutrality in her involvement in this case by solely collecting data that reflects a basis to support Drs. Christensen and Coffman, their relationship with DCS, and Ms. Kaplan Siekmann's relationship with DCS.

## VI.    DR. CHRISTENSEN IMPROPERLY INVOLVES DCS, AND DCS DOES NOT FOLLOW PROTOCOL.

183.    On April 3, 2020, E.F. was removed from his home and subsequently admitted to PCH for suspected child abuse, in particular Munchausen Syndrome by Proxy and possible "doctor shopping."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

25

184.   E.F.'s admittance to PCH was based on Dr. Christensen's call to DCS, and Dr. Christensen was the admitting physician, who relied on inaccurate information and inaccurate medical history reports.  He had only seen E.F. on one occasion in 2017.

185.   DCS waited several days to remove E.F. from Jessica's home after requesting a temporary order for removal.  Moreover, this removal did not occur until more than two months after Dr. Christensen's hotline call.

186.   The day DCS removed E.F. from Jessica's home was the day Dr. Christensen was on duty at PCH.

187.   At the very same time a DCS representative removed E.F. from Jessica's home, where E.F. and E.F.'s home health nurse were, and where Jessica should have been, Jessica was called to an in-person team decision meeting with DCS investigator Lisa Burns, OCWI supervisor Melinda Quigley, and DCS case manager Marisol Manjarrez.

188.   At the same time E.F. was removed, DCS continued the meeting and did not allow Jessica to leave.

189.   Melinda Quigley (Ms. Burns' direct supervisor during the relevant time period) provided authorization for Ms. Burns and Ms. Manjarrez to participate in the deceptive tactics to steer Jessica away from her home and remove her son without her presence. Ms. Manjarrez and Ms. Burns also consulted with Amber LaMonte, DCS psychologist, who ratified Ms. Manjarrez's and Ms. Burns' improper conduct. Michael Faust, Director of DCS, ratified all of Ms. Manjarrez's and Ms. Burns' improper conduct.

190.   On March 30, DCS filed a report to the juvenile court for a preliminary protective hearing and/or initial dependency hearing.

191.   On April 8, 2020, Jessica received the dependency petition and the DCS report and attachments dated April 6, 2020.

192.   On April 8, 2020, the court found that E.F. should not be placed with Jessica based on the petition and DCS report.

193.   On April 11, 2020, Jessica received correspondence from DCS informing her that E.F. would be placed in a foster home that is not of the Jewish faith.

26

194.    On April 15, 2020, Jessica again provided the names of relatives (including her mother) who could take care of E.F. Jessica also provided the names of licensed foster/child development caregivers who are of the Jewish faith. DCS ignored all of Jessica's recommendations and proceeded to ignore its obligation to place E.F. in the least restrictive environment.

195.    On April 16, 2020, Dr. Coffman was asked to follow the case at the request of Dr. Christensen due to possible medical abuse. Dr. Coffman did not conduct her own review of E.F.'s medical records and inaccurately summarized his medical history in her letter recommending medical care for the child to DCS.

196.    In accordance with a contract with DCS, Dr. Coffman received $103,738 in 2019 from DCS as a physician consultant. Mr. Faust ratified this payment to Dr. Coffman.

197.    Jessica received an email from DCS on April 30, 2020 that E.F.'s investigative case was closed.

198.    In May 2020, Ms. Manjarrez indicated to Jessica that E.F. did not love her and that she should be happy that he did anything for her for Mother's Day.

199.    Kimmesha Edwards and Francisco Sanez directly supervised Ms. Manjarrez during her work with E.F. and ratified her unprofessional and incompetent conduct. Bryan Adams supervised Ms. Edwards and Mr. Sanez, and as a result, ratified their unprofessional and incompetent conduct.

200.    On May 27, 2020 Jessica received a case plan of severance and adoption. It was explained to Jessica the process DCS will take to sever her rights and find a permanent home for E.F.

201.    On August 19, 20 and September 14, 2020 an evidentiary hearing was conducted.

202.    Further false information DCS relied upon given by Drs. Coffman and Christensen was that E.F. had an ileostomy surgery. E.F. never had this surgery. Instead, E.F. had a barium swallow ordered by his treating doctor at Banner which revealed that

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

27

E.F. had a redundant colon. The medical professional at Banner performed the hemi-colectomy which removed this issue.

203.    Lisa Burns from DCS also failed to investigate E.F.'s matter with his primary care physician or any member of E.F.'s medical team. Ms. Burns claims she asked for medical records but admits that she is not a medical specialist and did not review these records. Instead, Ms. Burns relied upon Dr. Christensen's opinion of E.F.'s medical issues. Melinda Quigley from DCS, and supervisor of Ms. Burns, failed to review the facts in the case and ensure Ms. Burns was following DCS procedure. Ms. LaMonte consulted with Ms. Burns during this time period and ratified Ms. Burns' improper actions.

204.    Ms. Burns further admitted that she did not know why Dr. Christensen only saw E.F. on one occasion and that other members of E.F.'s medical team were not aligned on Dr. Christensen's conclusion that E.F. was subjected to over-medicalization by Jessica.

205.    During the evidentiary hearing, Dr. Christensen admitted that he did not review all of E.F.'s medical files before contacting DCS and jumping to the conclusion that E.F. was being over-medicalized.

206.    Dr. Christensen also falsely represented the findings from E.F.'s Cincinnati medical team regarding the team's recommendation for an ileostomy and E.F.'s test results. A procedure which E.F. never underwent because Jessica sought the most conservative medical route his doctors recommended.

207.    Dr. Christensen has had disagreements with specialists regarding IV treatments. Dr. Christensen also disagreed with PCH specialists over the issues of "over-diagnosis and over-treatments" of patients like E.F. Dr. Christensen never shared these disagreements with his colleagues, medical specialists, with DCS. He went so far as to call his colleague a "quack" for prescribing IVIG treatments to E.F., which were proving to be effective in treating E.F.'s symptoms.

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**VII.    DCS FAILED TO PLACE E.F. IN THE LEAST RESTRICTIVE HOME.**

208.    E.F. was placed in the foster home of Jason and Leigh Ann Treguboff (collectively, "the Treguboffs"). The Treguboffs are not members of the Jewish faith. E.F. was placed with the Treguboffs from April 17, 2020 – November 3, 2020.

209.    During all relevant times, The Treguboffs refused to allow E.F. to attend religious services for the Jewish holidays.

210.    During all relevant times, the Treguboffs refused to allow a Rabbi to see E.F. to conduct religious rituals and customs.

211.    While in the Treguboffs' care, they refused to allow E.F. to eat a Kosher diet.

212.    Mrs. Treguboff frequently told E.F. that he must eat pork products and that he must combine meat and dairy products together. These dietary practices are forbidden by Jessica and E.F.'s Jewish faith.

213.    The Treguboffs failed to comply with the visitation plan and E.F. was not made available or missed visitations without notice.

214.    The Treguboffs have five children and serve as a licensed foster development family.

215.    While under the Treguboffs' care, E.F. experienced extreme bullying by the Treguboffs' children. E.F. was called names and shamed for his urinary and defecation issues.

216.    The Treguboff children s would frequently block E.F.'s ability to get to the bathroom to clean up if he had an accident.

217.    On multiple occasions, E.F. was told that he was "gay" and was constantly called names such as "dumb bitch" by the other children in the home.

218.    E.F. has always known that when there is a conflict, he should seek out the assistance of an adult as the adult is there to help and protect him. However, due to Mrs. Treguboff's frequent berating of E.F., he did not feel comfortable talking to or approaching her.

219. Mrs. Treguboff told E.F., her children, her friends and others in the community that E.F. was only in foster care because his mother was dangerous, and that Jessica was only allowed supervised visits because she was so dangerous. Mrs. Treguboff also implied that Jessica had some substance abuse issues.

220. Mrs. Treguboff had insensitive and inappropriate conversations about E.F.'s situation and explained, in front of E.F., that the plan was for his mother's parental rights to be severed and she was dangerous.

221. The Treguboffs provided false and inaccurate information and withheld pertinent information from E.F.'s medical team, DCS, and those involved in his care. The Treguboffs did this to ensure E.F. received additional services that were not needed, required or appropriate.

222. The Treguboffs endorsed the push for an autism diagnosis even after a PCH specialist explained to them in May 2020 that E.F. did not have Autism. Still, the Treguboff's demanded additional evaluations and/or an Autism diagnosis from the PCH specialist and providers at Touchstone Behavioral Health.

223. In E.F.'s psychiatric evaluation on or about June 4, 2020, Mrs. Treguboff falsely reported that E.F. was not capable to cutting his own food or showering independently.

224. Mrs. Treguboff falsely reported to E.F.'s Occupational Therapist that he did not know how to wipe himself.

225. Mrs. Treguboff claimed E.F. could not write for himself. Mrs. Treguboff would write for E.F. in the journal that Jessica and E.F. shared on how the week went during their visits, and would complete many of his homework assignments for school.

226. Mrs. Treguboff's reports of E.F.'s lack of abilities was alarming to all that know him. Jessica was very concerned that E.F.'s skills were regressing.

227. The Treguboffs described E.F. as not having any social skills. This assertion could not be further from the truth. On E.F.'s grading period 2 report card of the 2021-2022 school year, his teacher reported that "Eliron is one of the kindest student[s] I might

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

30

have ever had. He is always one of the first students to come up and ask any teacher how their day was or weekend. He even lets every teacher (really anyone he works with) [know] how much he appreciates them… [t]o say I enjoy working with him is an understatement."

228.    The Treguboffs did not follow medical advice.

229.    Jessica provided E.F. with his glasses shortly after his removal via a DCS employee and explained both verbally and through email why E.F. wore glasses.

230.    Medical records from PCH that was provided to the Treguboffs on April 17, 2020 indicated E.F. must wear glasses.

231.    Mrs. Treguboff unilaterally decided that E.F. did not need glasses.

232.    Despite Mrs. Treguboff making excuses as to why E.F. could not have an eye exam, she finally took E.F. to Nationwide Vision in Litchfield Park on or about October 30, 2020 and it was determined that E.F. needed a higher prescription- doubling his original prescription.

233.    Mrs. Treguboff failed to place an order for E.F. to receive glasses to match his current prescription.

234.    Mrs. Treguboff failed to discipline in a manner that is appropriate to the child's level of maturity by using the denial of food as a punishment.

235.    Mrs. Treguboff failed to allow E.F. to have his personal belongings such as clothing (e.g. basketball shorts, plain t-shirts) and did not return property that belonged to E.F. when he returned home.

236.    At all relevant times, DCS employees were informed of the above allegations regarding the Treguboffs.

237.    After seven (7) months, E.F. was finally reunited with his mother. The juvenile court dismissed the case at the request of the Department.

238.    Jessica continues to monitor E.F.'s health and supports her son. Jessica understandably experienced severe trauma as a result of DCS' improper removal of her son from her.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

239. Mr. Faust allowed this improper conduct to occur.

**CLAIM ONE:**

**(Under 42 U.S.C. § 1983, Defendants Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Ms. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekmann, Mr. Faust are liable for violating Plaintiffs right to Freedom of Association under the First Amendment and Due Process under the Fourteenth Amendment to the U.S. Constitution for unlawfully seizing E.F.)**

240. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

241. On or about April 3, 2020, E.F. was removed from his home by DCS.

242. DCS seized E.F. based on false information provided by Dr. Christensen and Dr. Coffman and with improper recommendations from Ms. Burns, Ms. Quigley, Ms. Manjarrez, Ms. Edwards, Mr. Sanez, Ms. LaMonte, Ms. Kaplan-Siekman, and with the ratification of Mr. Faust and DCS.

243. Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Ms. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekman and Mr. Faust substantially participated in the seizure of E.F.

244. At the time Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Ms. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekmann and Mr. Faust substantially participated in the seizure of E.F., it was well established that the Fourteenth Amendment protects the rights of parents and children to live together without government interference. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000).

245. At the time Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Ms. LaMonte, Ms. Kaplan-Siekman, Mr. Adams, and Mr. Faust substantially participated in the seizure of E.F., it was well established that the First Amendment also protects "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not

32

only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Lee v. City of Los Angeles*, 250 F. 3d 668, 685 (9th Cir. 2001).

246.   At the time Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Ms. LaMonte, Ms. Kaplan-Siekman, Mr. Adams, and Mr. Faust substantially participated in the seizure of E.F., it was well established that a state official "cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued," the "scope of the intrusion" must be "reasonably necessary to avert" a specific injury, and the intrusion cannot be longer than necessary to avert the injury. *Wallis*, 202 F.3d at 1138-1141.

247.   At the time Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekman, and Mr. Faust substantially participated in the seizure of E.F., they did not have information that established reasonable cause to believe that E.F. was in imminent danger of serious bodily injury.

248.   Prior to seizing E.F., Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekman, and Mr. Faust did not first pursue reasonable avenues of investigation.

249.   When Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekman, and Mr. Faust substantially participated in the seizure of E.F., the scope of the intrusion was not reasonably necessary to avert any specific injury, and, even if it were, the intrusion was longer than necessary to avert the injury.

250.   At the time Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekman and Mr. Faust substantially participated in the seizure of E.F., there were no exigent circumstances that justified the seizure.

251.   At the time Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekman and

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mr. Faust substantially participated in the seizure of E.F., no reasonable person in their position would have believed that E.F. would be harmed, and they clearly did not think he would as it took them three (3) days after obtaining a court order to seize E.F.

252.    At the time Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekman and Mr. Faust substantially participated in the seizure of E.F., each of them, acted under the color of law when they seized E.F.

253.    Dr. Christensen, Dr. Coffman, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Edwards, Mr. Adams, Ms. LaMonte, Ms. Kaplan-Siekman and Mr. Faust substantially participation in the seizure of E.F., violated Plaintiffs' constitutional rights.

254.    As a direct and proximate result of the violation of Plaintiffs' constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages, in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM TWO:**
**(Under 42 U.S.C. § 1983, Defendants Dr. Christensen, Dr. Coffman, and Ms. Kaplan-Siekmann are liable for violating Plaintiffs right to Due Process under the Fourth and Fourteenth Amendments for making misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.)**

255.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

256.    It is well established that liability for a § 1983 claim will lie for judicial deception. *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997).

257.    Although, the Ninth Circuit has "recognized absolute immunity for social workers ... for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents," the "scope of absolute immunity for social workers is extremely narrow." *Miller v. Gammie*, 335 F.3d 889, 989

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

(9th Cir. 2003). Absolute immunity does not extend to the fabrication of false evidence or perjury. *Hardwick v. County of Orange,* 844 F. 3d 1112 (9th Cir. 2017).

258.    At all relevant times, "the constitutional right to be free from the knowing presentation of false or perjured evidence" was clearly established. *Hardwick v. County of Orange*, 844 F. 3d 1112 (9th Cir. 2017); *see also Devereaux v. Perez*, 218 F.3d 1045 (9th Cir.2000); *Whitaker v. Garcetti*, 486 F.3d 572, 582 (2007) (concluding that "the contours of the Fourth Amendment right against judicial deception" were clearly established by 1996).

259.    During his testimony under oath, Dr. Christensen made statements which were false and/or demonstrated a reckless disregard for the truth, including, but not limited to the false testimony.

260.    Throughout the case, Dr. Christensen falsely represented that Jessica subjected E.F. to a surgical procedure that was never performed and misrepresented E.F.'s medical history.

261.    Dr. Coffman supported Dr. Christensen's falsehoods and inaccurately summarized E.F.'s medical history.

262.    On March 19, 2020 Ms. Kaplan-Siekmann submitted her review of E.F.'s medical file to DCS. During this review Ms. Kaplan-Siekmann, made a finding of conscious deception or intentional conduct on behalf of Jessica, which are the hallmarks of Munchausen Syndrome by Proxy.

263.    Ms. Kaplan-Siekmann does not have a medical background, does not understand how to interpret medical documentation and findings, and was not provided with all of E.F.'s medical records including home health nursing notes.

264.    In addition, Ms. Kaplan-Siekmann lacked neutrality in her involvement in this case by solely collecting data that reflects a basis to support Drs. Christensen and Coffman, their relationship with DCS, and Ms. Kaplan Siekmann's relationship with DCS.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

265. When committing these acts of judicial deception, Ms. Kaplan-Siekmann, Dr. Christensen, and Dr. Coffman were acting under color of law.

266. As a direct and proximate result of the violations of Plaintiffs' constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM THREE:**

**(Under 42 U.S.C. § 1983, Defendants Drs. Christensen and Coffman are liable for conspiring to violate Plaintiffs right to Due Process under the Fourth and Fourteenth Amendments to be free from misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.)**

267. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

268. At all relevant times, it was well established that liability for a conspiracy in a § 1983 case will lie when there exists an "agreement or meeting of the minds" to violate constitutional rights. *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id.

269. At all relevant times, it was also well established: "A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir.2002).

270. Drs. Christensen and Coffman conspired to deceive the court by failing to thoroughly review E.F.'s medical history records and providing medical opinions which were based on false, biased, and/or misleading information and which did not contain a true and accurate report of E.F.s actual medical history.

271. Drs. Christensen and Coffman conspired to violate Jessica's right to Due Process under the Fourth and Fourteenth Amendments to be free from misrepresentations and/or omissions to the court which were deliberate falsehoods

36

and/or which demonstrated a reckless disregard for the truth by conspiring to misrepresent E.F.'s medical history.

272.    When conspiring to violate Plaintiffs' right to Due Process under the Fourth and Fourteenth Amendments to be free from misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth, Drs. Christensen and Coffman, and each of them, were acting under the color of law.

273.    As a direct and proximate result of the violations of Plaintiffs' constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM FOUR:**
**(Under 42 U.S.C. § 1983, Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Ms. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte and Mr. Faust are liable for violating Plaintiffs right to Due Process under the Fourth and Fourteenth Amendments for failing to make reasonable efforts to preserve the family relationship.)**

274.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

275.    At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32. A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

276.    At all relevant times, it was well established that DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

277. At all relevant times, it was well established that "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id.* at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id.* at 20, ¶ 50.

278. At all relevant times, it was well-established that in determining whether DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review DCS' actions during the entirety of time the child has been in DCS' care. *Donald W.*, 247 Ariz. at 19, ¶ 49.

279. Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte and Mr. Faust violated Jessica's right to the State's reasonable efforts to reunite them by failing to complete a thorough investigation, as required by A.R.S. § 8-456(C)(1) and by relying on false information provided by Drs. Christensen and Coffman.

280. Arizona law, specifically A.R.S. § 514(B), requires that DCS "place a child in the least restrictive type of placement available, consistent with the best interest of the child."

281. Arizona law, specifically A.R.S. § 514(B), mandates that placement of a child in a kinship care with a member of the child's family is a less restrictive placement than placement with a foster family.

282. Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte, and Mr. Faust violated Jessica's right to the State's reasonable

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

38

efforts to reunite her with her child by failing to keep E.F. with Jamie, E.F.'s maternal grandmother, as Jessica requested.

283.    Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Adams, Mr. Sanez, Ms. LaMonte, and Mr. Faust violated Jessica's right to the State's reasonable efforts to reunite Jessica with her child by failing to place E.F. in a home practicing the Jewish faith after Jessica provided several licensed foster families of the Jewish faith.

284.    Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte and Mr. Faust violated Jessica's right to the State's reasonable efforts to reunite Jessica with her child by limiting E.F.'s visits with his mother to two hours twice per week and not allowing Jessica to attend E.F.'s medical appointments while he was in foster care.

285.    When they violated Plaintiffs' right to the State's reasonable efforts to reunite them, DCS and Faust were acting under color of law.

286.    As a direct and proximate result of the violations of Plaintiffs' constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM FIVE:**

**(Under 42 U.S.C. § 1983, Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Ms. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte, Mr. Faust, and the Treguboffs are liable for violating Plaintiffs right to Freedom of Religion, under the First Amendment as incorporated by the Fourteenth Amendment to the U.S. Constitution, by placing E.F. with the Treguboffs who refused to permit E.F. to practice his Jewish faith.)**

287.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

288.    Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Adams, Mr. Sanez, Ms. LaMonte, and Mr. Faust violated Plaintiffs' right to Freedom of Religion, under the First Amendment as incorporated by the Fourteenth Amendment to the U.S. Constitution by placing E.F. with the Treguboffs who refused to permit E.F. to

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

practice his level of observance of the Jewish faith, which requires certain dietary and other practices and observances.

289.    E.F. was placed in the foster home of the Treguboffs, who are not members of the Jewish faith, from April 17, 2020 – November 3, 2020.

290.    During all relevant times, The Treguboffs refused to allow E.F. to attend religious services for the Jewish holidays.

291.    During all relevant times, the Treguboffs refused to allow a Jewish Rabbi to see E.F. to conduct religious rituals and customs.

292.    While in  the Treguboffs' care, they refused to allow E.F. to eat a Kosher diet.

293.    Mrs. Treguboff frequently told E.F. that he must eat pork products and that he must combine meat and dairy products together. These dietary practices are forbidden by Jessica and E.F.'s Jewish faith.

294.    DCS Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Ms. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte, Mr. Faust failed to ensure that E.F. was allowed to practice his Jewish while in placement.

295.    When they violated Plaintiffs' constitutional right to Freedom of Religion under the First Amendment, as incorporated by the Due Process Clause of the Fourteenth Amendment, Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Ms. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte, Mr. Faust, the Treguboffs and each of them, were acting under color of law.

296.    As a direct and proximate result of the violations of Plaintiffs' constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM SIX:**

**(Under 42 U.S.C. § 1983, Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte and Faust are liable to Plaintiffs for violating Jessica's Due Process under the**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Fourteenth Amendment to the U.S. Constitution to make medical decisions for E.F.)**

297.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

298.    At all relevant times, it was well established that the constitutional due process "right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (holding that it is in the interest of both parents and children that parents have ultimate authority to make medical decisions for their children unless a "neutral fact finder" determines, through due process hearing, that parent is not acting in child's best interests)).

299.    At all relevant times, it was well established that: "All parental rights are reserved to a parent of a minor child without obstruction or interference from this state, any political subdivision of this state, any other governmental entity or any other institution, including: The right to make health care decisions for the minor child, including rights pursuant to §§ 15-873, 36-2271 and 36-2272, unless otherwise prohibited by law." A.R.S. § 1-602(A)(5).

300.    At all relevant times, it was well established that until there is a finding of dependency by a court, which legally entitles DCS "to temporarily invade" a parent's rights to "legal custody" of their child, that the state has no legal right to invade the constitutional and legal rights of a parent to make medical decisions for their child. *Diana H. v. Rubin*, 217 Ariz. 131, 134 ¶ 13 (2007).

301.    At all relevant times, it was well established that "the requirement that [the state child welfare organization] provide parental notice and obtain consent" before a child in its care and/or custody is provided medical treatment is not "inconsistent with [the state child welfare organization's] obligation to provide routine or emergency

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

41

medical care to children in its custody." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1163 (9th Cir. 2018).

302.    Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte and Mr. Faust interfered with Jessica's constitutional right to make medical decisions for her son by disallowing her from attending medical appointments while he was in foster care.

303.    When they violated Jessica's right to the State's reasonable efforts to reunite them, Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, and Mr. Faust, and each of them, were acting under color of law.

304.    As a direct and proximate result of the violations of Jessica's constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM SEVEN:**
**(Under 42 U.S.C. § 1983, Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. Lamonte and Faust are liable to Plaintiffs for violating Jessica's Due Process right under the Fourteenth Amendment to the U.S. Constitution to be with E.F. during medical treatment.)**

305.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

306.    At all relevant times, it was well established that the "Constitution assures parents that, in the absence of parental consent, [medical treatment] of their child may not be undertaken … at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an [treatment] exist and that the administration of the procedure is reasonable under all the circumstances." Wallis, 202 F.3d at 1141 (9th Cir. 2000). "Moreover, parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

42

there is a valid reason for excluding them while all or a part of the medical procedure is being conducted)." *Id.*

307. Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte, and Mr. Faust interfered with Jessica's constitutional right to be present during E.F.'s medical appointments when he was in foster care.

308. When they violated Jessica's right to be with E.F. during medical treatments, Defendants Ms. Quigley, Ms. Burns, Ms. Manjarrez, Mr. Edwards, Mr. Sanez, Mr. Adams, Ms. LaMonte, and Mr. Faust, and each of them, were acting under color of law.

309. As a direct and proximate result of the violations of Plaintiffs' constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM EIGHT:**
**(Under established Arizona law, Defendant Drs. Coffman and Christensen are liable to Plaintiffs for failing to provide the minimum accepted standard of care while rendering medical services to E.F.)**

310. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

311. Drs. Coffman and Christensen had a duty to provide the minimum accepted standard of care while rendering medical services to E.F.

312. As discussed above, Dr. Christensen breached his duty and failed to provide the minimum accepted standard of care while rendering medical services to E.F. Dr. Christensen falsely reported that E.F. had a surgical procedure. Dr. Christensen disregarded the medical opinions of his colleagues regarding E.F.'s medical condition. Dr. Christensen admitted that he did not review all of E.F.'s medical records before contacting DCS. Dr. Christensen falsely represented medical findings from E.F.'s Cincinnati medical team.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

313.    As discussed above, Dr. Coffman breached her duty and failed to provide the minimum accepted standard of care while rendering medical services to E.F. by not conducting her own review of E.F.'s medical records and by inaccurately summarizing his medical history to DCS.

314.    As a direct and proximate result of Drs. Coffman and Christensen failure to satisfy the minimum accepted standard of care while rendering medical services, Plaintiffs' suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM NINE:**

**(Under established Arizona law, Defendants Drs. Christensen and Coffman, Ms. Kaplan-Siekmann, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. LaMonte, Mr. Faust are liable to Plaintiffs for exercising Gross Negligence in carrying out their duty to protect the legal rights of children and families.)**

315.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

316.    Under A.R.S. § 8-802 (D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

317.    "A statute or regulation typically gives rise to a tort duty premised on public policy only if it is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Lorenz v. State*, 238 Ariz. 556, 558 (App. 2015).

318.    Dr. Christensen, Dr. Coffman, Ms. Kaplan-Siekmann, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. LaMonte, Mr. Faust acted with gross negligence and breached their duty to protect the legal rights of Jessica when they failed to properly investigate whether DCS should remove E.F. from his parent's care before removing E.F. from his parent's care.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

44

319.   Dr. Christensen, Dr. Coffman, Ms. Kaplan-Siekmann, Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams Ms. LaMonte, Mr. Faust and each of them, acted with gross negligence and breached their duty to protect the legal rights of Jessica by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

320.   Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. LaMonte, Mr. Faust acted with gross negligence and breached their duty to protect the legal rights of Jessica by failing to place E.F. with his maternal grandmother or a family of the Jewish faith (a less restrictive type of placement that was consistent with his best interest), and instead moving him to the more restrictive placement of placement with a foster family.

321.   Ms. LaMonte and Mr. Faust acted with gross negligence and breached their duty to protect the legal rights of Jessica by limiting Jessica's visits with her son to two time twice per week.

322.   Dr. Christensen acted with gross negligence and breached his duty to protect the legal rights of Jessica when he made representations to the court that were false and/or demonstrated a reckless disregard for the truth.

323.   As a direct and proximate result of Defendants' breach of their duty, Plaintiffs suffered irreparable harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM TEN:**
**(Under established Arizona law, Defendants Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. LaMonte, Mr. Faust and each of them, are liable to Plaintiffs for exercising Gross Negligence in carrying out their duty to make reasonable and/or diligent efforts to preserve the family relationship.)**

324.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

45

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

325.    At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32. A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

326.    At all relevant times, it was well established that DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

327.    At all relevant times, it was well established that "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

328.    A.R.S. § 8-533(B)(8) requires DCS agents to make a diligent effort to provide appropriate reunification services.

329.    At all relevant times, it was well-established that in determining whether DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review DCS' actions during the entirety of time the child has been in DCS' care. *Donald W.*, 247 Ariz. at 19,¶ 49. "[A]bsent reasonable modifications to…rehabilitative services offered to a disabled parent, a department has failed to perform its duty under the ADA to reasonably

46

accommodate a disability and, in turn, its obligation to make reasonable efforts to rehabilitate the parent." *People in Interest of S.K.*, 440 P. 3d 1240, 1249 (Co. App. 2019).

330.    Ms. Burns, Ms. Quigley, Ms. Manjarrez, Mr. Sanez, Mr. Adams, Ms. LaMonte, and Mr. Faust and each of them, acted with gross negligence and breached their duty to make reasonable and/or diligent efforts to preserve the family relationship by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

331.    As a direct and proximate result of Defendants' gross negligence, Plaintiffs suffered irreparable harm, including but not limited to, the permanent loss of her parental rights, and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

### CLAIM ELEVEN:
**(Under established Arizona law, Defendant Faust is liable to Plaintiffs for the Gross Negligence exercised by Defendant employees of DCS in carrying out their duties.)**

332.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

333.    Faust owed a duty to Jessica to ensure that the employees, officers, and agents of DCS were qualified to serve in their respective roles before hiring and assigning employees to act as investigators and/or case managers for DCS.

334.    Faust operated with gross negligence and breached the duties described herein by failing to ensure that employees, officers, and agents of DCS were properly qualified before hiring and assigning employees to act as investigators and/or case managers for DCS.

335.    Faust also owed a duty to Jessica to ensure that the employees, officers, and agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

47

336.    Faust operated with gross negligence and breached the duties described herein by failing to ensure that the employees, officers, and/or agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner

337.    Under Arizona law, specifically A.R.S. § 8-456(A)(2), DCS is required to ensure that all DCS investigators were properly trained on their "duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

338.    Faust operated with gross negligence and breached the duties described herein by failing to ensure that all DCS investigators were properly trained on their duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure.

339.    As a direct and proximate result of Defendant's breaches of these duties, Plaintiffs were damaged in that they, among other things, were denied their constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships forever, and Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**CLAIM TWELVE:**
**(Under 42 U.S.C. § 1983, Defendant Arizona Department of Child Safety is liable to Plaintiffs for the unconstitutional acts of its employees which were committed pursuant to a policy and/or practice of DCS.)**

340.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

341.    Defendant Arizona Department of Child Safety, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

342.    DCS, and those individual defendants in their official capacity who had supervisory and/or policy making authority, had a duty to Jessica to establish,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

48

implement, and/or follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Jessica under the United States Constitution, including under the First and Fourteenth Amendments. This includes, without limitation, the protection of the right to familial relations; the right to privacy; and the rights to substantive and procedural due process.

343.   DCS established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Jessica's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution. These policies, included, but are not limited to:

a. the policy of using trickery, duress, fabrications and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the juvenile court, causing an interference with parents' rights, including those as to familial relations;

b. the policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agent, employees, and state actors, in providing the constitutional protections guaranteed to individuals and families, including those under the Fourteenth Amendment, when performing actions related to child abuse and dependency-type proceedings;

c. the policy of setting forth allegations in juvenile dependency petitions against parents claiming child abuse and/or neglect and/or other unsubstantiated allegations regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

d. the policy, practice, or custom of making knowingly false allegations of child abuse and/or neglect in juvenile dependency petitions signed under

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

49

penalty of perjury, motions, or other documents filed with the juvenile court as a means of intimidating parents, whether or not true, or forcing a parent to adjudicate a matter knowing that the courts most often sustain allegations, whether justified by extant evidence or not;

e.  the policy of fraudulently charging parents with child abuse and/or neglect where none exist; and

f.  the policy of failing to take appropriate action to ensure that appropriate and meaningful visitation occurs;

344.    The customs, policies, and/or practices listed herein are not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Jessica reserves their right to amend this pleading as more information becomes available.

345.    It was obvious that the policies described herein that were instituted and/or maintained by DCS would lead to constitutional violations like the violations suffered by Jessica, and DCS was deliberately indifferent to the consequent constitutional violations that would inevitably occur as a direct result of its policies.

346.    DCS was indifferent to the consequences that would be established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Jessica's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution. These policies, included, but are not limited to

347.    DCS, breached its duties and obligations to Jessica including but not limited to, failing to establish, implement, and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting the DCS employees to engage in the unlawful and unconstitutional conduct alleged herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

348.    DCS, knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that DCS employees would, and did, cause Jessica to be injured and damaged by DCS's wrongful policies, or deliberate lack thereof, or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in the contravention of public policy and their legal duties and obligations to Jessica; and that such policies subjected them to injunctive relief which Jessica asserts herein.

349.    These actions, and/or inactions, of DCS are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and specific damages to an extent and in an amount to be proven at trial. Plaintiffs have incurred and will continue to incur, attorneys' fees, costs, and expenses, including those authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

**CLAIM THIRTEEN:**
**(Under established Arizona law, Defendants Jason and Leigh Ann Treguboff are liable to Jessica for Defamation)**

350.    Plaintiffs re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

351.    Defendant Mrs. Treguboff made a false statement concerning Jessica when she told E.R. that Jessica was dangerous.

352.    This statement was defamatory and harmful as Jessica is not a dangerous mother.

353.    Mrs. Treguboff's statement was published to third parties, including to E.F.

354.    Mrs. Treguboff knew or should have known her statement was inaccurate.

355.    Jessica was damaged by this statement.

356.    Jessica will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CLAIM FOURTEEN:**

**(Under established Arizona law, Defendants Jason and Leigh Ann Treguboff are liable to Plaintiffs for Intentional Infliction of Emotional Distress)**

357.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

358.    The Treguboff's conduct was extreme and outrageous. As foster parents, they subjected E.F. to extreme bullying in their home, exposure to alcohol use, name-calling for his medical issues related to urination and defecation, did not provide accurate medical information to E.F.'s medical team nor did they follow E.F.'s medical team's advice, and did not permit E.F. to practice his Jewish faith.

359.    The Treguboffs intended to cause E.F. and Jessica's emotional distress or had reckless disregard for the certainty that distress would result from their conduct. Mrs. Treguboff told Jessica's son that his mother "was dangerous." The Treguboffs allowed bullying in their home. E.F. was shamed for his medical issues, called gay, dumb bitch, blocked from using the bathroom, and suffered a bite wound while under the care of the Treguboffs.

360.    The Treguboff's conduct caused E.F. and Jessica severe emotional distress.

361.    E.F. and Jessica will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**CLAIM FIFTEEN:**

**(Under established Arizona law, Defendants Jason and Leigh Ann Treguboff are liable to Jessica for Negligent Infliction of Emotional Distress)**

362.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

363.    Jessica witnessed injuries to her son while he was under the foster care of the Treguboffs.

364.    The Treguboffs are liable for the injuries (both mental and physical) E.F. suffered while he was fostering in their home.

365.    Jessica suffered mental anguish as a result of the mental and physical injuries her son suffered while under the care of the Treguboffs.

366.    Jessica will continue to suffer such damages into the future, all in an amount

**CLAIM SIXTEEN:**

**(Defendant PCH is liable to Plaintiffs, and each of them, for the Negligence exercised by Defendant employees or agents of PCH in carrying out their duties.)**

367.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

368.    Defendant PCH owed a duty to Plaintiffs to ensure that the employees, officers, and agents of PCH were qualified to serve in their respective roles before hiring and assigning them to act as medical doctors, nurse practitioners, or other medical professionals for PCH.

369.    Defendant PCH also owed a duty to Plaintiffs to ensure that the employees, officers, and agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

370.    As set forth above, Defendant PCH operated with negligence and breached these duties.

371.    As a direct and proximate result of Defendant's breaches of these duties, Plaintiffs were damaged in that they, among other things, were denied their constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships for extended periods of time during formative times in the lives of the child and the family, and Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

B. General damages and special damages according to proof, but in no event less than $15,000,000, including, but not limited to economic losses, medical costs, hedonic damages, psychological trauma, and emotional distress;

C. For injunctive relief in the form of DCS agreeing to provide training to all DCS case workers regarding:

    a. When exigent circumstances exist that justify the unwarranted seizure of a child;

    b. The psychological trauma and harm suffered by children and family that occurs when DCS removes a child from the custody of his or her parent;

    c. That prior to removing a child from the custody of his or her parent, DCS has a legal and constitutional obligation to conduct a thorough investigation into any allegations justifying removal, including investigating facts, witnesses, and evidence that refutes the allegations;

    d. That it is a violation of the Constitutional rights of children and parents to make misrepresentations or omissions to the court which are false and/or which demonstrate a reckless disregard for the truth; and

    e. That facilitating regular contact between parent and child through visitation is perhaps the most basic and essential of the services provided by the State and thus all reasonable efforts must be expended to ensure that a visitation occurs regularly and as scheduled.

D. The training described in (B) above must be provided, at a minimum, annually to all DCS case workers and must be included in the training provided to persons upon their becoming a DCS case worker;

E. Injunctive relief in the form of PCH agreeing to provide training for every staff member involved in providing medical treatment to minors that until a court

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

54

orders otherwise, the parent or legal guardian retains the sole legal authority to procure, solicit to perform, and/or arrange for the performance of a medical screening or medical treatment for a minor.

F.  For taxable costs and pre- and post-judgment interest to the extent permitted by law;

G.  For punitive and/or exemplary damages to the extent permitted by law and in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

H.  For attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and state law, as applicable; and,

I.  For such other relief as the Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 19th day of January 2022.

MILLS + WOODS LAW PLLC

By _____ */s/ Thomas A. Connelly* _____
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
    DeeAn Gillespie Strub
    7319 North 16th Street
    Phoenix, AZ 85020
    *Attorneys for Plaintiffs*

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27 PM 12: 06

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.

Plaintiff

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

PROOF OF SERVICE

**FILED**
BY F. Garza, DEP

       I,      Larry White     , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

  Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: STATE OF ARIZONA

### SERVICE DETAILS

    By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Lisa Fisher, Arizona Attorney General's Office authorized to accept for State of Arizona

      Address: 2005 N. Central Avenue, Phoenix, Arizona 85004

      Date: 1/25/2022

      Time: 9:52 AM

---

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LI Legal Service

722 E. Osborn Road, #335

Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED COS #2
DOCUMENT REPOSITORY

2022 JAN 27  PM 12: 07

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.                                   Case No.:    CV2021 - 017147

Plaintiff                                                                          **FILED**

            vs.                                              PROOF OF SERVICE         BY F. Garza, **DEP**

STATE OF ARIZONA, et al.

Defendant(s)

       I,      Larry White      , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

  Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: MICHAEL FAUST

### SERVICE DETAILS

      By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Michael Faust

      Address: 3003 N. Central Avenue, Phoenix, Arizona 85012

        Date: 1/25/2022

        Time: 10:00 AM

---

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service

732 E. Osborn Road, #335

Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED COB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 07

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.                                    Case No.:     CV2021 - 017147
Plaintiff
                                                                                              **FILED**
                            vs.                              PROOF OF SERVICE      BY F. Garza, DEP
STATE OF ARIZONA, et al.
Defendant(s)

        I,        Larry White        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and
that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JANE DOE FAUST
                                                    SERVICE DETAILS

        By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Jane Doe Faust
        Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
          Date: 1/25/2022
          Time: 10:00 AM

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

                                                                                        L4 Legal Service
Signature of Notary Public                                                    722 E. Osborn Road, #335
                                                                                        Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED OCB #2
DOCUMENT DEPOSITORY

2022 JAN 27 PM 12: 07

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.
Plaintiff

             vs.

STATE OF ARIZONA, et al.
Defendant(s)

Case No.:   CV2021 - 017147

PROOF OF SERVICE

**FILED**
BY E Garza, DEP

     I,     Larry White     , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
   Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: BRYAN ADAMS

### SERVICE DETAILS

    By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

   Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Bryan Adams
    Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
    Date: 1/25/2022
    Time: 10:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

Larry White

JJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED COB #2
DOCUMENT DEPOSITORY

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

2022 JAN 27  PM 12: 07

JESSICA FIDLER, et al.

Plaintiff

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

PROOF OF SERVICE

**FILED**
BY F. Garza, DEP

I,        Larry White        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JANE DOE ADAMS

### SERVICE DETAILS

By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Jane Doe Adams

Address: 3003 N. Central Avenue, Phoenix, Arizona 85012

Date: 1/25/2022

Time: 10:00 AM

---

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 2(th day of January, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED COS #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 07

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.

Plaintiff

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:     CV2021 - 017147

PROOF OF SERVICE

**FILED**
**BY F. Garza, DEP**

I,      Shante Pritchett      , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: BO BORCH-CHRISTENSEN

### SERVICE DETAILS

By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

Person served: Haylie Damron, Agent authorized to accept for Bo Borch-Christensen

Address: 8800 E. Raintree Drive, #100, Scottsdale, Arizona 85260

Date: 1/25/2022

Time: 11:00 AM

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 26TH day of JANUARY, 2022, by the affiant.

Signature of Notary Public

LARRY WHITE
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 612377
Expires October 10, 2025

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 07

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.                              Case No.:    CV2021 - 017147        **FILED**
Plaintiff                                                                                          **BY F. Garza, DEP**
                          vs.                        PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

    I,    Shante Pritchett    , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
  Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JANE DOE CHRISTENSEN

SERVICE DETAILS

    By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Haylie Damron, Agent authorized to accept for Jane Doe Christensen
    Address: 8800 E. Raintree Drive, #100, Scottsdale, Arizona 85260
    Date: 1/25/2022
    Time: 11:00 AM

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 24th day of JANUARY, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

LARRY WHITE
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 612377
Expires October 10, 2025



2022 JAN 27 PM 12:06

**FILED**
BY F. Garza, DEP

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.                                    Case No.:      CV2021 - 017147
Plaintiff

               vs.                                    PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

        I,      Larry White      , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: ARIZONA DEPARTMENT OF CHILD SAFETY
                                     SERVICE DETAILS

        By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

      Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Arizona Department Of Child Safety
          Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
            Date: 1/25/2022
            Time: 10:00 AM

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

**CHERYL PRITCHETT**
Notary Public · Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED COS #2
DOCUMENT DEPOSITORY

2022 JAN 27 PM 12: 06

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.                                    Case No.:    CV2021 - 017147
Plaintiff

**FILED**
**BY F. Garza, DEP**

                    vs.                                   PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

        I,        Larry White        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and
that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

    Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: MARISOL MANJARREZ
                              SERVICE DETAILS

        By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.


    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Marisol Manjarrez
        Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
        Date: 1/25/2022
        Time: 10:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January , 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597751
My Comm. Expires Mar 30, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED COB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 06

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.                         Case No.:     CV2021 - 017147
Plaintiff                                                                              **FILED**
                    vs.                          PROOF OF SERVICE    BY F. Garza, DEP

STATE OF ARIZONA, et al.
Defendant(s)

     I,      Larry White     , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JOHN DOE MANJARREZ

### SERVICE DETAILS

    By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for John Doe Manjarrez
      Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
      Date: 1/25/2022
      Time: 10:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January , 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597751
My Comm. Expires Mar 30, 2025



SUPERIOR COURT
RECEIVED OOB #2
DOCUMENT DEPOSITORY

2022 JAN 27 PM 12: 06

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.

Plaintiff

Case No.:    CV2021 - 017147

**FILED**
BY F. Garza, DEP

vs.

PROOF OF SERVICE

STATE OF ARIZONA, et al.

Defendant(s)

I,        Larry White        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: LISA BURNS

### SERVICE DETAILS

By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Lisa Burns

Address: 3003 N. Central Avenue, Phoenix, Arizona 85012

Date: 1/25/2022

Time: 10:00 AM

---

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 24th day of January , 2022, by the affiant.

Signature of Notary Public

Larry White

L/ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED COS #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 06

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.                                    Case No.:    CV2021 - 017147
Plaintiff

**FILED**
**BY F. Garza, DEP**

                    vs.                                        PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

    I,        Larry White        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and
that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

   Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
     Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JOHN DOE BURNS

                                SERVICE DETAILS

        By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for John Doe Burns
        Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
        Date: 1/25/2022
        Time: 10:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26ᵗʰ day of January , 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 06

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.                                        Case No.:     CV2021 - 017147

Plaintiff

**FILED**
BY F. Garza, DEP

               vs.                                        PROOF OF SERVICE

STATE OF ARIZONA, et al.

Defendant(s)

     I,        Larry White      , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: KIMMESHA EDWARDS

### SERVICE DETAILS

       By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Kimmesha Edwards
     Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
     Date: 1/25/2022
     Time: 10:00 AM

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LL Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED COB #2
DOCUMENT DEPOSITORY

2022 JAN 27 PM 12: 06

**FILED**
BY F. Garza, DEP

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.                              Case No.:    CV2021 - 017147
Plaintiff

               vs.                              PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

      I,       Larry White      , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
   Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JOHN DOE EDWARDS

### SERVICE DETAILS

      By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for John Doe Edwards
      Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
      Date: 1/25/2022
      Time: 10:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this _26th_ day of _January_, 2022, by the affiant.

_____
Signature of Notary Public

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CLERK OF THE
SUPERIOR COURT
RECEIVED COB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 06

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.                                         Case No.:      CV2021 - 017147
Plaintiff

**FILED**
**BY** F. Garza, **DEP**

vs.                                                   PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

    I,    Larry White    , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
  Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: FRANCISCO SANEZ III

### SERVICE DETAILS

    By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Francisco Sanez III
      Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
      Date: 1/25/2022
      Time: 10:00 AM

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LA Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 07

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.

Plaintiff

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

**FILED**
BY F. Garza, DEP

PROOF OF SERVICE

      I,     Larry White     , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: MELINDA QUIGLEY

### SERVICE DETAILS

      By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Melinda Quigley
      Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
      Date: 1/25/2022
      Time: 10:00 AM

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 07



## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.

Plaintiff

           vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

PROOF OF SERVICE

**FILED**
**BY F. Garza, DEP**

I,      Larry White      , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JOHN DOE QUIGLEY

SERVICE DETAILS

By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

Person served: Yessica Arviza, Arizona Department Of Child Safety authorized to accept for John Doe Quigley

Address: 3003 N. Central Avenue, Phoenix, Arizona 85012

Date: 1/25/2022

Time: 10:00 AM

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January , 2022, by the affiant.

Signature of Notary Public

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014



**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**   2022 JAN 27  PM 12: 07
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.                                    Case No.:    CV2021 - 017147
Plaintiff
                                                                              **FILED**
             vs.                             PROOF OF SERVICE    BY F. Garza, DEP
STATE OF ARIZONA, et al.
Defendant(s)


   I,      Shante Pritchett      , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
   Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JOHN DOE COFFMAN
                                    SERVICE DETAILS


       By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.


    Person served: Haylie Damron, Agent authorized to accept for John Doe Coffman
       Address: 8800 E. Raintree Drive, #100, Scottsdale, Arizona 85260
       Date: 1/25/2022
       Time: 11:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this _26_TH_ day of _JANUARY_, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

LARRY WHITE
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 612377
Expires October 10, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 08

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA**

**FILED
BY F. Garza, DEP**

JESSICA FIDLER, et al.
Plaintiff

Case No.:    CV2021 - 017147

vs.

PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

    I,       Larry White       , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

  Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: PHOENIX CHILDREN'S HOSPITAL

SERVICE DETAILS

    By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Scott Whaley, CT Corporation System authorized to accept for Phoenix, Children's Hospital
      Address: 3800 N. Central Avenue, Suite 460, Phoenix, Arizona 85012
      Date: 1/25/2022
      Time: 1:33 PM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this _26th_ day of _January_ , 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



2022 JAN 27 PM 12: 07

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.

Plaintiff

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

PROOF OF SERVICE

**FILED**
BY F. Garza, DEP

I,        Larry White        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JOHN DOE LAMONTE

### SERVICE DETAILS

By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for John Doe Lamonte

Address: 3003 N. Central Avenue, Phoenix, Arizona 85012

Date: 1/25/2022

Time: 10:00 AM

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

2022 JAN 27  PM 12: 07

| | |
|---|---|
| JESSICA FIDLER, et al. | Case No.:    CV2021 - 017147 |
| Plaintiff | |
| vs. | PROOF OF SERVICE |
| STATE OF ARIZONA, et al. | **FILED**<br>**BY F. Garza, DEP** |
| Defendant(s) | |

I,       Larry White       , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: BLACK ENTITIES 1-5

SERVICE DETAILS

By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Black Entities 1-5
Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
Date: 1/25/2022
Time: 10:00 AM

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27  PM 12: 07

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.                                 Case No.:    CV2021 - 017147
Plaintiff

**FILED**
**BY F. Garza, DEP**

            vs.                                              PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

      I,      Larry White      . declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: AMBER LAMONTE

### SERVICE DETAILS

      By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Amber Lamonte

      Address: 3003 N. Central Avenue, Phoenix, Arizona 85012

      Date: 1/25/2022

      Time: 10:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 24th day of January , 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED COB #2
DOCUMENT DEPOSITORY

2022 JAN 27 PM 12: 07

**FILED**
**BY F. Garza, DEP**

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.                                    Case No.:        CV2021 - 017147
Plaintiff

                            vs.                           PROOF OF SERVICE

STATE OF ARIZONA, et al.
Defendant(s)

I,        Shante Pritchett        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: KATHRYN COFFMAN

### SERVICE DETAILS

By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

Person served: Haylie Damron, Agent authorized to accept for Kathryn Coffman
    Address: 8800 E. Raintree Drive, #100, Scottsdale, Arizona 85260
    Date: 1/25/2022
    Time: 11:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26ᵀᴴ day of JANUARY , 2022, by the affiant.

Signature of Notary Public

LARRY WHITE
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 612377
Expires October 10, 2025

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014



CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27 PM 12: 07

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

JESSICA FIDLER, et al.

Plaintiff

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

PROOF OF SERVICE

**FILED**
BY F. Garza, DEP

    I,        Larry White       , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

  Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JANE DOES 1-5

SERVICE DETAILS

    By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

  Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Jane Does 1-5

    Address: 3003 N. Central Avenue, Phoenix, Arizona 85012

    Date: 1/25/2022

    Time: 10:00 AM

---

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 JAN 27 PM 12: 07

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.
Plaintiff

        vs.

STATE OF ARIZONA, et al.
Defendant(s)

Case No.:   CV2021 - 017147

**FILED**
BY F. Garza, DEP

PROOF OF SERVICE

    I,      Larry White     , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

  Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JANE DOE SANEZ III

SERVICE DETAILS

    By: leaving a copy of the service document with the person authorized to accept on behalf of the named being served.

    Person served: Yessica Arvizu, Arizona Department Of Child Safety authorized to accept for Jane Doe Sanez III
      Address: 3003 N. Central Avenue, Phoenix, Arizona 85012
      Date: 1/25/2022
      Time: 10:00 AM

---

State of Arizona
County of Maricopa

SUBSCRIBED AND SWORN to before me this 26th day of January, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025



**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.

Plaintiff

Case No.:    CV2021 - 017147

vs.

PROOF OF SERVICE

STATE OF ARIZONA, et al.

Defendant(s)

I,     Shante Pritchett     , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: JASON TREGUBOFF

SERVICE DETAILS

By: personally handing a copy of the service document to the named individual.

Person served: Jason Treguboff

Address: 6420 N. Florence Avenue, Litchfield, Arizona 85340

Date: 2/1/2022

Time: 11:30 AM

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this _1st_ day of _February_, 2022, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

LARRY WHITE
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 612377
Expires October 10, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #2
DOCUMENT DEPOSITORY

2022 FEB -2 PM 2: 05

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.

Plaintiff

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

**FILED
BY C. O'NEILL, DEP**

PROOF OF SERVICE

I,    Shante Pritchett    , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: LEIGH TREGUBOFF

SERVICE DETAILS

By: leaving a copy of the service document with a person of suitable age and discretion at the usual place of abode for the named being served.

Person served: Jason Treguboff spouse authorized to accept for Leigh Treguboff

Address: 6420 N. Florence Avenue, Litchfield, Arizona 85340

Date: 2/1/2022

Time: 11:30 AM

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this ___ day of _February_ 2022, by the affiant.

_____
Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014



LARRY WHITE
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 612377
Expires October 10, 2025

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
2/3/2022 3:10:26 PM
Filing ID 13898402

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Sandra T. Daussin (AZ Bar #037274)
**GILLESPIE, SHIELDS, GOLDFARB,
& TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com
*Attorneys for Plaintiff*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JESSICA FIDLER, *et al*., | Case No.: CV2021-017147 |
| Plaintiffs, | |
| v. | **NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF DEFENDANT ARIZONA DEPARTMENT OF CHILD SAFETY** |
| STATE OF ARIZONA, et al., | |
| Defendants. | (Hon. Christopher Coury) |

Notice is hereby given that pursuant to Rule 41(a)(1)(A)(i), Ariz. R. Civ. P., Plaintiffs are voluntarily dismissing Defendant Arizona Department of Child Safety ("DCS") from this matter. Plaintiffs are doing so because in a similar action alleging violation of constitutional rights, gross negligence, and other wrongful conduct by employees of DCS, the United States District Court for the District of Arizona dismissed

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

the claims against DCS in that case on the court's finding that DCS is a non-jural entity even for the purposes of federal constitutional claims brought under 43 U.S.C. § 1981. The plaintiffs in that matter have appealed that ruling and the appeal is currently pending. As a result of the court's ruling in that other matter, the State Defendants in this matter have threatened that unless Plaintiffs dismiss DCS from this matter, that the State Defendants would file a motion to dismiss DCS as a non-jural entity and then seek an award of attorneys' fees and costs to be assessed against Plaintiffs. Plaintiffs are not wealthy people, and an award of attorneys' fees and costs would be a financial burden on them. Plaintiffs then agreed to voluntarily dismiss DCS without prejudice here if the State Defendants, primarily the State of Arizona and DCS, would agree that if the appeal in the other matter resolves in favor of the plaintiffs there, meaning that DCS can be sued directly on § 1983 claims, that State Defendants and DCS would not oppose a motion to amend to reassert claims against DCS in this matter, and would also not seek to dismiss based on any limitations period that might expire during the pendency of the appeal in the other matter. State Defendants refused that offer. Thus, Plaintiffs now voluntarily dismiss DCS from this action, without prejudice, under the duress of the State of Arizona threats to seek an award of attorneys' fees and costs if State Defendants were to successfully move for dismissal of DCS as a non-jural entity.

**RESPECTFULLY SUBMITTED** this 1st day of February 2022.

**MILLS + WOODS LAW PLLC**

By____/s/ Thomas A. Connelly_____
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014

**GILLESPIE, SHIELDS, GOLDFARB, TAYLOR & HOUK**
    DeeAn Gillespie Strub
    Sandra T. Daussin
    7319 North 16th Street
    Phoenix, AZ 85020

*Attorneys for Plaintiffs*

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

2

1

2

**ECF Filed via AZ Turbo Court and**
3   **Copy served via ECF** this 3rd day
of February 2022 to:
4

5   Mark Brnovich
Timothy Watson
6   Christopher J. Feasel
**OFFICE OF THE ATTORNEY GENERAL**
7   2005 North Central Avenue
Phoenix, Arizona 85004-1592
8   defensephx@azag.gov
timothy.watson@azag.gov
9   christopher.feasel@azag.gov
*Attorneys for State Defendants*
10

11

12   Michael F. Tamm, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
13   8800 East Raintree Drive, Suite 100
Scottsdale, AZ 85260
14   *Attorneys for Defendants Kathryn Coffman*
*and John Doe Coffman, Bo Borch-Christensen and Jane Doe*
15   *Christensen, and Phoenix Children's Hospital, Inc.*

16

17   _____/s/ Thomas A. Connelly_____

18

19

20

21

22

23

24

25

26

27

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Clerk of the Superior Court
*** Electronically Filed ***
A. Beard, Deputy
2/3/2022 5:41:15 PM
Filing ID 13899718

1  Thomas A. Connelly (AZ Bar #019430)
   Robert T. Mills (AZ Bar #018853)
2  Sean A. Woods (AZ Bar #028930)
   **MILLS + WOODS LAW PLLC**
3  5055 North 12th Street, Suite 101
   Phoenix, Arizona 85014
4  Telephone 480.999.4556
   docket@millsandwoods.com
5
6  DeeAn Gillespie Strub (AZ Bar #009987)
   **GILLESPIE, SHIELDS, GOLDFARB &**
7  **TAYLOR**
   7319 North 16th Street
8  Phoenix, Arizona 85020
   Telephone: (602) 870-9700
9  Fax: (602) 870-9783
   mailroom@gillaw.com
10 *Attorneys for Plaintiffs*

11

12        **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

13           **IN AND FOR THE COUNTY OF MARICOPA**

14 JESSICA FIDLER, *et al.*,                Case No.: CV2021-017147

15                      Plaintiffs

16         v.                               **MOTION TO ENLARGE TIME
                                                OF SERVICE**
17 STATE OF ARIZONA, *et al.*,
                                            (Rules 4(i) and 6(b) A.R.Civ.P.)
18                      Defendants.
                                            (Honorable Christopher Coury)
19

20

21

22        Plaintiff, by and through undersigned counsel, pursuant to A.R.Civ.P. Rules 4(i) and

23 6(b) hereby requests the Court grant an enlargement of time to serve Defendants, Drue

24 Kaplan-Siekmann and her spouse, John Doe Kaplan-Siekmann (collectively,

25 "Defendants"). Plaintiff is simultaneously filing a motion for alternate service, which is

26 fully incorporated herein by reference.

27 ///

28

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    FACTUAL BACKGROUND

On November 3, 2021, Plaintiffs filed this lawsuit against numerous defendants, including the Kaplan-Siekmann Defendants. Defendant Drue Kaplan-Siekmann is contract service provider for the State of Arizona through Defendant Arizona Department of Child Services ("DCS"). Defendant Drue Kaplan-Siekman was acting under the color of law as a DCS service provider. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights act of 1871, 42 U.S.C. §1983 and thus, service cannot be effectuated at Defendant DCS.

Plaintiff's process server has tried eight (8) times between January 25, 2022 and February 1, 2022 to personally serve the Defendants. *See* Affidavit of Attempted Service, attached hereto as **Exhibit A**. On January 25, 2022, at approximately 2:15pm, Plaintiffs' process server arrived at the Kaplan-Siekmann Defendants' residence. *Id.* He knocked on the door, but no one answered. *Id.* Plaintiffs' process server noted that there were two cars in the driveway. *Id.* On January 25, 2022, at approximately 5:39pm, Plaintiffs' process server once again attempted service on the Kaplan-Siekmann Defendants at their residence. *Id.* He noted there were now three cars in the driveway and heard a dog barking and observed a light on in the home, but no one answered the door. *Id.* In addition, Plaintiffs' process server attempted service on the following dates and times: January 26, 2022; at approximately 7:30 am, January 28, 2022; at approximately 6:10 pm, January 29, 2022; at approximately 8:10 am, January 29, 2022; at approximately 3:15 pm, January 30, 2022; at approximately 1:45 pm, February 1, 2022; at approximately 4:30 pm, on all of these attempts the process server knocked on the door, but no one answered the door. *Id.* Plaintiffs and their process server believe the Kaplan-Siekmann Defendants are intentionally avoiding service. Plaintiffs further believe that Defendant Kaplan-Siekmann is aware of the on-going litigation through her contract services employment with Defendant DCS and is aware of the service attempts

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

II.    **CONCLUSION**

Therefore, for good cause shown, counsel requests this Court extend the time and enlarge the deadline for service for a period of thirty (30) days to allow time for Plaintiff's counsel to file a motion to serve the Defendants by alternate service. Plaintiff is simultaneously filing a motion for alternate service, which is fully incorporated herein by reference.

**RESPECTFULLY SUBMITTED** this 3rd day of February 2022.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR

By___*/s/ DeeAn Gillespie Strub*__
DeeAn Gillespie Strub
Kristina Reeves
7319 North 16th Street
Phoenix, AZ 85020

MILLS + WOODS LAW PLLC
Thomas A. Connelly
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014

*Attorneys for Plaintiff*

**ORIGINAL** E-Filed/E-Served this 3rd day of
February 2022 with the Clerk of the
Maricopa County Superior Court.


/s/ Michelle Feltes

3

EXHIBIT A

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.

Plaintiff

                                    vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

AFFIDAVIT OF ATTEMPTED SERVICE

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: DRUE KAPLAN-SIEKMAN AND JOHN DOE SIEKMAN

I,        Larry White        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that after due search, careful inquiry and diligent attempts at the address(es) listed below, I have been unable to effect service of process upon person(s) and or entity(s) because of the following reason(s):

On 1/25/22 at 2:15 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are two cars in the driveway, a white Honda with a new plate and a Honda CRV Arizona plate #00226HR

On 1/25/22 at 5:39 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There is a dog barking and a light on that I can see at the window. Now there are three vehicles at the residence the white Honda with new plate, the Honda CRV Arizona plate #00226HR and a gray Hyundai Arizona plate #CPT1713

On 1/26/22 at 7:30 AM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 1/28/22 at 6:10 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 1/29/22 at 8:10 AM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 1/29/22 at 3:15 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 1/30/22 at 1:45 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 2/01/22 at 4:30 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

State of Arizona          )

County of Maricopa      )

SUBSCRIBED AND SWORN to before me this _3rd_ day of _February_, 2022, by the affiant.

_____
Signature of Notary Public

I declare under the penalty of perjury that the foregoing is true and correct,

_____
Certified Process Server
LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025







Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
2/3/2022 5:44:50 PM
Filing ID 13899727

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
**GILLESPIE, SHIELDS, GOLDFARB & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com
*Attorneys for Plaintiffs*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JESSICA FIDLER, *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> STATE OF ARIZONA, *et al.*, <br><br> Defendants. | Case No.: CV2021-017147 <br><br> **MOTION FOR** <br><br> **ALTERNATIVE SERVICE** <br><br> (Rules 4.1(k) A.R.Civ.P.) <br><br> (Honorable Christopher Coury) |

Plaintiffs, by and through undersigned counsel and pursuant to Ariz. R. Civ. P. 4.1(k), hereby request this Court enter an order allowing alternative service of the Summons and Complaint in this matter because extensive efforts to serve Defendants Drue Kaplan-Siekmann and her spouse, John Doe Kaplan-Siekmann (the "Kaplan-Siekmann Defendants") pursuant to the standard method of service authorized by Rule 4.1(d) have failed. The Kaplan-Siekmann Defendants are

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

intentionally avoiding service of process. This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  FACTUAL BACKGROUND

On November 3, 2021, Plaintiffs filed this lawsuit against numerous defendants, including the Kaplan-Siekmann Defendants. Defendant Drue Kaplan-Siekmann is contract service provider for the State of Arizona through Defendant Arizona Department of Child Services ("DCS"). Defendant Drue Kaplan-Siekman was acting under the color of law as a DCS service provider. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights act of 1871, 42 U.S.C. §1983. and thus, service cannot be effectuated at Defendant DCS.

Plaintiffs' process server attempted service at the Kaplan-Siekmann Defendants' home address on eight (8) separate occasions. *See* Affidavit of Attempted Service, attached hereto as **Exhibit A**.  On January 25, 2022; at approximately 2:15 pm, Plaintiffs' process server arrived at the Kaplan-Siekmann Defendants' residence. *Id.* He knocked on the door, but no one answered. *Id.* Plaintiffs' process server noted that there were two cars in the driveway. *Id.* On January 25, 2022; at approximately 5:39 pm, Plaintiffs' process server once again attempted service on the Kaplan-Siekmann Defendants at their residence. *Id.* He noted there were now three cars in the driveway and heard a dog barking and observed a light on in the home, but no one answered the door. *Id.* In addition, Plaintiffs' process server attempted service on the following dates and times: January 26, 2022; at approximately 7:30 am, January 28, 2022; at approximately 6:10 pm, January 29, 2022; at approximately 8:10 am, January 29, 2022; at approximately 3:15 pm, January 30, 2022; at approximately 1:45 pm, February 1, 2022; at approximately 4:30 pm, on all of these attempts the process server knocked on the door, but no one answered the door. *Id.*

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1    Plaintiffs and their process server believe the Kaplan-Siekmann Defendants
2    are avoiding service. Plaintiffs further believe that Defendant Kaplan-Siekmann is
3    aware of the on-going litigation through her contract services employment with
4    Defendant DCS and is aware of the service attempts.

5    **II.**    **LEGAL ARGUMENT**

6    **A.**    **The Court Should Allow for Service Via Notice and Mailing.**

7    Pursuant to Ariz. R. Civ. P. 4.1(k), the Court should permit Plaintiffs to serve
8    the Kaplan-Siekmann Defendants via alternative service. Plaintiffs have complied
9    with Ariz. R. Civ. P. 4.1(i) by attempting service on more than three separate
10   occasions within the requisite ninety-day period. Plaintiffs' process server has
11   confirmed that the Kaplan-Siekmann Defendants live at 1008 E. San Miguel
12   Avenue, Phoenix, Arizona 85014. Additionally, the Maricopa County Assessor
13   lists Matthew Leonard Siekmann as the owner of the property, and the Deed of
14   Trust recorded on the Maricopa County Recorder's 20211163553 for the property
15   is in the names of both Matthew Leonard Siekmann and Drue Kaplan-Siekmann
16   Defendants *See* **Exhibit B**. Plaintiffs have already incurred costs in attempting to
17   serve the Kaplan-Siekmann Defendants. As it appears they are avoiding service,
18   additional attempts would likely result in additional wasted costs. Thus, Plaintiffs
19   respectfully request the Court allow Plaintiffs to effect service of process by "notice
20   and mailing" pursuant to Ariz. R. Civ. P. 4.1(k)(2).

21   Upon an order from the Court, Plaintiffs will have their process server post
22   a copy of the summons and Complaint on the front door of the Kaplan-Siekmann
23   Defendants' residence. Plaintiffs will also send the Summons and Complaint via
24   certified mail to 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. Plaintiff's
25   are simultaneously filing their motion to extend the time and enlarge the deadline
26   for service, pursuant to rules 4(i) and 6(b) A.R. Civ.P.. which is fully incorporated
27   herein by reference, an order for alternate service will allow Plaintiffs to complete
28   service within the requested additional service time.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

3

B.    **Request for Attorneys' Fees and Costs.**

The Kaplan-Siekmann Defendants' intentional avoidance of service has caused Plaintiffs to incur unnecessary fees and costs above and beyond the costs typically associated with initiating and serving a Complaint. Thus, Plaintiffs requests their reasonable attorneys' fees and costs associated with the multiple attempts at personal service, filing this motion, and the costs associated with service via posted notice and certified mail.

III.    **CONCLUSION**

The proposed method of alternative service is appropriate given the attempts at service in this case as well as the rules of civil procedure. Plaintiffs respectfully request that this Court grant them permission to serve the Kaplan-Siekmann Defendants via notice and mailing and grant them the attorneys' fees and costs associated with service of the Summons and Complaint.

**RESPECTFULLY SUBMITTED** this 3rd day of February 2022.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR

By    _/s/ DeeAn Gillespie Strub_
DeeAn Gillespie Strub
Kristina Reeves
7319 North 16th Street
Phoenix, AZ 85020

MILLS + WOODS LAW PLLC
Thomas A. Connelly
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014

*Attorneys for Plaintiff*

/ / /

/ / /

/ / /

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

4

1  **ORIGINAL** E-Filed/E-Served this 3rd day of
2   February 2022 with the Clerk of the
    Maricopa County Superior Court.

3

4

5  /s/ Michelle Feltes

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

EXHIBIT A

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JESSICA FIDLER, et al.

Plaintiff

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2021 - 017147

AFFIDAVIT OF ATTEMPTED SERVICE

Received documents from: DeeAn Gillespie, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: DRUE KAPLAN-SIEKMAN AND JOHN DOE SIEKMAN

I,    Larry White    , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that after due search, careful inquiry and diligent attempts at the address(es) listed below, I have been unable to effect service of process upon person(s) and or entity(s) because of the following reason(s):

On 1/25/22 at 2:15 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are two cars in the driveway, a white Honda with a new plate and a Honda CRV Arizona plate #00226HR

On 1/25/22 at 5:39 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There is a dog barking and a light on that I can see at the window. Now there are three vehicles at the residence the white Honda with new plate, the Honda CRV Arizona plate #00226HR and a gray Hyundai Arizona plate #CPT1713

On 1/26/22 at 7:30 AM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 1/28/22 at 6:10 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 1/29/22 at 8:10 AM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 1/29/22 at 3:15 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 1/30/22 at 1:45 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

On 2/01/22 at 4:30 PM I attempted to serve Drue Kaplan- Siekman and John Doe Siekman at 1008 E. San Miguel Avenue, Phoenix, Arizona 85014. I knocked on the door, no one answered. There are no vehicles at the residence.

State of Arizona          )
County of Maricopa        )

SUBSCRIBED AND SWORN to before me this 3rd day of February , 2022, by the affiant.

Signature of Notary Public

I declare under the penalty of perjury that the foregoing is true and correct.

Certified Process Server
LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - Arizona
Maricopa County
Commission # 597251
My Comm. Expires Mar 30, 2025







EXHIBIT B

**162-08-011**                                                    **Residential Parcel**

This is a Residential parcel located at 1008 E SAN MIGUEL AVE PHOENIX 85014. The current owner is SIEKMANN MATTHEW LEONARD. It is located in the TOWNHOUSE TERRACE 2 subdivision, and MCR 5240. Its current year full cash value is $386,800.

| | | | |
|---|---|---|---|
| 📍 MAPS | 🖼 PICTOMETRY | $ VIEW/PAY TAX BILL | 📖 DEED |
| 👤 OWNER | 💳 VALUATIONS | 🏠 ADDITIONAL INFO | ✂ SKETCHES |
| ⊘ MAP FERRET | 📊 SIMILAR PARCELS | ☑ REGISTER RENTAL | 🖨 PRINT DETAILS |

## PROPERTY INFORMATION

 1008 E SAN MIGUEL AVE PHOENIX 85014

| | |
|---|---|
| MCR # | 5240 |
| Description | TOWNHOUSE TERRACE 2 |
| Lat/Long | 33.519589 | -112.060129 |
| Lot Size | 7,357 sq ft. |
| Zoning | R1-6 |
| Lot # | 11 |
| High School District | PHOENIX UNION #210 |
| Elementary School District | MADISON ELEMENTARY SCHOOL DISTRICT |
| Local Jurisdiction | PHOENIX |
| S/T/R ⓘ | 16 2N 3E |
| Market Area/Neighborhood | 18/002 |
| Subdivision (54 Parcels) | TOWNHOUSE TERRACE 2 |

## OWNER INFORMATION

 SIEKMANN MATTHEW LEONARD

| | |
|---|---|
| Mailing Address | 1008 E SAN MIGUEL AVE, PHOENIX, AZ 85014 |

| | |
|---|---|
| **Deed Number** | <u>140372147</u> |
| **Last Deed Date** | 06/06/2014 |
| **Sale Date** | n/a |
| **Sale Price** | n/a |

# VALUATION INFORMATION

 We provide valuation information for the past 5 years. For mobile display, we only show 1 year of valuation information. Should you need more data, please look at our <u>data sales</u>.

The Valuation Information displayed below may not reflect the taxable value used on the tax bill due to any special valuation relief program. <u>CLICK HERE TO PAY YOUR TAXES OR VIEW YOUR TAX BILL</u> ☑

| Tax Year | 2022 | 2021 | 2020 | 2019 | 2018 |
|---|---|---|---|---|---|
| **Full Cash Value** ⑦ | $386,800 | $348,600 | $325,200 | $306,800 | $286,800 |
| **Limited Value** ⑦ | $225,253 | $214,527 | $204,311 | $194,582 | $185,316 |
| **Legal Class** | 3.1 | 3.1 | 3.1 | 3.1 | 3 |
| **Description** | PRIMARY RESIDENCE | PRIMARY RESIDENCE | PRIMARY RESIDENCE | PRIMARY RESIDENCE | PRIMARY RESIDENCE |
| **Assessment Ratio** | 10.0% | 10.0% | 10.0% | 10.0% | 10.0% |
| **Assessed LPV** | $22,525 | $21,453 | $20,431 | $19,458 | $18,532 |
| **Property Use Code** | 0131 | 0131 | 0131 | 0131 | 0131 |
| **PU Description** | Single Family Residence | Single Family Residence | Single Family Residence | Single Family Residence | Single Family Residence |
| **Tax Area Code** | 381300 | 381300 | 381300 | 381300 | 381300 |
| **Valuation Source** | Notice | Notice | Notice | Notice | Notice |

# ADDITIONAL PROPERTY INFORMATION

 Additional property data.

| | |
|---|---|
| **Construction Year** | 1952 |
| **Weighted Construction Year** | 1961 |
| **Improvement Quality** | R-3 (Average) |
| **Pool** | Yes |
| **Living Area** | 1,830 sq ft. |
| **Patio(s)** | Covered: 1 | Uncovered: 1 |
| **Exterior Wall Type** | 8" Painted Block |
| **Roof Type** | Asphalt Shingle |
| **Bath Fixtures** | 9 |

Unofficial
Document

16.
wa

Recording Requested By:
BETTER MORTGAGE CORPORATION

And After Recording Return To:
ATTN: BETTER MORTGAGE
POST-CLOSING BMC(101)
2704 ALT 19 NORTH
PALM HARBOR, FLORIDA
34683
Loan Number: 1546785091

*1937514*

——————————————————————————— [Space Above This Line For Recording Data] ———————————————————————————

# DEED OF TRUST

**MIN:** 100529015467850911

**MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated   OCTOBER 22, 2021                  , together with all Riders to this document.
**(B)** "**Borrower**" is   Matthew Leonard Siekmann, joined by non-titled spouse Drue Kaplan Siekmann, signing to waive homestead rights only

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 1008 E San Miguel Ave, Phoenix, Arizona 85014 Usa

**(C)** "**Lender**" is   BETTER MORTGAGE CORPORATION, ISAOA

Lender is a   CALIFORNIA CORPORATION                                      organized
and existing under the laws of   CALIFORNIA
Lender's mailing address is   3 WORLD TRADE CENTER, 175 GREENWICH STREET, 59TH FLOOR, NEW YORK, NEW YORK 10007

**(D)** "**Trustee**" is   WESTCOR LAND TITLE INSURANCE COMPANY

Trustee's mailing address is   5 FIRST AMERICAN WAY, FOUNTAIN VALLEY, CA 92708

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security**

ARIZONA - Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003  1/01 (rev. 6/02)

☆DocMagic

**Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   OCTOBER 22, 2021
The Note states that Borrower owes Lender   THREE HUNDRED TWENTY-SEVEN THOUSAND FIVE
HUNDRED THIRTEEN AND 00/100        Dollars (U.S. $  327,513.00        ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
NOVEMBER 1, 2051

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider             ☐ Biweekly Payment Rider
☐ 1-4 Family Rider          ☐ Second Home Rider
☐ Condominium Rider         ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                          of                              Maricopa                       :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 16208011

which currently has the address of  1008 E San Miguel Ave

                                                                            [Street]

Phoenix                               , Arizona           85014            ("Property Address"):
     [City]                                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section

15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of

any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or

restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any

interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value,

unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed

as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an

Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)
MATTHEW LEONARD SIEKMANN    -Borrower

_____(Seal)
DRUE KAPLAN SIEKMANN    -Borrower

_____
Witness

_____
Witness

Unofficial Document

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of ___ARIZONA___

County of __*Maricopa*__

The foregoing instrument was acknowledged before me this _22nd_ day of _October 2021_.

by _____

__MATTHEW LEONARD SIEKMANN AND DRUE KAPLAN SIEKMANN__

_____

_____

_____

(Signature of Person Taking Acknowledgment)

_Notary Public_
(Title or Rank)

OFFICIAL SEAL
SCHUYLER SAYLES
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
COMM # 560169
My Comm. Expires 03-26-2023

Unofficial Document

_#560169_
(Serial Number, if any)

(Seal)

Loan Originator: JOSEPH NORMAN HARRIS, NMLSR ID 2037469
Loan Originator Organization: Better Mortgage Corporation, NMLSR ID 330511

# Exhibit A

File No.: 1937514

The Land referred to herein below is situated in the County of MARICOPA, State of AZ, and is described as follows:

Lot 11, Townhouse Terrace Unit 2, a subdivision recorded in Book 52 of Maps, Page 40, records of Maricopa County, Arizona.

Being the same property as conveyed from Jennifer Lynn Summa to Matthew Leonard Siekmann as Deed Instrument #20140372147 dated 05/21/2014, recorded 06/06/2014, MARICOPA County, ARIZONA.

Tax ID: 16208011

Granted as Submitted
***See eSignature page***

Clerk of the Superior Court
*** Electronically Filed ***
L. Gilbert, Deputy
2/11/2022 8:00:00 AM
Filing ID 13923803

1  Thomas A. Connelly (AZ Bar #019430)
   Robert T. Mills (AZ Bar #018853)
2  Sean A. Woods (AZ Bar #028930)
   **MILLS + WOODS LAW PLLC**
3  5055 North 12th Street, Suite 101
   Phoenix, Arizona 85014
4  Telephone 480.999.4556
5  docket@millsandwoods.com

6  DeeAn Gillespie Strub (AZ Bar #009987)
   **GILLESPIE, SHIELDS, GOLDFARB &**
7  **TAYLOR**
   7319 North 16th Street
8  Phoenix, Arizona 85020
   Telephone: (602) 870-9700
9  Fax: (602) 870-9783
   mailroom@gillaw.com
10 *Attorneys for Plaintiffs*

11

12             **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

13               **IN AND FOR THE COUNTY OF MARICOPA**

14 JESSICA FIDLER, *et al.*,

15                          Plaintiffs        Case No.: CV2021-017147

16            v.

17                                            **ORDER FOR ALTERNATIVE**
                                                      **SERVICE**
18 STATE OF ARIZONA, *et al.*,

19                          Defendants.        (Rules 4.1(k) A.R.Civ.P.)

20                                            (Honorable Christopher Coury)

21

22

23      The Court having reviewed Plaintiff's motion for alternative service pursuant

24 to Rules 4.1(k) for good cause shown;

25      IT IS ORDERED GRANTING Plaintiff's Motion for alternative service.

26

27      IT IS FURTHER ORDERED Plaintiff shall serve Defendants, Drue Kaplan-

28 Siekmann and her spouse, John Doe Kaplan-Siekmann, by posting a copy of the underlying

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

summons and complaint to the door of the property located at 1008 E. San Miguel Avenue,

Phoenix, Arizona 85014, and by mailing a copy of the underlying summons and complaint

by US mail, certified, return receipt to the address of 1008 E. San Miguel Avenue, Phoenix,

Arizona 85014.


DONE IN OPEN COURT this _____ day of _____ 2022.


_____
Honorable Christopher Coury

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

# eSignature Page 1 of 1

Filing ID: 13923803   Case Number: CV2021-017147
Original Filing ID: 13899727

---

**Granted as Submitted**

Judicial Officer Comments

/s/  Christopher A. Coury

February 10, 2022



/S/ Christopher Coury Date: 2/10/2022
Judicial Officer of Superior Court

# ENDORSEMENT PAGE

CASE NUMBER: CV2021-017147

SIGNATURE DATE: 2/10/2022

E-FILING ID #: 13923803

FILED DATE: 2/11/2022 8:00:00 AM

DEEAN GILLESPIE STRUB

THOMAS A CONNELLY

Granted as Submitted
***See eSignature page***

Clerk of the Superior Court
*** Electronically Filed ***
L. Gilbert, Deputy
2/11/2022 8:00:00 AM
Filing ID 13923799

1  Thomas A. Connelly (AZ Bar #019430)
   Robert T. Mills (AZ Bar #018853)
2  Sean A. Woods (AZ Bar #028930)
   **MILLS + WOODS LAW PLLC**
3  5055 North 12th Street, Suite 101
   Phoenix, Arizona 85014
4  Telephone 480.999.4556
5  docket@millsandwoods.com

6  DeeAn Gillespie Strub (AZ Bar #009987)
   **GILLESPIE, SHIELDS, GOLDFARB &**
7  **TAYLOR**
   7319 North 16th Street
8  Phoenix, Arizona 85020
   Telephone: (602) 870-9700
9  Fax: (602) 870-9783
   mailroom@gillaw.com
10 *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JESSICA FIDLER, *et al.*,<br><br>                              Plaintiffs<br><br>v.<br><br>STATE OF ARIZONA, *et al.*,<br><br>                              Defendants. | Case No.: CV2021-017147<br><br>**ORDER TO ENLARGE TIME OF SERVICE**<br><br>(Rules 4(i) and 6(b) A.R.Civ.P.)<br><br><br>(Honorable Christopher Coury) |

The Court having reviewed Plaintiff's motion to enlarge time of service pursuant to Rules 4(i) and 6(b) A.R.Civ.P and for good cause shown;

IT IS ORDERED GRANTING Plaintiff's Motion to extend the time and enlarge the deadline for service for a period of thirty (30) days to allow time for Plaintiff's counsel to file a motion to serve the Defendants by alternate service.

1

2

3    DONE IN OPEN COURT this _____ day of _____ 2022.

4

5    _____

6    Honorable Christopher Coury

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556



# eSignature Page 1 of 1

Filing ID: 13923799   Case Number: CV2021-017147
Original Filing ID: 13899718

---

**Granted as Submitted**

Judicial Officer Comments

/s/  Christopher A. Coury

February 10, 2022



/S/ Christopher Coury Date: 2/10/2022
_____
Judicial Officer of Superior Court

# ENDORSEMENT PAGE

CASE NUMBER: CV2021-017147                    SIGNATURE DATE: 2/10/2022

E-FILING ID #: 13923799                            FILED DATE: 2/11/2022 8:00:00 AM


DEEAN GILLESPIE STRUB



THOMAS A CONNELLY

Clerk of the Superior Court
*** Electronically Filed ***
T. Hays, Deputy
2/7/2022 3:08:33 PM
Filing ID 13909421

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12ᵗʰ Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
**GILLESPIE, SHIELDS, GOLDFARB,
& TAYLOR**
7319 North 16ᵗʰ Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com
*Attorneys for Plaintiff*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

|  |  |
|---|---|
| JESSICA FIDLER, *et al.*, <br><br>             Plaintiffs, <br><br> v. <br><br> STATE OF ARIZONA, et al., <br><br>             Defendants. | Case No.: CV2021-017147 <br><br> **ACCEPTANCE OF SERVICE OF PROCESS** |

I, Michael F. Tamm, of Quintairos, Prieto, Wood & Boyer, P.A., on behalf of Defendants, Kathryn Coffman and her spouse, John Doe Coffman (collectively, "Defendants"), in the above-entitled action, and pursuant to Rule 4(f)(2), Ariz. R. Civ. P., hereby accept service of process on behalf of Defendants. I further acknowledge receipt this date of the Summons, Complaint, and Certificate Regarding Compulsory Arbitration, as though the same were served upon Defendants by the Sheriff or other person duly appointed and/or authorized by law to serve process in the State of Arizona.

**RESPECTFULLY SUBMITTED** this 7th day of Feb. 2022.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By _____
     Michael F. Tamm, Esq.
     8800 East Raintree Drive, Suite 100
     Scottsdale, AZ 85260
     *Attorneys for Defendants Kathryn Coffman and*
     *John Doe Coffman*

ORIGINAL E-Filed/E-Served this 7th day
of February 2022 with the Clerk of the
Maricopa County Superior Court.

Michael F. Tamm, Esq.
Quintairos, Prieto, Wood & Boyer, P.A
8800 East Raintree Drive, Suite 100
Scottsdale, AZ 85260
*Attorneys for Defendants Kathryn Coffman*
*and John Doe Coffman*

/s/ Michelle Feltes
_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Clerk of the Superior Court
*** Electronically Filed ***
K. Higuchi-Mason, Deputy
2/7/2022 3:02:55 PM
Filing ID 13909369

1
Thomas A. Connelly (AZ Bar #019430)
2
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
3
**MILLS + WOODS LAW PLLC**
4
5055 North 12ᵗʰ Street, Suite 101
Phoenix, Arizona 85014
5
Telephone 480.999.4556
docket@millsandwoods.com
6

7
DeeAn Gillespie Strub (AZ Bar #009987)
**GILLESPIE, SHIELDS, GOLDFARB,**
8
**& TAYLOR**
7319 North 16ᵗʰ Street
9
Phoenix, Arizona 85020
10
Telephone: (602) 870-9700
Fax: (602) 870-9783
11
mailroom@gillaw.com
*Attorneys for Plaintiff*
12

13
**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
14
**IN AND FOR THE COUNTY OF MARICOPA**
15

16
JESSICA FIDLER, *et al.*,

17
          Plaintiffs,
18
    v.
19
STATE OF ARIZONA, et al.,
20
          Defendants.
21

Case No.: CV2021-017147

**ACCEPTANCE OF SERVICE OF PROCESS**

22
    I, Michael F. Tamm, of Quintairos, Prieto, Wood & Boyer, P.A., on behalf of
23
Defendants, Bo Borch-Christensen and his spouse, Jane Doe Borch-Christensen
24
(collectively, "Defendants"), in the above-entitled action, and pursuant to Rule 4(f)(2),
25
Ariz. R. Civ. P., hereby accept service of process on behalf of Defendants. I further
26
acknowledge receipt this date of the Summons, Complaint, and Certificate Regarding
27
Compulsory Arbitration, as though the same were served upon Defendants by the Sheriff
28

MILLS + WOODS LAW PLLC
5055 North 12b Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

1  or other person duly appointed and/or authorized by law to serve process in the State of

2  Arizona.

3      **RESPECTFULLY SUBMITTED** this 7th day of *Feb.* 2022.

4

5          QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

6      By_____
           Michael F. Tamm, Esq.
7          8800 East Raintree Drive, Suite 100
           Scottsdale, AZ 85260
8          *Attorneys for Defendants Bo Borch-Christensen*
           *and Jane Doe Borch-Christensen*
9

10

11

12  ORIGINAL E-Filed/E-Served this 7th  day
    of  February  2022 with the Clerk of the
13  Maricopa County Superior Court.

14

15  Michael F. Tamm, Esq.
    Quintairos, Prieto, Wood & Boyer, P.A
16  8800 East Raintree Drive, Suite 100
    Scottsdale, AZ 85260
17  *Attorneys for Defendants Bo Borch-Christensen*
    *and Jane Doe Borch-Christensen*

18

19   /s/ Michelle Feltes
    _____

20

21

22

23

24

25

26

27

28

2

Clerk of the Superior Court
*** Electronically Filed ***
02/14/2022 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2021-017147                                          02/11/2022

                                                CLERK OF THE COURT
HONORABLE CHRISTOPHER COURY                          L. Gilbert
                                                       Deputy

JESSICA FIDLER                          THOMAS A CONNELLY

v.

STATE OF ARIZONA, et al.

                                        DEEAN GILLESPIE STRUB
                                        TIMOTHY J WATSON
                                        MICHAEL FREEMAN TAMM
                                        DOCKET-CIVIL-CCC
                                        JUDGE COURY

PARTIAL DISMISSAL MINUTE ENTRY

A Notice of Dismissal Without Prejudice having been presented to the Court as to Defendant Arizona Department of Child Safety only; and good cause appearing,

**<u>DISPOSITION:</u>**

Pursuant to Rule 41(a), Ariz.R.Civ.P. the dismissal is effective without Court Order as to Defendant Arizona Department of Child Safety only.

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
2/18/2022 1:49:52 PM
Filing ID 13957673

**THE CAVANAGH LAW FIRM**
A Professional Association
1850 NORTH CENTRAL AVENUE
SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000
www.cavanaghlaw.com
edocket@cavanaghlaw.com

Timothy R. Hyland (SBN 010298)
thyland@cavanaghlaw.com
Telephone: (602) 322-4078
Facsimile: (602) 322-4100

*Attorney for Defendants Jason and
Leigh Ann Treguboff*

## IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

|  |  |
|---|---|
| JESSICA FIDLER, an individual; and E.F., a minor, through his parent and guardian JESSICA FIDLER, | **No. CV2021-017147** |
| Plaintiffs, | **NOTICE OF APPEARANCE** |
| vs. | |
| STATE OF ARIZONA, et al. | |
| Defendants. | |

COMES NOW Timothy R. Hyland of The Cavanagh Law Firm, P.A. hereby enters his appearance on behalf of Defendants Jason and Leigh Ann Treguboff (the "Treguboffs") in the above-entitled matter. Copies of all pleadings, orders, and any other documents filed or transmitted in this case should be served on counsel for the Treguboffs at the following address:

Timothy R. Hyland, Esq.
The Cavanagh Law Firm, P.A.
1850 North Central Avenue, Suite 2400
Phoenix, AZ 85004
thyland@cavanaghlaw.com

DATED this 18th day of February, 2022.

**THE CAVANAGH LAW FIRM, P.A.**

By: /s/Timothy R. Hyland
Timothy R. Hyland
*Attorney for Defendants Jason and Leigh Ann Treguboff*

ORIGINAL of the foregoing e-filed with the
Maricopa County Superior Court; and,

COPY of the foregoing emailed this
18th day of February, 2022 to:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
Mills + Woods Law PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
docket@millsandwoods.com

DeeAn Gillespie Strub
Gillespie, Shields, Goldfarb, & Taylor
7319 North 16th Street
Phoenix, AZ 85020
mailroom@gillaw.com
*Attorneys for Plaintiff*


    /s/  Cindy Noeding

2